IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02389-DDD-NRN

ESTATE OF ELIJAH JAVON MCCLAIN, by and through its personal representatives, Sheneen McClain and Lawayne Mosley,
SHENEEN MCCLAIN, individually, and
LAWAYNE MOSLEY, individually,

    Plaintiffs,

v.

CITY OF AURORA, COLORADO, a municipality,
OFFICER NATHAN WOODYARD, in his individual and official capacity,
OFFICER RANDY ROEDEMA, in his individual and official capacity,
OFFICER JASON ROSENBLATT, in his individual and official capacity,
OFFICER MATTHEW GREEN, in his individual and official capacity,
SERGEANT DALE LEONARD, in his individual and official capacity,
OFFICER ALICIA WARD, in her individual and official capacity,
OFFICER KYLE DITTRICH, in his individual and official capacity,
OFFICER ERICA MARRERO, in her individual and official capacity,
OFFICER JAMES ROOT, in his individual and official capacity,
OFFICER JORDAN MULLINS-ORCUTT, in his individual and official capacity,
OFFICER DARREN DUNSON, in his individual and official capacity,
SERGEANT RACHEL NUNEZ, in her individual and official capacity,
LIEUTENANT PETER CICHUNIEC, in his individual and official capacity,
PARAMEDIC JEREMY COOPER, in his individual and official capacity, and
DR. ERIC HILL, in his individual capacity,

    Defendants.

_____

**DEFENDANT CITY OF AURORA AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND JURY DEMAND [ECF 1]**
_____

COMES NOW, Defendant City of Aurora (the "City") and all Individual Defendants in their official capacities (collectively, the "Aurora Defendants"), by and through their counsel of

1

record, and hereby submit this Motion to Dismiss Plaintiffs' Complaint and Jury Demand. In support thereof, the Aurora Defendants state the following:

## CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a)

Counsel for the Aurora Defendants certify that they have conferred with counsel for Plaintiffs via email concerning the relief requested herein. Plaintiffs' counsel has indicated Plaintiffs are opposed to the relief requested.

## I. INTRODUCTION

The Complaint contains nine causes of action arising out of the tragic death of Elijah McClain. Three of those claims allege municipal liability under theories of failure to train, supervise, and discipline; a policy, custom, or practice; and ratification. Specifically, the Complaint argues a violation of the Fourth Amendment for excessive force, an equal protection violation based on racially biased policing, and a Fourteenth Amendment violation for failure to provide adequate medical care.

The Complaint fails to adequately plead claims against Defendant City under any theory of municipal liability. The Complaint relies on conclusory allegations without supporting facts, which are insufficient to support a claim. Therefore, the claims against Defendant City should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, the Court will "accept as true all well-pleaded factual allegations in the amended complaint." *County of Santa Fe v. Public Serv. Co.*, 311 F.3d 1031, 1034 (10th Cir. 2002) (internal quotations omitted). Factual allegations are "viewed in the light most favorable to the nonmoving party." *Id.* A motion pursuant to Fed.R.Civ.P.

Rule 12(b)(6) for failure to state a claim "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 1034-35. The Court's function when reviewing a motion to dismiss is to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id*. at 1035.

The court should first identify the allegations in the complaint that are legal conclusion, bare assertions, or merely conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Next, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Waller v. City and County of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). The Court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.*

### III.   ARGUMENT

**A. All claims against Defendant City should be dismissed because there is no underlying constitutional violation by an Individual Defendant.**

It is well settled that a municipality cannot be held liable for constitutional violations when there is no underlying constitutional violation by any of its officers. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). "Absent a showing of constitutional injury, a municipality cannot be liable for damages, regardless of the existence of a policy or custom." *Holmes v. Town of Silver City*, 826 Fed.Appx. 678, 678 (10th Cir. 2020). A claim for municipal liability is "fatally infirm" without an "underlying constitutional violation." *Scott v. City of Albuquerque*, 711 Fed.Appx. 871, 882 n. 10 (10th Cir. 2017). "An official capacity claim under § 1983 is the same as a claim against

a municipality and also requires an underlying constitutional injury." *Rowell v. Bd. of County Comm'rs*, 2020 WL 627907, *7 (10th Cir. 2020).

As stated in the Individual Defendants' Motions to Dismiss, the Complaint does not sufficiently allege claims to overcome the threshold issue of a constitutional violation by the Individual Defendants. It is therefore unnecessary to reach the issue of whether there are allegations to support *Monell* liability as there has not been an adequate showing of a constitutional violation by any individual from which municipal liability might stem. Furthermore, to the extent the claims against the individual defendants are alleged in their official capacities, such claims are directed towards Defendant City and still lack an underlying constitutional violation. Thus, the claims against the City should be dismissed under Rule 12(b)(6).

**B. The claims against Defendant City should be dismissed because the Complaint fails to adequately allege facts to support municipal liability.**

The Complaint must identify a municipal "policy" or "custom" that caused the alleged injury in order to state a claim against the City. Because the Complaint only makes conclusory allegations as to the policy or custom, this Court should dismiss the *Monell* claim against the City. *See Erikson v. Pawnee County Bd. of County Com'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001).

There is no *respondeat superior* liability under Section 1983. *Board of the County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). To establish *Monell* liability, a plaintiff must show "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bryan County*, 520 U.S. at 403. A plaintiff must also show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality

has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

The Tenth Circuit has set forth five forms of municipal policies or customs.  First, a policy or custom may be a "formal regulation or policy statement."  *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)). Next, it may take the form of "an informal custom 'amount[ing] to' a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'"  *Id*.  It may also take the form of "decisions of employees with final policymaking authority" or "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval."  *Id*.  Finally, it may take the form of a "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."  *Id*.

A plaintiff must then demonstrate "a direct causal link between the policy or custom and the injury alleged."  *Waller*, 932 F.3d at 1284.  A plaintiff must allege facts to show that a municipality's own unconstitutional or illegal policy or custom caused his injury.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  For causation, "the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'"  *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs,* 962 F.3d 1204, 1241 (10th Cir. 2020) (internal citations omitted).  When a policy is facially constitutional, the burden of establishing causation (and culpability) is heavy.  *Id*. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but

5

nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (internal citations omitted).

For claims of inadequate hiring, training or other supervisory practices, a plaintiff must demonstrate that the local government's "action was taken with 'deliberate indifference' as to its known or obvious consequences." *Waller,* 932 F.3d at 1284 (citing *Brown*, 520 U.S. at 407). The deliberate indifference standard may be satisfied when the entity "had actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* (citing *Barney*, 143 F.3d at 1307).

Other than conclusory statements, Plaintiffs fail to allege facts to support claims for municipal liability under any theory.

### 1. Informal Policy, Custom or Practice

A municipality may be held liable if the alleged constitutional violation is "so permanent and well settled as to constitute a custom or usage with the force of law." *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999) (citation omitted). A custom is "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). To establish a custom, the actions of municipal employees must be "continuing, persistent and widespread." *Id.* (citing *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)). To establish liability on the basis of custom or practice, a plaintiff must sufficiently allege: "(1) the existence of a continuing, persistent and widespread practice of

unconstitutional misconduct by the [City's] employees; (2) deliberate indifference to or tacit approval of such misconduct by the [City's] policymaking officials . . . after notice to the officials of that particular misconduct; and (3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts." *Gates*, 996 F.2d at 1041.  To show the existence of a continuing, persistent and widespread custom, a plaintiff "must . . . offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274.

Here, the Complaint contains conclusory allegations that the City has an informal policy or custom regarding the use of excessive force, racially biased policing, and the use of ketamine, but fails to include necessary factual allegations to support those conclusions. The Complaint relies upon a listing of prior alleged interactions to support the claims for excessive force and violations of equal protection.  All of the incidents cited in the Complaint involve claims that settled prior to trial, were dismissed prior to any finding of liability, are ongoing, or have unknown resolutions. Furthermore, the Complaint does not contain any factual allegations to demonstrate that the City's alleged practices caused his injury.  The Complaint fails to establish the element of causation.

A few isolated incidents will not provide sufficient support for relief under Section 1983 against a municipality.  *See e.g., Ketchum v. Denver Police Dept.,* 1991 WL 35212, *2 (10th Cir. 1991) ("It is well established that to state a claim under § 1983 the plaintiff . . . cannot . . . point[] to isolated incidents."); *Davis v. Clearlake Police Dep't*, 2008 WL 4104344, *8 (N.D. Cal. 2008) (the filing of five federal lawsuits against a city is insufficient to show policy or practice of racial discrimination).  The incidents cited by Plaintiff are insufficient to support an inference of widespread custom because none of them have resulted in adjudication with liability. *See Tieman*

*v. City of Newburgh*, 2015 WL 1379652, *17 (S.D.N.Y. 2015).  Lawsuits filed without a resulting adjudication of liability cannot suggest a persistent and widespread custom.  *Walker v. City of New York*, 2014 WL 1259618, *3 (S.D.N.Y. 2014) (holding that allegations of ten similar complaints filed against New York City in the ten preceding years was insufficient to state a claim because the "paltry number of complaints (none resulting in an adjudication of liability) . . . hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim."); *see also Collins v. City of New* York, 923 F.Supp.2d 462, 479 (E.D.N.Y. 2013) (holding that a litany of cases cited in plaintiff's complaint were insufficient to allege a proper *Monell* claim because many involved settlements without admissions of liability and unproven allegations); *see also Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985) ("People may file a complaint, for many reasons . . . [t]hat they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist and did contribute to his injury.").

The Complaint also contains allegations that City employees have a pattern or practice of administering incorrect doses of ketamine to patients.  However, these allegations are not supported by sufficient facts.  While the Complaint states that on other reports of patient care, the estimated weight section is not filled out, it does not necessarily follow that weight was not estimated or was estimated incorrectly.  To reach such a conclusion is purely speculative.  Furthermore, the Complaint points to no examples of a person being harmed by the allegedly incorrect dosing.  Additionally, the Complaint again lacks any factual allegations to demonstrate the element of causation.  The Complaint lacks sufficient allegations to support a claim for municipal liability on the basis of a custom or practice.

### 2. Failure to Train, Supervise, or Discipline

In limited circumstances, a municipality may be liable under §1983 for a failure to train. *City of Canton v. Harris*, 489 U.S. 378 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S.Ct. at 1359; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Thus, a municipality's failure to train its employees may serve as the basis for §1983 liability only where that failure amounts to deliberate indifference to the rights of citizens. *Canton*, 489 U.S. at 388-89. A less stringent standard of fault for a failure-to-train claim "would result in de facto *respondeat superior* liability." *Id.* at 392. Allegations of failure to supervise are assessed under the same standard. *Whitewater v. Goss*, 192 Fed.Appx. 794, 797 (10th Cir. 2006). Furthermore, "[r]arely, if ever, is 'the failure of a police department to discipline in a specific instance . . . an adequate basis for municipal liability under *Monell*.'" *Schneider*, 717 F.3d at 777 (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993)).

Deliberate indifference involves an obvious need for more or different training where the inadequacy of training is likely to result in the violation of constitutional rights. *Canton*, 489 U.S. at 390. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program causing constitutional

9

violations." *Connick*, 131 S. Ct. at 1360. Additionally, the identified deficiency must be closely related to the plaintiff's actual injury. *Canton*, 489 U.S. at 385. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91 (internal citation omitted).

In the present case, the Complaint makes only conclusory allegations regarding the alleged failure to train. *See* ECF 1 at ¶¶ 421-22. It does not point to any specific deficiency in the City's "overall training," but rather alleges facts that may suggest "shortcomings in individual officers' training and supervision." *Murphy v. City of Tulsa*, 950 F.3d 641, 652 (10th Cir. 2019). The Complaint asserts that the City "could have and should have pursued reasonable methods for training and supervising APD officers . . . in interacting with Black people and the appropriate use of force, but it failed to do so." ECF 1 at ¶ 341. This allegation is entirely conclusory and points to no specific deficiency in training or alternate method that should have been pursued. In fact, the Complaint lacks any allegations pointing to a specific area in which general training and supervision programs are insufficient. Finally, the Complaint fails to allege facts to indicate that the training programs was a cause of the injuries alleged. Simply stating that training and supervision regarding use of force is necessary is not enough to support a claim for municipal liability under the first claim for relief based on excessive force.

Likewise, simply stating that training regarding racially biased policing is necessary is insufficient to support the second claim for relief. The Complaint again only contains conclusory allegations regarding alleged training deficiencies, stating that the City "failed to properly train, supervise, and/or discipline its employees regarding the constitutional requirement not to engage

in racially biased policing." ECF 1 at ¶ 440.  Again, it fails to point to any specific area in which training and supervision is insufficient and fails to allege facts to support the element of causation.

The third claim for relief asserts in conclusory fashion that the City has failed to adequately train and supervise regarding the administration of ketamine.  ECF 1 at ¶¶ 470, 472.  However, the factual allegations elsewhere in the Complaint demonstrate that Aurora Fire Rescue "AFR" did in fact provide sufficient training.  The Complaint asserts that the City's medical protocols require that "paramedics provide a weight-based dosage of ketamine," which is exactly what is alleged to be the inadequate care provided to Mr. McClain.  ECF 1 at ¶ 362.  Further, the Complaint asserts that City training informed paramedics that it was not permissible to administer the same dose to all patients, regardless of their weight.  ECF 1 at ¶ 366.  Therefore, by the assertions contained in the Complaint, the City's training regarding the use of ketamine is both accurate and adequate.  The Complaint is also devoid of allegations to support the required element of causation.

The Complaint also alleges that municipal liability may be imposed as a result of a failure to discipline employees.  A "subsequent failure to discipline cannot be the cause of a prior injury." *Waller,* 932 F.3d at 1290.  Therefore, allegations regarding the lack of discipline for employees involved in the incident at issue do not support municipal liability.  Additionally, aside from purely conclusory allegations, the facts alleged do not support a claim based on a failure to discipline. The Complaint alleges that the City did discipline two employees for unprofessional conduct.  ECF 1 at ¶ 322.  The conclusory assertion that this discipline was based on public image concerns is supported by no factual allegations and is irrelevant.  Further, while the Complaint states in conclusory fashion that the internal investigations into this matter are insufficient, the facts alleged demonstrate that the City has undertaken efforts to determine whether discipline is appropriate.

The attempts to spin these investigations based on conjecture and speculation, rather than factual assertions, are insufficient to support a claim for municipal liability. The claims based on a failure to discipline should be dismissed.

The claims for municipal liability based upon theories of failure to train, supervise, or discipline should be dismissed. The Complaint does not allege sufficient facts, but instead relies on impermissible conclusory statements and fails to allege deficiencies with specificity.

### 3. Ratification

Municipal liability may be based on the ratification by "final policymakers of the decisions- and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1339-40 (D.N.M. 2013) (quoting *Brammer-Hoelter*, 602 F.3d at 1189). A final policymaker is someone "whose acts or edicts may fairly be said to represent official policy." *Id*. (citing *Monell*, 436 U.S. at 694). "[T]he fact that [an official] simply went along with a subordinate's discretionary decisions, without having investigated the basis for those decisions, does not constitute a delegation of the official's policymaking authority to the subordinate." *Praprotnik v. City of St. Louis*, 879 F.2d 1573, 1574 (8th Cir. 1989) (internal citation omitted).

"An official is not a policymaker simply because he has discretionary authority to carry out functions authorized by a municipal policy." *Dempsey v. City of Baldwin City*, 333 F.Supp.2d 1055, 1070 (D. Kan. 2004). "A policymaker must have final authority to establish policy." *Id.* An "official whose actions can be reviewed by other policymakers or who is constrained by the policies of others does not have final policymaking authority." *Id.* at 1071. "Plaintiffs must allege

and prove that the final policymaker affirmatively approved a subordinate's decision *and the basis for it*." *Id.* (emphasis in original).

Furthermore, "[i]n order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, 2010 WL 3911457, *2, (S.D. Cal. 2010) (quoting *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Hawaii 2003)). A "mere failure to overrule a subordinate's actions, without more, is insufficient to support" a claim for municipal liability. *Id.* (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)).

Other than conclusory statements, the Complaint fails to allege facts to support such a claim. The Complaint states that the Fire Chief provided a quote stating that the medical treatment provided met expectations. ECF 1 at ¶ 384. However, nowhere does the Complaint contain any factual allegations to support the contention that the Fire Chief is a final policymaker for Defendant City. Furthermore, the Complaint does not contain any factual allegations to support the conclusion that any final policymaker approved both the decisions made by employees and the *underlying basis* for those decisions. Here, the Complaint merely asserts that an individual concluded that actions were in line with policy. Such allegations are insufficient as a matter of law to sustain a claim for municipal liability. *Garcia*, 2010 WL 3911457 at *2.

### C. The equal protection claims should be dismissed because they rely on statistical evidence which is insufficient to state a claim.

To sustain an equal protection claim, a Plaintiff must "demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). Using statistics to support

such a claim requires that the statistics show "reliable measure[s] of the demographics of the relevant population, a means of telling whether the data represent similarly situated individuals, and a point of comparison to the actual incidence of crime among different racial or ethnic segments of the population." *Id.* (internal citations omitted). "Statistical evidence alone is rarely enough to show discriminatory purpose." *Blackwell v. Strain*, 496 Fed.Appx. 836, 840 (10th Cir. 2012). Furthermore, "it would be a gross misuse of statistical data to extrapolate about [a particular officer's conduct] merely from aggregate data that covers many other individuals." *United States v. Laneham*, 2017 WL 4857437, *22 (D.N.M. 2017) (quoting *United States v. Coleman,* 483 Fed.Appx. 419, 421 (10th Cir. 2012)).

In the present case, the Complaint makes allegations that statistics show disproportionate uses of force against Black individuals. However, the Complaint offers no evidence to demonstrate that the data are a reliable measure of the relevant population. Furthermore, there are no facts alleged to demonstrate that the data represent similarly situated individuals, nor are there any facts to suggest a comparison point to other segments of the population. The statistics alleged, standing alone, are insufficient to support claims of discriminatory purpose against the individual officers and are, therefore, also insufficient to support a claim for municipal liability.

## IV.     CONCLUSION

The Complaint fails to allege sufficient facts to support claims for municipal liability. Therefore, the claims against Defendant City should be dismissed.

Dated this 30th day of November, 2020.


*/s/ Isabelle S. Evans*
Isabelle S. Evans

14

Peter Ruben Morales
Aurora City Attorney's Office
15151 E. Alameda Parkway, Suite 5300
Aurora, CO 80012
Telephone: (303) 739-7030
Facsimile: (303) 739-7042
pmorales@auroragov.org
ievans@auroragov.org
*Attorneys for Defendant City of Aurora, and Defendants Woodyard, Roedema, Rosenblatt, Green, Leonard, Ward, Dittrich, Marrero, Root, Mullins-Orcutt, Dunson, Nunez, Cichuniec, and Cooper in their official capacities ("Aurora Defendants")*

I hereby certify that the foregoing pleading complies with the type-volume limitations set forth in Judge Dominico's Practice Standards III(A)(1).

*/s/ Isabelle S. Evans*

## **CERTIFICATE OF SERVICE BY CM/ECF**

I hereby certify that on November 30, 2020, I electronically filed the foregoing *Defendant City of Aurora and the Individual Defendants in Their Official Capacities' Motion to Dismiss Plaintiffs' Complaint and Jury Demand [ECF 1]* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email address:

Mari Newman, Esq. [mnewman@kln-law.com]
Liana G. Orshan, Esq. [lorshan@kln-law.com]
Michael Fairhurst, Esq. [mfairhurst@kln-law.com]
*Attorneys for Plaintiffs*

Michael T. Lowe, Esq. [mlowe@brunolawyers.com]
David Goddard, Esq. [dgoddard@brunolawyers.com]
*Attorneys for Defendants Cichuniec and Cooper in their individual capacities*

Stephen J. Hensen [steve@hendulaw.com]
*Attorney for Defendant Hill in his individual capacity*

Jonathan M. Abramson [jonathan@kandf.com]
Yulia Nikolaevskaya [julie@kandf.com]
*Attorneys for Defendants Dittrich, Dunson, Green, Leonard, Marrero, Mullins-Orcutt, Nunez, Roedema, Root, Rosenblatt, Ward, and Woodyard in their individual capacities*

*s/ Joanne Flaherty*
Joanne Flaherty