IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-2389-DDD-NRN

ESTATE OF ELIJAH JAVON MCCLAIN, et al.,

    Plaintiffs,

v.

CITY OF AURORA, COLORADO, et al.,

    Defendants.

---

**DEFENDANTS PETER CICHUNIEC'S AND JEREMY COOPER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)**

---

COME NOW, Defendants Cichuniec and Cooper, through their undersigned counsel, and hereby move to dismiss Plaintiffs' Complaint [Doc. 1][1] against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6). As grounds therefore, these Defendants state as follows:

**Certification Pursuant to D.C.COLO.LCivR 7.1(a)**

Counsel for Defendants Cichuniec and Cooper certify that they have conferred with Plaintiffs' counsel via email and written correspondence concerning the relief requested herein. Plaintiffs' counsel has indicated Plaintiffs are opposed to the relief requested herein.

**Introduction**

Plaintiffs filed their Complaint on August 11, 2020, naming sixteen Defendants and alleging nine causes of action in the context of a complicated scene. Shorn of invective, hyperbole,

---

[1] "[Doc. 1]" is an example of the convention utilized herein to identify by docket number specific pleadings filed through the case management and electronic case filing system (CM/ECF).

impermissible conclusion and speculation, however, the factual allegations and claims brought against Defendants Cichuniec and Cooper (the "AFR Defendants") are fairly straightforward. On August 24, 2019, at approximately 11:00 p.m., the AFR Defendants arrived at the scene where Elijah McClain was being detained on the ground by Aurora Police Department ("APD") personnel. [Doc. 1] at ¶¶50, 176. At least one APD Officer on scene "grew increasingly concerned" that Mr. McClain "was in need of emergency medical attention" while awaiting the arrival of the AFR Defendants. *Id.* at ¶159. Mr. McClain was struggling with officers while claiming that his movements were involuntary. *Id.* at ¶¶169, 170, 183. Mr. McClain was having difficulty breathing, was hyperventilating, vomiting, retching, shouting, and was either under the influence of marijuana or had used it earlier. *Id*. at ¶¶147, 161, 163-64, 169, 182, 184, 173, 196, 200-01, 215-17. Mr. McClain was thus "in obvious and serious need of aid and medical care and treatment during his contact with AFR Defendants." *Id.* at 458. Based on the foregoing, the AFR Defendants determined that Mr. McClain was likely suffering from excited delirium, and that consistent with AFR protocols, a ketamine dose would be appropriate treatment. *Id.* at 180-81, 186, 189-192.[2] The same was requested from a private ambulance company, and 500 milligrams of ketamine was delivered by AFR Defendant Cooper intramuscularly to Mr. McClain. *Id.* at 204, 210.[3]

---

[2] The Complaint mischaracterizes through conclusory and hyperbolic pleading—to the point of contradiction—both Mr. McClain's actions as observed by Defendants Cooper and Cichuniec on the scene, and these Defendants' subsequent recollections of those actions to investigators. Regardless of how Mr. McClain's actions might be conclusorily characterized, however, the Complaint pleads that he was struggling mightily enough with the APD Officers—as observed by Defendants Cooper and Cichuniec—that he suffered from "metabolic acidosis, which occurs when *panic and strenuous physical activity* (including the struggle to survive) cause a dramatic increase in lactic acid in the blood …." [Doc. 1] at ¶201 (emphasis added).

[3] The Complaint repeatedly mischaracterizes this dose of ketamine as an "overdose," [Doc. 1] at ¶¶4, 209, 459. That assertion is conclusory, as the Complaint does not allege any facts

Approximately three minutes later, Mr. McClain was moved to the waiting ambulance for transport to the hospital. *Id.* at 214. Once inside the ambulance, paramedics noticed that Mr. McClain was not breathing, and immediately began lifesaving measures while rushing Mr. McClain to the hospital. *Id.* at 219-20. Mr. McClain never regained consciousness, and passed away several days later. *Id.* at 221-22. The elapsed time between administration of the ketamine dose and initiation of lifesaving protocols by medical personnel was approximately four minutes and thirty seconds—approximately two to three minutes of which elapsed while the ketamine took effect. *Id.* at ¶¶210, 212-214, 219.

Based on the foregoing, Plaintiffs bring five discrete claims for relief against the AFR Defendants: 1) a Fourteenth Amendment deliberate indifference claim for failing to provide adequate medical care (Third Claim for Relief), *Id.* at 83-89; 2) a Fourteenth Amendment substantive due process claim based on a theory of forced administration of medication (Fourth Claim for Relief), *Id.* at 89-92; 3) a Fourth Amendment claim for excessive force (Fifth Claim for Relief), *Id.* at 92-95; 4) a state law wrongful death claim based on negligence (Eighth Claim for Relief), *Id.* at 99-102; and 5) a state law wrongful death claim based on intentional battery (Ninth Claim for Relief, *Id.* at 103. The AFR Defendants move for dismissal of all claims against them as set forth below, based on failure to allege unconstitutional conduct, entitlement to qualified immunity, and failure to plead willful and wanton conduct under the Colorado Governmental Immunity Act.

**Standard of Review**

---

showing that a dose of 500 milligrams—even for someone of Mr. McClain's weight—is outside of therapeutic limits, let alone of constitutional magnitude.

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to state a claim to relief" against each named Defendant "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While presuming *well-pled* factual allegations are true and construing them in a favorable light, *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991), a Court first identifies and dismisses allegations that are legal conclusions, bare assertions, or merely conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Any remaining factual allegations are then analyzed "to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 678. If a complaint does not include "enough factual matter (taken as true) to … nudge [their] claims across the line from conceivable to plausible," it "must be dismissed." *Twombly*, 550 U.S. at 570.

In turn, Fed. R. Civ. P. 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 662. *Id.* Where, as here, "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citations omitted). If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint must be dismissed. *Id.*

The AFR Defendants here also raise entitlement to qualified immunity, which is decided differently from other Rule 12(b)(6) motions because qualified immunity "creates a presumption" the officer "is immune from suit" under § 1983. *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016). Accordingly, "the burden shift[s] to Plaintiffs to demonstrate the complaint's factual

4

allegations established their right to recover against *each* [defendant]." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (emphasis original). Qualified immunity puts "the onus … on the plaintiff to demonstrate (1) that [defendants] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the[ir] challenged conduct." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (cleaned up). The first prong is assessed by whether a constitutional or federal statutory violation has been sufficiently pled. *Matthews*, 889 F.3d at 1144 n.2. The second prong is assessed by determining, as pled, "whether it would be clear to a reasonable officer that [the defendant's] conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Finally, Plaintiff's state-law claims are subject to dismissal under Rule 12(b)(1), because they are barred by the Colorado Governmental Immunities Act ("CGIA"), § 24-10-101 *et seq*. That is "a question of subject-matter jurisdiction" decided on a Rule 12(b)(1) motion. *Schmitz v. Colo. State Patrol*, 2020 U.S. Dist. LEXIS 17373, at *7 (D. Colo. 2020) (citation omitted). Such jurisdiction "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). "[T]he party pleading jurisdiction must allege … the facts essential to show jurisdiction." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (internal quotation marks and citations omitted).

**Argument**

**1. The Third and Fourth Claims for Relief must be dismissed because the Complaint fails to plead a factual basis for the subjective component of a deliberate indifference claim against the AFR Defendants.**

As a pretrial detainee, Mr. McClain's right to treatment of his serious medical needs and right to be free from involuntary medication arise under the Fourteenth Amendment's substantive

due process clause rather than the Eighth Amendment. *Washington v. Harper*, 494 U.S. 210, 229 (1990); *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999); *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). In analyzing deliberate indifference claims brought by pretrial detainees, the Tenth Circuit applies the same test as that for Eighth Amendment claims brought by convicted prisoners. *See Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). That test has both an objective and a subjective component. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Here, the AFR Defendants challenge only Plaintiff's failure to plead facts necessary to support a claim under the subjective prong of the deliberate indifference analysis.[4] Under the subjective component, a plaintiff must show that a defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159. In turn, the defendant "must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (internal quotations and citation omitted). More specifically to the allegations here, the Tenth Circuit's "precedent is clear that 'a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim.'" *Strain v. Regalado*, 977 F.3d 984, 996 (10th Cir. 2020) (quoting *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006)). In such circumstances, the subjectively culpable state of mind cannot be met *even if the "medical judgment may have been*

---

[4]     *See Mata v. Saiz*, 427 F.3d 745, 753-54 (10th Cir. 2005) (holding that the objective prong of the test focuses on the ultimate harm claimed by a plaintiff, rather than the symptoms displayed); *Martinez*, 563 F.3d at 1088-89 (agreeing that death meets the objective component of an Eighth Amendment claim).

*objectively unreasonable.*" *Self*, 439 F.3d at 1234 (emphasis added) (citing, *inter alia*, *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1989) (finding no § 1983 liability where physician diagnosed prisoner with gastritis and prisoner later died of punctured esophagus)). This is because allegations of negligence are "categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Hayes v. Garcia*, 123 Fed. Appx. 858, 861 (10th Cir. 2005).

The well-pled, non-conclusory facts set forth above do not meet the pleading requirements necessary to establish subjectively deliberate indifference against the AFR Defendants. To the contrary, the facts as pled demonstrate that the AFR Defendants arrived on a scene where an individual was "obviously in serious need of aid and medical care and treatment," *Id.* at ¶458, and they reasonably responded to that serious medical need by administering medication. The Complaint's contradictory allegations that Mr. McClain was suffering from "metabolic acidosis" rather than excited delirium—implying that the former should have been treated rather than the latter—does not advance that analysis, because such allegations at most demonstrate a misdiagnosis. [Doc. 1] at ¶¶201-03, 215-17, 221. And even if such misdiagnosis amounted to medical malpractice and was "objectively unreasonable," it is insufficient "to satisfy the subjective component of a deliberate indifference claim." *Strain*, 977 F.3d at 996.

This same standard and analysis applies to the allegations that the AFR Defendants underestimated Mr. McClain's weight and thereby gave him the wrong dose of ketamine. [Doc. 1] at ¶¶206, 225, 233. Even if that misjudgment were grossly negligent amounting to medical malpractice (which the Complaint does not plead is so), it is not sufficient to demonstrate that the AFR Defendants were deliberately indifferent to Mr. McClain's serious medical needs. *See*

7

*Mallory v. Jones*, 2011 U.S. Dist. LEXIS 48378, at *25-26 (D. Colo 2011) (finding no deliberate indifference where diagnosis did not match plaintiff's symptoms) (citing, *inter alia*, *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999); *Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997) (deliberate indifference requires a higher degree of fault than negligence, "or even gross negligence")); *see also Mata*, 427 F.3d at 759 (upholding summary judgment for defendant who misread abnormal EKG readings as normal). Moreover, "medical personnel are entitled to substantial deference in choosing a proper course of treatment," and disagreement "with a diagnosis or prescribed course of treatment does not state a constitutional violation." *Pumphrey v. Wood*, 2015 U.S. Dist. LEXIS 38754, at *23 (D. Utah 2015) (quoting *Todd v. Bigelow*, 2012 U.S. Dist. LEXIS 24252, at *17 (D. Utah 2012), and *Perkins*, 165 F.3d at 811).

Anticipating these difficulties in meeting the subjective prong of the deliberate indifference test, the Complaint pleads the alternative theory of a failure to exercise professional judgment in the context of a special relationship, asserting that the "professional judgment standard" is "more lenient" than the "deliberate indifference" standard. [Doc. 1] at ¶457 n.9. It is not. The standard for assessing a special-relationship claim is a "shocks-the-conscience" standard. *Gutteridge v. Oklahoma*, 878 F.3d 1223, 1240 (10th Cir. 2018) ("under the special-relationship doctrine, (1) a plaintiff must demonstrate 'an abdication of professional responsibility,' and (2) '[s]uch abdication must be sufficient to shock the conscience.'"). The conscience-shocking standard is at least as, and in some circumstances more, stringent than the deliberate indifference standard. *See Doe v. Heil*, 533 Fed. Appx. 831, 843-45 (10th Cir. 2013) (explaining contextual distinction in applying the standard to deliberate indifference claims); *Kaucher v. County of Bucks*, 455 F.3d 418, 426-27 (3d Cir. 2006) (same); *Payne v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998). Essentially, whether

deliberately indifferent conduct rises to a conscience-shocking level is dependent on whether a defendant was operating under "exigent, pressurized circumstances" or enjoyed the luxury of "unhurried judgments … [and] … repeated reflection, largely uncomplicated by the pulls of competing obligations." *Doe*, 533 Fed. Appx. at 844 (quoting, *inter alia*, *Lewis*, 523 U.S. at 853). If a an allegedly unconstitutional decision is made under exigent circumstances, then a plaintiff must plead "an intent to harm suspects physically or worsen their legal plight." *Lewis*, 523 U.S. at 854; *see also Bomprezzi v. Kaprivnikar*, 2013 U.S. Dist. LEXIS 185511, at *31-32 (D. Colo. 2013 (finding no conscience-shocking conduct where the record lacked "any evidence suggesting the Defendant bore malice against the Plaintiff or was motivated by an improper purpose" in involuntary injection); *Boyd v. Armstrong*, 2019 U.S. Dist. LEXIS 56200, at *76-77 (D. Md. 2019) (in context of forced injection of Haldol by EMTs to individual detained by police, no conscience-shocking conduct without demonstration that defendant EMTs intentionally sought to injure plaintiff or acted with willful indifference to his wellbeing).

Here, then, whether the chaotic scene described in the Complaint allowed the AFR Defendants the luxury of repeated reflection or was exigent and pressurized is ultimately immaterial, because the Complaint does not plead "sufficient facts … from which a court may draw a plausible inference that a defendant acted with conscience-shocking deliberate indifference" in either scenario. *Doe* at 845. To the contrary, the well-pleaded, non-conclusory facts in the Complaint demonstrate that the AFR Defendants did *not* "abdicat[e their] professional responsibilities," but rather responded to Mr. McClain's serious and emergent medical need with an appropriate and authorized treatment. Even if that treatment was mistakenly applied, the AFR Defendants' actions, as pled, do not amount to deliberate indifference. *See Brown v. Prison Health*

*Servs.*, 159 Fed. Appx. 840, 841 (10th Cir. 2005) (upholding dismissal of complaint alleging administration of medication to which plaintiff was allergic, for failure to state a claim). The Complaint therefore fails to state a claim under the Fourteenth Amendment, and the Third and Fourth Claims must be dismissed.

      **B.    The Fifth Claim for Relief must be dismissed because the Complaint fails to allege an unreasonable seizure by the AFR Defendants.**

Regarding the Fourth Amendment claim against the AFR Defendants, it is well-established that to state an excessive force claim "under the Fourth Amendment, Plaintiffs must show both that a 'seizure' occurred, and that the seizure was 'unreasonable.'" *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000) (quoting *Brower v. City of Inyo*, 489 U.S. 593, 599 (1989)). Although the Tenth Circuit Court of Appeals has not addressed whether emergency medical personnel engage in a constitutionally unreasonable seizure when they act to provide medical aid, district courts in this circuit have analyzed the Sixth Circuit case of *Peete v. Metro. Gov't of Nashville & Davidson Cty.*, 486 F.3d 217 (6th Cir. 2007) for that proposition. *See Cardenas v. Collins*, 2017 U.S. Dist. LEXIS 88937, at *13-16 (D.N.M. 2017) (applying analysis to responding paramedics); *Cardenas v. Collins*, 2017 U.S. Dist. LEXIS 92990, at *12-15 (D.N.M. 2017) (applying analysis to law enforcement officers involved in same incident). *Peete* reversed a denial of qualified immunity against paramedics on excessive force claims because the paramedics "acted in order to provide medical aid" rather than "to enforce the law, deter, or incarcerate" when they restrained an individual on the ground in order to treat him. *Peete*, 486 F.3d at 220.

The distinction here, then, is whether the Complaint pleads facts sufficient to support an allegation that the AFR Defendants were acting to provide medical aid or in a law-enforcement capacity. As previously pointed out, the Complaint alleges no facts to support that the AFR

Defendants were acting in any capacity other than to render medical aid, and in fact pleads they did nothing but render such aid. Although the Complaint alleges at one point that the AFR Defendants were acting in a law-enforcement capacity, [Doc.1] at ¶508, that allegation is conclusory. Nowhere does the Complaint allege facts to support the notion that the AFR Defendants were acting to enforce the law, deter, or incarcerate Mr. McClain. Indeed, except for Defendant Cooper's injection, the Complaint does not even allege that the AFR Defendants physically touched Mr. McClain. Neither does the Complaint allege that the AFR Defendants were dispatched to the scene to assist law enforcement in the execution of their own duties, nor that any law enforcement personnel ordered Mr. McClain sedated. *See Thompson v. Cope*, 900 F.3d 414, 424 n.2 (7th Cir. 2018) (imagining a case where the excessive force question would be "closer," "where an arresting officer summons a paramedic and then orders the paramedic to sedate an arrestee who does not need medical care just so the officer can put the arrestee in the back of a police car more easily."). Thus, the Complaint simply fails to allege an unreasonable seizure by the AFR Defendants, and the Fifth Claim for Relief alleging excessive force must be dismissed.

**C. The AFR Defendants are entitled to qualified immunity on Plaintiff's federal claims.**

As set forth above, Plaintiffs' qualified immunity burden, and the two-pronged analysis that must be met, are well known. *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016). As sections A and B of the instant brief demonstrate, the Complaint fails to allege a constitutional violation by either AFR Defendant, the first prong of the qualified immunity has not been met, and these Defendants are entitled to qualified immunity and dismissal of the federal claims on this ground alone. *See Crocker v. Glanz*, 752 Fed. Appx. 564, 567 (10th Cir. 2018).

Should the Court find the Complaint sufficiently pleads a constitutional violation, however, Plaintiffs cannot show that such right was clearly established. "A constitutional right is clearly established if it is sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (emphasis added). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right, … [but] … [g]enerally, 'existing precedent *must have placed the statutory or constitutional question beyond debate*' to clearly establish a right." *Halley*, 902 F.3d at 1144 (citation omitted, emphasis added). Moreover, the Supreme Court has repeatedly admonished that "courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 138 S. Ct. at 590 (citation omitted). Thus, "[t]he dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted).

Under the well-pled facts here, AFR Defendants are unaware of any authority clearly establishing that emergency medical personnel violate the Fourteenth Amendment when exercising medical judgment and involuntarily medicating an individual restrained by law enforcement officers. AFR Defendants have likewise been unable to locate any binding precedent that emergency medical personnel violate the Fourth Amendment under the same circumstances. To the contrary, extant case authority on the issue indicates the law is not clearly established on these points. *See generally Cardenas*, 2017 U.S. Dist. LEXIS 88937, at *13-16; *Thompson*, 900 F.3d at 420-24; *Strain*, 977 F.3d at 990-96. The AFR Defendants are therefore entitled to qualified immunity and dismissal of the federal claims.

      **D.**      **Plaintiff's state-law claims are barred by the CGIA for failure to plead willful and wanton conduct.**

Under the CGIA, the AFR Defendants are "public employees" with sovereign immunity from tort claims arising in the course and scope of their employment, unless their actions were "willful and wanton." C.R.S. §§ 24-10-103(4)(a), 24-10-118(2)(A), & 24-10-105(1). In order to plead willful and wanton conduct, a plaintiff must allege that the AFR Defendants were "'consciously aware that their acts or omissions create[d] danger or risk to the safety of others, and then act[ed] … without regard to the danger or risk.'" *L.J. v. Carricato*, 413 P.3d 1280, 1288 (Colo. App. 2018) (citation omitted). More specifically, willful and wanton conduct is that which is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (quoting C.R.S. § 13-21-102(1)(b)); *see also Pettingell v. Moede*, 271 P.2d 1038, 1042 (Colo. 1954) (defining willful and wanton conduct as "wholly disregardful of the rights, feelings and safety of others … at times even implying an element of evil."). The CGIA mandates that a failure to plead willful and wanton conduct "shall result in dismissal of the claim for failure to state a claim upon which relief can be granted." Colo. Rev. Stat. §§ 24-10-110(5)(b).

As demonstrated at length above, the Complaint pleads no allegations against the AFR Defendants that they engaged in any conduct "implying an element of evil." To the contrary, the well-pled facts of the Complaint show only that the AFR Defendants arrived at the scene of an individual having "obvious" and "serious" need of emergency medical treatment, and the AFR Defendants assessed the situation and provided that treatment pursuant to authorized protocols. Thus, because pleading willful and wanton conduct is required "to show or raise an inference" of

that specific intent of a public employee in subjecting a plaintiff to alleged tortious conduct, *McDonald v. Wise*, 759 F.3d 1202, 1218 (10th Cir. 2014), and the Complaint fails to do so, the Court is without jurisdiction to hear the state law claims brought against the AFR Defendants.

## CONCLUSION

As demonstrated by the analysis and authority set forth herein, Plaintiff's claims against the AFR Defendants must be dismissed.

Respectfully submitted this 30th day of November, 2020.

> *s/ Michael T. Lowe*
> Michael T. Lowe
> Bruno, Colin & Lowe, P.C.
> 1999 Broadway, Suite 4300, Denver CO  80202
> Telephone: (303) 831-1099; Fax (303) 831-1088
> E-mail:  mlowe@brunolawyers.com
> E-mail:  dgoddard@brunolawyers.com
> *Attorney for Defendants Cichuniec and Cooper*

## Type-Volume Certification

By signature affixed above, counsel for Defendants Cichuniec and Cooper certifies that the foregoing pleading complies with the type-volume limitation set forth in DDD Civ. P.S. III(A)(1).

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2020, a true and correct copy of the foregoing MOTION TO DISMISS was filed with the Clerk of Court via the CM/ECF system, which will send notice of filing to the following:

Peter Ruben Morales
Isabelle Sabra Evans
pmorales@auroragov.org
ievans@auroragov.org

*Attorneys for Defendant City of Aurora and All Individual Defendant Officers, Sergeants and Lieutenants, in their official capacities.*

**Mari Anne Newman**
**Liana Gerstle Orshan**
**Michael Fairhurst**
Killmer Lane & Newman LLP
mnewman@kln-law.com
lorshan@kln-law.com
mfairhurst@kln-law.com

*Attorneys for Plaintiffs*

Jonathan M. Abramson
Yulia (Julie) Nikolaevskaya
Kissinger & Fellman, P.C.
julie@kandf.com
jonathan@kandf.com

*Attorney for Defendants Nathan Woodyard, Randy Roedema, Jason Rosenblatt, Matthew T. Green, Dale Leonard, Alicia Ward, Kyle Dittrich, Erica Marrero, James Root, Jordan Mullins-Orcutt, Darren Dunson and Rachel Nunez, in their individual capacitie*

            *s/Julie Bozeman*
            Julie Bozeman, Paralegal
            Bruno, Colin & Lowe, P.C.