**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02389-DDD-NRN

ESTATE OF ELIJAH JAVON MCCLAIN, *et al.*,

Plaintiffs,

v.

CITY OF AURORA, COLORADO, *et al.*,

Defendants.

_____

**RESPONSE TO DEFENDANTS' MOTION TO BIFURCATE INDIVIDUAL AND *MONELL* CLAIMS AND MOTION FOR STAY OF DISCOVERY FOR *MONELL* CLAIMS [Doc. 43]**
_____

## I.  INTRODUCTION

Officers and paramedics employed by Defendant City of Aurora ("Aurora") killed Elijah McClain. The officers' conduct was part of an extensive history of unconstitutional brutal, violent, and racist acts by Aurora police officers. Complaint, [Doc. 1], ¶¶ 266-337. Likewise, the paramedics' unnecessary and dangerous administration of an overdose of ketamine to Mr. McClain was consistent with customary, obvious, and known deficiencies related to ketamine administration by Aurora paramedics. *Id.* at ¶¶ 362-391. Over 40 years ago, the Supreme Court held that it is exactly patterns and practices like Aurora's that underlie Congress's clear intent that "local governments, like every other § 1983 'person,'…may be sued for constitutional deprivations visited pursuant to governmental 'custom'" if "the persistent and widespread discriminatory practices of [government] officials" are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S.

1

658, 690-91 (1978). In requesting that this Court delay **for years** Plaintiffs' legal right to obtain relief against a municipal Defendant who violated Plaintiffs' constitutional rights, Defendants now seek to defy this principle that municipalities should be liable for constitutional violations.

Defendants ask this Court to bifurcate the case on the mere aspirational *possibility* that after discovery, dispositive motions, likely one or more interlocutory appeals, trial, and post-trial appeal, the Individual Defendants *might* be cleared of wrongdoing on Plaintiffs' § 1983 claims.[1] Defendants seek to indefinitely pause Plaintiffs' prosecution of the claim against Aurora on the mere *possibility* of success at some much later point, even though much of the same evidence will be relevant on *all* claims because the Individual Defendants (and Aurora, too, for that matter) undoubtedly will assert that they were conducting themselves in conformance with Aurora's policies, customs, and training.

Defendants have failed to come close to meeting their burden of establishing the need for bifurcation. This case is neither different nor more suited for bifurcation than any of dozens of other civil rights lawsuits underway in this District that include municipal liability claims; to the contrary, the facts and posture of this case militate strongly *against* bifurcation. As a case of very significant public interest, the inevitable years-long delay contemplated by Defendants' effort to bifurcate will not only deny Plaintiffs' rights to timely adjudication of their claims, but it will also justifiably erode public confidence in the judicial process. Historically, these cases have been perfectly capable of efficient and unified discovery and trials. That is the proper course here too, and Defendants' motion must be denied as merely another attempt, like Defendants' pending motion to stay discovery, [Doc. 46], to delay Plaintiffs' ability to effectively litigate their case, at

---

[1] Defendants do not explain in what phase of the case Plaintiffs' state law claims would be litigated under their proposal.

2

the risk of significant detriment.[2]

## II. LEGAL STANDARD

"[B]ifurcation is the exception, not the rule." *Engen v. Colo. Mills Mall L.P.*, 2010 U.S. Dist. LEXIS 150630, *2-3 (D. Colo. 2010).[3] "The burden is on the [movant] to convince the court that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." *Id*. Under Rule 42(b), the bifurcation decision "must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury." *York v. AT&T*, 95 F.3d 948, 957-58 (10th Cir. 1996). "[B]ifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993).

## III. ARGUMENT

### A. **Bifurcation of discovery and trial would severely prejudice Plaintiffs.**

Defendants completely elide the obvious and massive prejudice that bifurcation would cause Plaintiffs. *See* Douglas Colbert, *Bifurcation in Civil Rights Cases: Undermining Monell in Police Brutality Cases*, 44 HASTINGS L.J. 499, 503-09, 571-75 (1992-93). A potentially nearly decade-long, two trial court battle based on the unlawful death of their beloved son would be an unimaginably painful experience for Mr. McClain's grieving family. Moreover, Plaintiffs like Mr. McClain's family do not have the nearly inexhaustible resources required to undergo a years-long fight over the individual defendants' liability, and then to start yet another protracted fight, beginning with discovery, against the municipality; it is Aurora that has those resources.

---

[2] Plaintiffs will not repeat arguments already set forth in response to that motion at [Doc. 52], but they are equally relevant here and are incorporated herein by reference.

[3] Indeed, the bifurcation that Defendants propose is not common in this District. In over two decades of civil rights practice, undersigned counsel has not seen it happen even once.

3

*See id.* at 504.

Additionally, courts are wary of the "danger that bifurcation may deprive plaintiffs of their legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into the court, replacing it with a sterile or laboratory atmosphere." *Owensby v. City of Cincinnati*, 385 F. Supp. 2d 626, 666-667 (S.D. Ohio 2004). This concern is particularly heightened in the civil rights context, because of the public interest in adjudicating municipal liability: "in practice [bifurcation] may only serve…to prevent the City from ever standing trial for any purported constitutional violation and from suffering a concomitant award of damages for its role in the cumulative malfeasance." *Id.*; *see also, e.g., Marcum v. Scioto Cty.*, 2012 U.S. Dist. LEXIS 93042, *8 (S.D. Ohio 2012). Civil rights plaintiffs have "a profound interest in pursuing [] claims with an eye toward institutional reform," and § 1983 exists to deter future violations as well as to provide compensation for injuries as well. *Gomez v. Guevara*, 2019 U.S. Dist. LEXIS 155120, *13 (N.D. Ill. April 8, 2019). "[A] judgment naming the city itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the city." *Id.* "[I]f trial and discovery were routinely bifurcated to exclude or delay *Monell* claims, it would be almost impossible for litigants to ever discover, and bring to light, evidence of governmental abuses," including "policies and customs that may encourage unconstitutional abuses of power." *Daniels v. City of Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa 2013).

Bifurcation would "not only offend public policy; [it would] ignore settled civil rights law." Colbert, 44 HASTINGS L.J. at 505. Civil rights litigation has always been about more than the exchange of money from individual bad actors to those they have wronged. *See City of Riverside v. Rivera*, 477 U.S. 561, 574-75 (1986). Moreover, "[f]oreclosing civil rights remedies

4

for systemic police abuses…calls into question the essential legitimacy of the rule of law." Colbert, 44 HASTINGS L.J. at 505. As a case of very significant public interest, the inevitable years-long delay contemplated by Defendants' effort to bifurcate will erode public confidence in the judicial process, as the public will perceive that Plaintiffs' access to justice against the very culpable municipal Defendant in this case is delayed for years. *See* [Doc. 52 at 11-12]. Thus, to achieve the critical accountability and deterrence goals of § 1983, "[t]he City…must face the music with respect to the merits of the *Monell* claims." *Gomez*, 2019 U.S. Dist. LEXIS 155120, at *13.[4]

Conversely, Defendants' proposed rule, namely that the number of previous instances where Aurora has violated its citizens' constitutional rights weighs *in favor* of bifurcation, would create a perverse system where the *worst* actors are rewarded with bifurcation (and years-long delay), while those who have caused the violation of the constitution only a few occasions would face discovery, and litigation, on municipal claims. This would be a perverse incentive indeed.

"In the end, [D]efendant[s'] proposition would amount to no more than a complicated legal benediction," in contravention of "the time-honored premise that 'an unreasonable delay in a case's resolution amounts to prejudice to the one opposing separation. [Such delay] [] is clearly not in the public interest.'" *Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995) (citation omitted). "[A] private citizen is entitled to claim the timely protection of the law." *Sanchez v. Hartley*, 2016 U.S. Dist. LEXIS 185020, at *17-18 (D. Colo. Apr. 26, 2016) (citing *Marbury v. Madison*, 5 U.S. 137, (1803)). Because bifurcation of discovery and trial would cause Plaintiffs undue prejudice, Defendants' motion must be denied on this ground alone. *See Angelo*, 11 F.3d

---

[4] Delaying determination of Aurora's liability risks prolonging its customs and practices that cause constitutional violations. *See* Colbert, 44 HASTINGS L.J. at 505.

at 964. "Rule 42(b) permits bifurcation to 'avoid prejudice,' not to create it." *United States Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 181 (3d Cir. 1981).

### B. Defendants' vague statements regarding prejudice fail to carry their burden.

Defendants provide no specific detail of how they would be so prejudiced that discovery and trial on Plaintiffs' claim against Aurora should be delayed for years. Courts have made clear that "the decision to grant or deny bifurcation is a heavily fact-intensive analysis, dependent upon the costs and benefits of bifurcation under the unique circumstances of each case." *Awalt v. Marketti*, 2012 U.S. Dist. LEXIS 49182, *35 (N.D. Ill. April 9, 2012). Courts have denied motions to bifurcate where, as here, defendants only provide "[h]yperbolic words used to characterize an unspecified burden." *Zencka v. Lake Cnty.*, 2016 U.S. Dist. LEXIS 67849, *12-13 (N.D. Ind. May 24, 2016). Defendants' argument here is no different than the unavailing argument in *Awalt v. Marketti*, 2012 U.S. Dist. LEXIS 49182, *33-34 (N.D. Ill. April 9, 2012), and should be rejected for the same reasons. Further, to the extent there is any potential of prejudice to Defendants by trying the claims against Aurora together with the claims against the Individual Defendants, it could be ameliorated by, among other things, standard discovery restrictions and proper jury instruction. *See id.* at *33-49. This stands in stark contrast with the *actual* prejudice that Plaintiffs would face though years of delay, during which witnesses become unavailable, memories fade, and timely justice is denied.

Defendants' argument about the amount of discovery necessary to litigate the municipal claims, [Doc. 43] at 5, is entirely speculative; rather than the "potentially dozens of additional depositions" Aurora foreshadows, it is highly likely the parties will agree to one or a few Fed. R. Civ P. 30(b)(6) depositions to address the pattern and practice aspects of the case. A court denied a similar motion for bifurcation where a city "fail[ed] to specifically articulate how it will incur

significant costs in having to respond to Plaintiffs' discovery requests related to its *Monell* claims." *Miller v. City of Plymouth*, 2010 U.S. Dist. LEXIS 41960, *7 (N.D. Ind. April 29, 2010). That the discovery requests "would require Defendant City [] to disclose documents related to several types of policies that it maintained" was not sufficient to warrant bifurcation as the defendant had not shown "how complying with the requests in this case would be unduly burdensome." *Id.* Plaintiffs are entitled to timely obtain discovery related to their claims, unless and until this Court determines a *specific* discovery request is impermissible for the reasons set out in Fed. R. Civ. P. 26(b).

Of course, discovery will impose some burdens on Aurora—as it does every litigant. "[T]o the extent that [this Court finds that] Plaintiffs'…discovery requests [to Aurora] are overly broad or would impose undue burden and expense, the [C]ourt can tailor them as necessary upon the presentation of an appropriate motion." *Terry*, 2010 U.S. Dist. LEXIS 68623, *8-9. But there is hardly ever a basis to delay discovery against an entity. *See, e.g., Lane v. Yohn*, 2012 U.S. Dist. LEXIS 148463, at *4 (D. Colo. Oct. 15, 2012). Defendants' one-sentence argument for a stay of discovery related to the *Monell* claims, [Doc. 43] at 9, not only fails to meet their burden under Fed. R. Civ. P. 26(c) to show good cause, but also merely constitutes a duplicative request for a stay of discovery to which Defendants are not entitled. *See* [Doc. 52].

And "[d]iscovery is still in its early stages and thus any analysis of undue prejudice is premature and speculative." *Estate of Loury v. City of Chicago*, 2017 U.S. Dist. LEXIS 60459, *13-14 (N.D. Ill. Apr. 20, 2017) (denying motion to bifurcate discovery and trial); *see also Zampetis v. City of Atl. City*, 2018 U.S. Dist. LEXIS 187937, *4-6 (D.N.J. November 2, 2018); *Tanner v. City of Waukegan*, 2011 U.S. Dist. LEXIS 16025, *28-29 (N.D. Ill. February 16, 2011). In a case with a nearly identical procedural posture, another court thoroughly rejected

bifurcation, stating:

> [I]t is far too early to determine whether bifurcation is appropriate…. Ordering bifurcation at this incredibly-early stage of the case would be tantamount to establishing a bright-line rule that bifurcation is automatically appropriate in every Section 1983 case that includes both a claim against a governmental employee and a *Monell* claim against his or her employer. Defendant has referred [the court] to no case from any jurisdiction containing such a sweeping holding.

*Daniels*, 294 F.R.D. at 511-512. Defendants argue for exactly this "bright-line rule that bifurcation is automatically appropriate." *Id.*[5] Defendants "present[] no unusual or special circumstances" that justify bifurcation, merely making a general argument that such bifurcation should be a matter of routine in all cases. *D'Arrigo v. Gloucester City*, 2007 U.S. Dist. LEXIS 92520, *10 (D.N.J. December 17, 2007). However, "[t]his practice is not permitted." *Id.* ("[A] routine order of bifurcation is a practice at odds with the requirement that discretion be exercised and seems to run counter to the intention of the rule drafters.").

Indeed, some courts "rarely entertain[] bifurcation, even when one set of claims depends upon determination of another,…out of respect for Congress' direction that courts pursue the speedy and inexpensive resolution of civil actions." *Terry v. Cty. of Milwaukee*, 2018 U.S. Dist. LEXIS 40522, at *5-6 (E.D. Wis. March 13, 2018). Of course, it is far from certain that

---

[5] Defendant's contention that Aurora has a fiduciary duty to ensure public funds are expended efficiently, especially during the COVID-19 pandemic, [Doc. 43] at 5, misses the mark. Such an interest in conserving taxpayer dollars would be present in every case with claims against individual and municipal defendants, so adoption of such rationale would effectively mean adopting a rule of automatic bifurcation. In fact, delaying discovery and trial on the *Monell* claim *undermines* the public interest, not only because of the public policy reasons to hold police agencies accountable for abusive policies and customs, *see, e.g.*, Colbert, 44 HASTINGS L.J. at 504-05, but also because there is a "strong interest held by the public in general regarding the prompt and efficient handling of all litigation." *Lester v. Gene Express, Inc.*, 2010 U.S. Dist. LEXIS 25379, at *5 (D. Colo. Mar. 2, 2010).

Plaintiffs' claims against Aurora even depend upon the resolution of Plaintiffs' claims against the Individual Defendants. The determination whether they do will not occur until, at the earliest, after the close of discovery, when Individual Defendants file the inevitable summary judgment (despite the obviously disputed material facts), because not all Individual Defendants have sought dismissal of all claims against them. And even in the exceedingly unlikely event that claims against the Individual Defendants would be dismissed on summary judgment, such dismissal may not resolve the claims against Aurora because courts may choose to consider *either* of the two prongs of the qualified immunity test first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Many cases that grant defendants qualified immunity do so on the basis that the defendant did not violate clearly established law, without reaching the question whether the defendant committed a constitutional violation. Such a qualified immunity determination would not protect Aurora, so a dismissal of an individual defendant would not necessarily end the litigation against the City. *See, e.g.*, *Pyle v. Woods*, 874 F.3d 1257, 1264 (10th Cir. 2017). Plus, even if "the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights" *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1033-34 (10th Cir. 2020). This further undermines Defendants' arguments that the adjudication of Plaintiffs' claims against the Individual Defendants must occur before the adjudication of Plaintiffs' *Monell* claim.

There exists a real chance that the determination whether the Individual Defendants violated Plaintiffs' constitutional rights will not occur until trial, or even after post-trial appeal, at which point the parties and the court will have expended significant time and resources much of which, if this Motion were granted, would need to be expended *again*, in whole, when discovery

9

on the claims against Aurora would start after the first trial. Far from enhancing judicial efficiency, Defendants' proposal almost assures two full cases, rather than one, that naturally contain all claims based on the same incident.[6]

### C. Bifurcation would create burdens on the parties and this Court.

Defendants' claims of prejudice are disingenuous, because *Defendants* will be relying on *Monell* evidence in their own defense. "[T]he City's protestations of fairness for the individual officers might well be overstated," because the officers will defend their actions by insisting that they were following the custom, practice, or policy of Aurora. *Owensby*, 385 F. Supp. 2d at 666. Therefore, "all of the evidence regarding the City's policies and training would be brought before the jury. If the second trial against the municipal Defendants were then necessary, the Court would be obligated to introduce this material before a jury twice." *Id.* Thus, "[i]t is difficult to see how [Defendants'] proposed arrangement, in practice, yields any benefit to judicial efficiency or resources." *Id.*

Moreover, bifurcation would almost certainly entail its own burdens: parties will inevitably raise repeated disputes regarding whether any given discovery request addresses the claims against individual defendants or that against the municipality, burdening party and

---

[6] *Boyd v. Montezuma County*, the only case Defendants cite from this District, is readily distinguishable. In *Boyd*, the court reasoned that the individual liability claims (based a run-of-the-mill traffic stop with allegations of wrongful arrest and excessive force based on an officer's pointing of his firearm) were dwarfed by the municipal liability claims. The court imagined a "two day" trial for only the individual claims, whereas two weeks would be necessary to try all claims simultaneously. 2015 U.S. Dist. LEXIS 62799, *7 (D. Colo. May 12, 2015); *see also* 2015 U.S. Dist. LEXIS 62801 (D. Colo. May 12, 2015) (setting out facts of the claims in *Boyd*). This imbalance convinced the court to bifurcate discovery and trial. In this police-killing case, there is no such imbalance: Plaintiffs' proof of individual liability and damages will itself necessitate a weeks-long trial. Proof of municipal liability will undoubtedly make trial longer, but it will simply not make trial five times longer, as the court estimated in *Boyd*.

judicial resources. "Bifurcation…may add unnecessary complexity and confusion to the discovery process…. If the [c]ourt were to grant the bifurcation motion, the need for the parties to separate *Monell* evidence from individual liability evidence may further complicate rather than simplify these proceedings." *Terry v. Cook County Dep't of Corr.*, 2010 U.S. Dist. LEXIS 68623, at *8-9 (N.D. Ill. July 8, 2010).[7] Bifurcation "only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery." *Gomez*, 2019 U.S. Dist. LEXIS 155120, *10-11.

Ultimately, given these extra burdens caused by bifurcation, Defendants have failed to show that this Court's means of managing a case are insufficient to protect them from generalized fears of looming prejudice. Court after court has denied motions to bifurcate because the court can manage a discovery process and trial with the many tools available. *See, e.g., Martinez v. City of Oxnard*, 2005 U.S. Dist. LEXIS 32189, *16-17 (C.D. Cal. June 23, 2005) (denying bifurcation because defendants had not argued how limiting instructions and evidentiary rulings were insufficient to protect against any prejudice and concluding that defendants' assertion of jury confusion was "simply not legitimate").[8]

---

[7] *See also Gomez v. Guevara*, 2019 U.S. Dist. LEXIS 155120, at *10-11 (N.D. Ill. 2019); *Rockett v. Renth*, 2016 U.S. Dist. LEXIS 30177, at *9 (S.D. Ill. 2016); *Ott v. City of Milwaukee*, 2010 U.S. Dist. LEXIS 134572, at *8-9 (E.D. Wis. 2010).

[8] *See also, e.g., Rosa v. Town of E. Hartford*, 2005 U.S. Dist. LEXIS 5302, at *13-14 (D. Conn. March 31, 2005) (concluding that "separate trials would not be efficient and would inconvenience the court, the jury, and the plaintiff," and that defendants' prejudice claims were "exaggerated" in light of available tools, such as "a special verdict form, a well-adapted jury charge, and carefully crafted limiting instructions."); *Rodriguez v. City of Chicago*, 429 F. Supp. 3d 537, 543 (N.D. Ill. December 17, 2019); *Smith v. City of Holyoke*, 2020 U.S. Dist. LEXIS 54860, *42 (D. Mass. March 30, 2020); *Marcum*, 2012 U.S. Dist. LEXIS 93042, *5-8; *D'Arrigo*, 2007 U.S. Dist. LEXIS 92520, *7-10; *Schinagel v. City of Albuquerque*, 2008 U.S. Dist. LEXIS 138526, *19-21 (D.N.M. 2008); *Saviour v. Kansas City*, 1992 U.S. Dist. LEXIS 8813, *30 (D. Kan. 1992).

### D. **<u>Plaintiffs' individual and municipal liability claims are not separable.</u>**

Courts have correctly recognized that excessive force and *Monell* claims like Plaintiffs' are often intertwined. In 2019, for instance, the Third Circuit affirmed the denial of bifurcation, noting it "would have served no purpose because of the intertwining nature of the evidence of individual and municipal liability." *Stadler v. Abrams*, 785 Fed. Appx. 66, 68 (3d Cir. 2019). The court stressed that such intertwining "is frequently the case in claims of *Monell* liability where individual officers are sued for their individual conduct and a municipality's policy on that use of force becomes relevant." *Id.*; *see also, e.g., Valdez v. Motyka*, 2020 U.S. Dist. LEXIS 122359, at *47 (D. Colo. July 13, 2020) (denying defendant's motion to bifurcate trial in part because plaintiff's "remaining *Monell* theories are closely connected to his individual liability theory against" the officer who used excessive force.); *Ryan v. City of Salem*, 2017 U.S. Dist. LEXIS 85753, *4-5 (D. Or. June 5, 2017); *Owensby*, 385 F. Supp. 2d at 666.

Here, not only would Aurora's policies and training be relevant to the claims against the Individual Defendants *and* against Aurora, but so would Aurora's and Aurora officers' conduct *after* Mr. McClain's killing, including Aurora's multiple investigations and determinations related to the incident, as well as Aurora officers' subsequent reenactment of the chokehold used against Mr. McClain in the spot where he was killed, and their circulation of those photos to others in the department. *See* [Doc. 1] at ¶¶ 308-337. Indeed, the fact that, according to Defendants, out of about 200 allegations relating to the claims against Aurora, only 27 address other incidents, [Doc. 43] at 6-7, shows how intertwined the claims against Aurora and those against Individual Defendants really are—contradicting Defendants' argument that evidence as to the former would be inadmissible in a trial of the latter, especially when, as discussed above,

Individual Defendants will testify their conduct complied with Aurora policy and training.[9]

## IV. CONCLUSION

Defendants' Motion to Bifurcate should be denied.

## CERTIFICATION OF WORD COUNT

Pursuant to this Court's Practice Standards, undersigned counsel certifies that this brief contains **3947** words.

Respectfully submitted this 4th day of January 2021.

                              Killmer, Lane & Newman, LLP

                              *s/ Mari Newman*
                              _____
                              Mari Newman
                              Michael Fairhurst
                              Liana Gerstle Orshan
                              1543 Champa Street, Suite 400
                              Denver, Colorado 80202
                              Phone: (303) 571-1000
                              mnewman@kln-law.com
                              mfairhurst@kln-law.com
                              lorshan@kln-law.com

                              *Attorneys for Plaintiffs*

---

[9] The substantial discovery inefficiencies created by Defendant's proposed bifurcation are "exacerbated in cases such as this where there is a significant overlap in the witnesses, experts, and evidence that would be involved in each phase of litigation. This could create double work in the sense of, for example, needing to depose witnesses or solicit testimony first regarding [Plaintiffs'] specific case and a second time regarding how the City's policies impacted that case work." *Gomez*, 2019 U.S. Dist. LEXIS 155120, *10-11.

**CERTIFICATE OF SERVICE**

   I hereby certify that on January 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter Morales
Isabelle Evans
Aurora City Attorney's Office
15151 E. Alameda Parkway, Suite 5300
Aurora, CO 80012
pmorales@auroragov.org
ievans@auroragov.org

*Counsel for Defendant City of Aurora, and Defendants Woodyard, Roedema, Rosenblatt, Green, Leonard, Ward, Dittrich, Marrero, Root, Mullins-Orcutt, Dunson, Nunez, Cichuniec, Cooper, in their official capacities*

Jonathan M. Abramson
Yulia Nikolaevskaya
Kissinger & Fellman, P.C.
3773 Cherry Creek N. Dr., #900
Denver, CO 80209
jonathan@kandf.com
julie@kandf.com

*Attorney for Defendants Dittrich, Dunson, Green, Leonard, Marrero, Mullins-Orcutt, Nunez, Roedema, Root, Rosenblatt, Ward, and Woodyard in their individual capacities*

Stephen J. Hensen
Partner
Hensen | DuWaldt
1001 Bannock St., Suite 39
Denver, CO 80204
steve@hendulaw.com

*Attorney for Dr. Eric Hill*

Michael Lowe
David Goddard
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
MLowe@brunolawyers.com
dgoddard@brunolawyers.com

*Attorneys for Defendants Cichuniec and Cooper in their individual capacities*

KILLMER, LANE & NEWMAN, LLP

*s/ Liana Orshan*

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Liana Orshan