IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02389-DDD-NRN

ESTATE OF ELIJAH JAVON MCCLAIN, by and through its personal representatives Sheneen McClain and Lawayne Mosley;
SHENEEN MCCLAIN, individually;
LAWAYNE MOSLEY, individually,

Plaintiffs,

v.

CITY OF AURORA, COLORADO, a municipality;
OFFICER NATHAN WOODYARD, in his individual and official capacity;
OFFICER RANDY ROEDEMA, in his individual and official capacity;
OFFICER JASON ROSENBLATT, in his individual and official capacity;
OFFICER MATTHEW GREEN, in his individual and official capacity;
SERGEANT DALE LEONARD, in his individual and official capacity;
OFFICER ALICIA WARD, in her individual and official capacity;
OFFICER KYLE DITTRICH, in his individual and official capacity;
OFFICER ERICA MARRERO, in her individual and official capacity;
OFFICER JAMES ROOT, in his individual and official capacity;
OFFICER JORDAN MULLINS-ORCUTT, in his individual and official capacity;
OFFICER DARREN DUNSON, in his individual and official capacity;
OFFICER STEPHANIE NGHIEM, in her individual and official capacity;
SERGEANT RACHEL NUNEZ, in her individual and official capacity;
LIEUTENANT PETER CICHUNIEC, in his individual and official capacity;
PARAMEDIC JEREMY COOPER, in his individual and official capacity;
DR. ERIC HILL, in his individual capacity,

Defendants.

## ORDER ON
## DEFENDANTS' MOTION TO BIFURCATE INDIVIDUAL AND *MONELL* CLAIMS AND MOTION FOR STAY OF DISCOVERY FOR *MONELL* CLAIMS (Dkt. #43)
## and
## DEFENDANTS' JOINT MOTION TO STAY DISCOVERY (Dkt. #46)

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #54) issued by Judge Daniel D. Domenico partially referring Defendants' Motion to Bifurcate Individual and *Monell* Claims and Motion for Stay of Discovery for *Monell* Claims[1] (Dkt. #43) and Defendants' Joint Motion to Stay Discovery (Dkt. #46). The Court has carefully considered the motions and Plaintiffs' responses (Dkt. ##52 & 53). On January 6, 2021, Plaintiffs filed a Notice of Supplemental Authority (Dkt. #56), to which Defendants' responded (Dkt. #59). On January 8, 2021, Plaintiffs filed a second Notice of Supplemental Authority (Dkt. #58).

Upon learning that the Colorado Attorney General announced a grand jury would be investigating Elijah McClain's death, on January 11, 2021, the Court *sua sponte* ordered the Parties to brief any effect this investigation has on whether discovery should be stayed (Dkt. #60), which they did on January 19, 2021 (Dkt. ##67 & 68). The next day, Plaintiffs filed an Amended Complaint (Dkt. #69), which mooted the motions to dismiss (Dkt. #71). However, because Defendants are likely to move to dismiss the Amended Complaint, the Court will address the issues Defendants raise in the subject motions, and unless the circumstances change dramatically, this Order shall remain in effect if and when any subsequent motions to dismiss are filed.

The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court, now being fully informed, makes the following findings of fact, conclusions of law, and order.

## LEGAL STANDARD

---

[1] Judge Domenico only referred that portion of the motion wherein the individual Defendants and the City of Aurora seek a bifurcation of discovery and a stay of discovery. He did not refer Defendants' request to bifurcate trial. *See* Dkt. #54.

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. March 30, 2006). Federal Rule of Civil Procedure 26 does, however, provide that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . .. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .." Fed. R. Civ. P. 26(c). Moreover, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)). An order staying discovery is thus an appropriate exercise of this Court's discretion. *Id.*

A stay of all discovery is generally disfavored. *Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009). When considering a stay of discovery, this Court has considered the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the Court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See String Cheese Incident*, 2006 WL 894955, at *2.

## ANALYSIS

### I. Whether to Stay Discovery on Plaintiffs' *Monell* Claims

Defendants argue that staying discovery on Plaintiffs' *Monell* claims against the City of Aurora would further the interests of efficiency and judicial economy because "[t]he vast scope of *Monell* discovery could be rendered unnecessary by a finding by the Court or a jury that there was no underlying constitutional violation." Judge Christine M. Arguello recently rejected an identical argument in *Estate of Melvin by & through Melvin v. City of Colorado Springs, Colorado*, No. 20-cv-00991-CMA-KMT, 2021 WL 50872 (D. Colo. Jan. 5, 2021). After noting that bifurcating discovery in these types of cases "is uncommon in this jurisdiction," Judge Arguello reasons that permitting bifurcation "would allow this case to languish on the Court's docket, potentially for years, and would be inconsistent with the Court's obligation to oversee 'the just, speedy, and inexpensive determination of every action and proceeding.'" 2021 WL 50872, at *2 (quoting Fed. R. Civ. P. 1). She also states that bifurcating discovery would "merely substitute some discovery disputes for others," and that "generic arguments concerning the cost of discovery on Plaintiff's *Monell* claims would apply in any Section 1983 case involving individual and municipal liability claims." *Id.* Judge Arguello found that bifurcating and staying discovery would prejudice the plaintiff who, like Plaintiffs' here, alleged grave constitutional violations and had an interest in expeditiously proceeding with discovery. *Id.*

The Court finds this reasoning persuasive and sound. Bifurcating discovery would necessarily entail a lengthy delay in the case's resolution and therefore prejudice Plaintiffs and undermine the Court's ability to efficiently manage its docket. Bifurcation of discovery would also likely result in wasteful and unnecessary disputes regarding what discovery relates to the individual claims as opposed to the *Monell* claims. These

burdens outweigh the largely speculative menace of excessive discovery identified by Defendants in their motion.

Moreover, Defendants' contention that an underlying constitutional violation by one of the individual Defendants is required in order to impose municipal liability on the City of Aurora is not an accurate reflection of the law. It is true that "the general rule . . . is that there must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable." *Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020) (citing *Trigalet v. City of Tulsa*, 239 F.3d 1150 (10th Cir. 2001)). However,

> sometimes the municipal policy devolves responsibility across multiple officers. In those situations, the policies may be unconstitutional precisely because they fail to ensure that any single officer is positioned to prevent the constitutional violation. Where the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable. That is, the municipality may not escape liability by acting through twenty hands rather than two.

*Id.* (citing *Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir. 1985)). Therefore, the resolution of Plaintiffs' claims against the individual Defendants in the individual Defendants' favor does not necessarily foreclose a finding of municipal liability against the City of Aurora. This also weighs against bifurcating discovery.

For these reasons, Defendants motion to bifurcate discovery is denied.

## II. Whether to Stay Discovery on Plaintiffs' Individual Liability Claims

The next question is whether it would be appropriate to stay discovery as to the individual Defendants based on assertions of qualified immunity.[2] Courts have

---

[2] As noted above, Defendants' motions to dismiss have been rendered moot by the filing of the Amended Complaint. However, the Court anticipates that the individual Defendants will reassert the defense of qualified immunity in the next round of motions.

recognized that discovery may be inappropriate while issues of immunity or jurisdiction are being resolved. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991) (noting that immunity is a threshold issue, and discovery should not be allowed while the issue is pending); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (same). The Supreme Court has noted that evaluating the defense of qualified immunity is a threshold issue, and "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (same). However, the defense of qualified immunity "is not a bar to all discovery." *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004). There are certain circumstances when discovery is permissible despite an assertion of qualified immunity, including cases alleging official-capacity claims, requests for injunctive (as opposed to monetary) relief, and claims against entities, not individuals. *See id.* at 643. Additionally, permitting discovery up until the point that qualified immunity is raised may be appropriate, particularly when the defense is not advanced until the filing of a motion for summary judgment. *Id.* at 643–44.

The Court finds that a balance of the above factors does not favor a stay in this matter. The individual Defendants' mere assertion that they are entitled to qualified immunity does not end the analysis. Even when qualified immunity is raised, courts in this District generally disfavor a stay of all discovery. *See Rome*, 225 F.R.D. at 643 ("qualified immunity does not protect an official from *all* discovery, but only from that which is 'broad-reaching'") (quoting *Crawford–El v. Britton*, 523 U.S. 574, 593, n.14 (1998) (emphasis in original)). Magistrate Judge Nina Y. Wang was confronted with this

6

issue in *Estate of Ronquillo by & through Sanchez v. City & Cty. of Denver*, No. 16-cv-01664-CMA-NYW, 2016 WL 10842586 (D. Colo. Nov. 14, 2016). In denying the defendants' motion to stay, Judge Wang reasoned as follows:

> The prevailing law provides that assertions of qualified immunity will often warrant a stay of discovery. It also recognizes, however, that in some circumstances discovery should proceed "to elicit facts pertinent to the defense." *Rome*, 225 F.R.D. at 643. *See also Currier v. Doran*, 242 F.3d 905, 914 (10th Cir. 2001) (although qualified immunity protects public officials "from the costs associated with defending against lawsuits, particularly baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before at least some discovery [is] conducted") (citing *Crawford-El*, 523 U.S. at 593-94, n.14); *Choate v. City of Gardner, Kansas*, No. 16-2118-JWL, 2016 WL 2958464, at *4 (D. Kan. May 23, 2016) (denying motion to dismiss excessive force claim finding, in part, that the court could not conclude as a matter of law from the video of the event at issue that the officers' use of deadly force was justified). It is not proper for this court to make factual findings in the context of these Motions to Stay. In light of the pending Motions to Dismiss that remain before Judge Arguello, the inquiry into the totality of the circumstances required by the court, and the potential for disputed material facts surrounding the qualified immunity defense as evidenced by the Parties' briefing, this court finds that a stay of all discovery is not appropriate.

2016 WL 10842586, at *4. The same factors considered by Judge Wang likewise militate against staying all discovery here. I note that discovery will continue against the Defendant entity, the City of Aurora, for whom the defense of qualified immunity is not available. The individual Defendants would likely be witnesses with respect to the claims against the City of Aurora and will be deposed in any event. It makes no sense to have the individual Defendants be deposed as witnesses now, only to be re-deposed as parties later in the event their qualified immunity defenses are unsuccessful.

Furthermore, the *String Cheese* factors weigh in favor of proceeding with discovery. Plaintiffs have an undeniably strong interest in proceeding expeditiously with their case. "Like the government official who rightfully invokes the defense of qualified

7

immunity, a private citizen is entitled to claim the timely protection of the law." *Sanchez v. Hartley*, No. 13-cv-01945-WJM-CBS, 2016 WL 7176718, at *7 (D. Colo. Apr. 26, 2016); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury."). This case has been pending for over five months. A new round of motions to dismiss are expected to be filed and, given the complexity of the case and the number of claims and Defendants, a final ruling on said motions will probably take a significant amount of time. The plaintiffs here are family members of a dead young man. Elijah McClain's family deserves answers to the questions of why he died and whether anyone or any entity is to be held to account. The wheels of justice turn slowly in any event, but issuing the requested stay would cause those wheels to simply grind to a halt, delaying for months or even years the process of answering those important questions.

Furthermore, Plaintiffs' interest is not outweighed by any burden on the individual Defendants. In light of the motions to dismiss that were previously filed, it is unlikely that all of the individual Defendants will move for dismissal.[3] Therefore, discovery will commence as to some claims against some Defendants. And because Defendants would likely be deposed anyway as witnesses regarding Plaintiffs' municipal liability claims, any additional burden associated with also being asked questions as to the individual liability claims would be minimal. *See Estate of Ronquillo,* 2016 WL 10842586, at *4 ("While this court understands that discovery may burden the Individual

---

[3] Defendants Officer Woodyard, Officer Roedema, and Former Officer Rosenblatt did not seek to dismiss Plaintiffs' excessive force claim against them.

8

Defendants involved in this action and distract from their core professional responsibilities, such is always the case for witnesses in civil litigation."). In short, "Defendants have established no particularized facts that demonstrate they will suffer a clearly defined and serious harm associated with moving forward with discovery." *Id.*

Proceeding with discovery also promotes the Court's interest in efficiently managing its docket.

Finally, the interests of persons not parties to the civil litigation and the public interest are not harmed by moving forward with the case. To the contrary, the Court can take judicial notice that this case has received widespread attention locally, state-wide, and nationally. The public, too, has a strong interest in knowing the answers to the same difficult questions being posed by Mr. McClain's family. It is not in the interest of the public or in the interest of justice to "put on the back burner" discovery in a case that raises significant questions about the City of Aurora's policing and paramedic practices. It may be that there is nothing constitutionally wrong with the conduct that eventually led to Mr. McClain's death. If so, then the public will be better served by knowing that hard reality, as fairly determined by the judicial process, sooner rather than later. In short, a stay of discovery is not appropriate in this case.

**III. Whether to Stay Discovery Pending the State Grand Jury Investigation**

The final issue before the Court is what effect, if any, the recent announcement by the Colorado Attorney General that a grand jury has been convened regarding the death of Elijah McClain.

"The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights"

*Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (citations omitted); *see also Ben Ezra Weinstein & Co., Inc. v. Am. Online, Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) ("[w]hen applying for a stay, a party must demonstrate a clear case of hardship or inequity") (citations and internal quotations omitted). "When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth Amendment rights are implicated. . . . A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Creative Consumer Concepts, Inc.*, 563 F.3d at 1080 (citations omitted). "A district court may also stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution." *Id.* at 1080–81.

Courts in this District typically consider six factors when determining whether to stay a case in light of pending criminal matters: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal case, including whether there has been an indictment; (3) the interests of and prejudice to the plaintiff; (4) the interests of and burden on the defendant; (5) the interest of the court; and (6) the public interest. *See Davis v. United States*, No. 20-cv-01348-CMA-NYW, 2020 WL 6206292, at *2 (D. Colo. Sept. 28, 2020), *report and recommendation adopted*, No. 20-CV-01348-CMA-NYW, 2020 WL 6204258 (D. Colo. Oct. 22, 2020); *Hartford Life & Accident Ins. Co. v. Nickal*, No. 17-cv-02556-MJW, 2018 WL 1173150, at *2 (D. Colo. Mar. 6, 2018).

The first factor weighs in favor of a stay. The civil action and grand jury proceeding overlap as they both involve the August 24, 2019 death of Elijah McClain

10

The second factor weighs heavily against a stay. As Defendants note, the existence of an indictment or pending charges is often determinative of entitlement to a stay. No one, including the individual Defendants, has been indicted on criminal charges as a result of Mr. McClain's death or the grand jury investigation. "The absence of an indictment against Defendants weighs strongly against granting them a stay in this action." *S.E.C. v. Mantria Corp.*, No. 09-cv-02676-CMA-MJW, 2012 WL 1901219, at *2 (D. Colo. May 25, 2012); *see also Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir.1989) ("The case for staying civil proceedings is a far weaker one when no indictment has been returned, and no Fifth Amendment privilege is threatened." (internal quotation marks, alterations, and citation omitted)); *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C.Cir.1980) (noting that, "where no indictment has been returned," the purpose of staying a civil proceeding is "far weaker" than when a criminal prosecution has commenced).

As discussed above, Plaintiffs have a powerful interest in avoiding an open-ended, indefinite stay and proceeding expeditiously with their case. The individual Defendants' countervailing burden does not outweigh this interest because "the Tenth Circuit affirms that a defendant has no right not to choose between testifying in a civil matter or invoking his/her Fifth Amendment rights." *Brancato v. Panio*, No. 12-cv-02338-MSK-MEH, 2012 WL 6137472, at *2 (D. Colo. Dec. 7, 2012). Thus, the third and fourth factors weigh against a stay.

Finally, proceeding with discovery promotes the Court's interest in efficiently managing its docket, while the public interest is not harmed by moving forward with the case. Indeed, the very existence of the grand jury investigation demonstrates a public

11

interest in answering questions about what happened to Mr. McClain and why. The fact that the Attorney General has convened a grand jury to investigate these issues should not, without more, be a basis for denying the Plaintiffs their right to use the civil discovery process in pursuit of their claims.

## CONCLUSION

**WHEREFORE**, it is **ORDERED** that Defendants' Joint Motion to Stay Discovery (Dkt. #46) and the referred portion of Defendants' Motion to Bifurcate Individual and *Monell* Claims and Motion for Stay of Discovery for *Monell* Claims (Dkt. #43) are **DENIED**.

BY THE COURT

Date:  January 29, 2021
       Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge