IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

*Civil Action No. 20-cv-02389-DDD-NRN*

ESTATE OF ELIJAH JAVON MCCLAIN, by and through its personal representatives Sheneen
McClain and Lawayne Mosley,
SHENEEN MCCLAIN, individually,
LAWAYNE MOSLEY, individually,

       Plaintiffs,

v.

CITY OF AURORA, COLORADO, a municipality,
OFFICER NATHAN WOODYARD, in his individual and official capacity,
OFFICER RANDY ROEDEMA, in his individual and official capacity,
OFFICER JASON ROSENBLATT, in his individual and official capacity,
OFFICER MATTHEW GREEN, in his individual and official capacity,
SERGEANT DALE LEONARD, in his individual and official capacity,
OFFICER ALICIA WARD, in her individual and official capacity,
OFFICER KYLE DITTRICH, in his individual and official capacity,
OFFICER ERICA MARRERO, in her individual and official capacity,
OFFICER JAMES ROOT, in his individual and official capacity,
OFFICER JORDAN MULLINS-ORCUTT, in his individual and official capacity,
OFFICER DARREN DUNSON, in his individual and official capacity,
SERGEANT RACHEL NUNEZ, in her individual and official capacity,
OFFICER STEPHANIE NGHIEM, in her individual and official capacity,
LIEUTENANT PETER CICHUNIEC, in his individual and official capacity,
PARAMEDIC JEREMY COOPER, in his individual and official capacity,
DR. ERIC HILL, in his individual capacity,

       Defendants.

## JOINT STATEMENT IN ADVANCE OF DISCOVERY DISPUTE HEARING

      Plaintiffs and Defendants, by and through their undersigned counsel of record, hereby

submit the following in advance of the discovery dispute hearing scheduled for April 23, 2021 at

1:00 p.m.

## DEFENDANTS' POSITION

A.   <u>Chronology of Discovery Dispute</u>

This is a tragic case that Defendants sincerely wish to attempt to resolve at mediation. On December 24, 2020, the City and APD Defendants served Plaintiffs with their First Set of Interrogatories and Request for Production of Documents ("Requests"). As Plaintiffs and Defendants were contemplating pursuing mediation and settlement, the Requests were narrowly tailored to allow Defendants the opportunity to properly evaluate the case, including causation and damages, in advance of mediation.[1] Mediation was scheduled for April 15 and April 23, 2021. Plaintiffs were formally served with the Requests only after informal attempts to obtain documents from Plaintiffs' counsel pertaining to Mr. McClain's medical, mental health/behavioral, educational and employment history failed. The experts retained by Defendants (and their insurance carrier) require the requested information to evaluate this case in advance of mediation.

The interrogatories and requests for production of documents contained in Requests, were substantially modeled after the Colorado Pattern Interrogatories under Colo. R. Civ. P. 33, Form 20.  As part of the Requests, Defendants sought records and information relating to Mr. McClain's medical and mental health/behavioral history, pharmacy prescription records, educational/vocational training and employment history. Plaintiffs' responses were due on January 24, 2021. Plaintiffs requested an extension of time and Defendants agreed to extend the response deadline to February 24, 2021. A further extension to March 10, 2021 was agreed to as requested by Ms. McClain's newly retained counsel, Mr. Mohamedbhai. When Defendants agreed to the

---

[1] On February 2, 2021, during a hearing before this Court on parties' joint request to stay the case, this Court stayed response to the Amended Complaint and designation of any non-parties at fault but did not stay outstanding written discovery subject of this discovery dispute.

March 10, 2021 extension of time, they reiterated that it was their expectation that Plaintiffs' response to the Requests would be substantive. Defendants conveyed that in order for Defendants to be in a position to resolve this case in mediation, the discovery Defendants sought must be made available on March 10, 2021. Defendants did not receive Plaintiffs' responses on March 10, 2021. On that date, Plaintiffs asked Defendants to agree to broaden the protections to the documents they were willing to produce. This protection would go beyond the Stipulated Protective Order (ECF 31) already in effect. Defendants agreed. Thus, the parties decided that Plaintiffs' documents produced in response to the Requests would be designated "Mediator's and Defendants' Attorneys' Eyes Only".

On March 11, 2021, Plaintiffs produced their response to the Requests, attached hereto as **Exhibit 1**.[2] Despite Plaintiffs' agreement to produce substantive responses, Plaintiffs' responses contained unfounded objections, evasive and incomplete answers, and lacked the substantive information requested by Defendants. At no time after Defendants served Plaintiffs with the Requests did any Plaintiff seek a Protective Order from the Court regarding the requested records.

As to Plaintiffs' responses regarding Mr. McClain's medical, educational and employment records, responses provided to Defendants were extremely limited in time and scope.[3] Based on Defendants' review of the records produced, Defendants believe that additional medical, mental

---

[2] In contrast, the City produced its discovery to the Plaintiffs on December 24, 2021, pursuant to its commitment to do so, producing thousands of pages of requested documents. In addition, prior to the date, the City was engaged in "rolling production" for certain items which the Plaintiffs requested prior to the agreed upon date of December 24, 2021. All other Defendants responded to Plaintiffs' Discovery Requests on February 18, 2021.

[3] Because records provided from Plaintiffs to Defendants are subject to additional designation as "Mediator's and Defendants' Attorneys' Eyes Only", Defendants will not discuss the specific substance of the records in this statement. Defendants will elaborate on the substance and deficiencies of these responses and documents during the discovery dispute hearing with this Court. If the Court wishes to discuss any specific information from the Confidential records produced, in the interest of protecting Ms. McClain's privacy concerns, Defendants would agree to the protections provided under D.C.COLO.LCivR 7.2.

health/behavioral, prescription, employment, and educational records for Mr. McClain may exist. After further discussions with Plaintiffs' counsel, Plaintiffs agreed to produce additional records for Mr. McClain. On March 22, 2021, Plaintiffs produced supplemental medical records for Mr. McClain, but records produced were again limited in time and scope. Based on the review of the additional set of medical records for Mr. McClain, Defendants believe that other medical records for Mr. McClain may exist. No additional mental health/behavioral records, pharmacy prescription records, educational/vocational history, and employment history records were produced. No additional amendments were made to Plaintiffs' Discovery Responses.

Further conferrals between the parties took place but were not fruitful. Plaintiffs did not amend their deficient Discovery Responses, did not agree to provide additional records related to medical/mental health/behavioral history, pharmacy prescription records, educational/vocational history, and employment history, and refused to sign the releases previously provided by Defendants as to a variety of Mr. McClain's records. In light of deficient Discovery Responses which have impaired Defendants' experts to thoroughly analyze this matter for mediation and, consequently, prevented the insurance carrier from assessing the case, the mediation was rescheduled for June 10 and June 24, 2021.

B.      Defendants are Entitled to a Complete Set of Mr. McClain's Records

Defendants assert that the majority of Plaintiffs' responses to the Requests are deficient and do not waive their ability to further challenge Plaintiffs' responses if this case does not settle at mediation. However, for the purpose of case evaluation prior to the scheduled mediation, and in the interest of conserving the time of the Court, Defendants will focus on the deficiency of Plaintiffs' responses to Interrogatories #6, #10, #11 and Requests for Production of Documents

#1, #2, #3, #5, #6, #9, and #10. All of the above-mentioned interrogatories and requests for production of documents pertain to Mr. McClain's medical/mental health/behavioral history, pharmacy prescription records, educational/vocational history, and employment history records. Such information is relevant and must be produced to Defendants without limitations.

In this case, Plaintiffs allege that Defendants caused Mr. McClain's death. Because Plaintiffs put Mr. McClain's "cause of death" at issue, Defendants are entitled to a complete and uncurated set of Mr. McClain's medical records, including his mental health/behavioral and prescription records. Such information is relevant and especially important in light of the reports by Plaintiffs' retained experts who have imputed Mr. McClain's death to actions of the APD and AFD Defendants.[4] The requested information is necessary for Defendants' retained experts to pursue their own investigation and evaluation into the cause of Mr. McClain's death.[5]

The information sought by Defendants is relevant to a party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Magistrate Judges Crews, Hegarty and Mix have previously ruled that medical records are relevant in actions where "cause of death" is at issue in the case and shall be produced. *Thomas v. United States*, 2019 U.S. Dist. LEXIS 96030 (D. Colo. 2019); *Hixson v. United States*, 2009 U.S. Dist. LEXIS 70165 (D. Colo. 2009); *Estate of Rossiter v. Bd. of Cty. Comm'rs*, 2009 U.S. Dist. LEXIS 56016 (D. Colo. 2009). In addition, Plaintiffs should not be the "gatekeepers" for providing these records to Defendants or determining what is relevant. *See Thomas*, 2019 U.S. Dist. LEXIS 96030, *8-9.

---

[4] As of April 20, 2021, Plaintiffs produced at least 3 various expert witness reports addressing Mr. McClain's cause of death.
[5] See Affidavits of Defendants' experts attached as **Exhibit 2**.

As to Mr. McClain's mental health/behavioral records, they are relevant and must be produced as well. Mr. McClain's mental health/behavioral records are relevant because his "cause of death" is at issue in this case. After Mr. McClain's death, a medical examiner ruled that Mr. McClain's cause of death was undetermined but opined that Mr. McClain may have experienced an episode of excited delirium prior to his death. The relationship between excited delirium, mental health/behavioral illness, and certain controlled substances is well documented in medical literature.

The requested documents are further relevant to the issue of damages, which Defendants have a right to independently assess. Non-economic damages such as compensatory and special damages, loss of life, loss of relationships, loss of enjoyment of life, and pain and suffering must be extrapolated from Mr. McClain's medical, mental health/behavioral, prescription, educational, vocational training and employment records. Plaintiffs have disclosed that based on a preliminary report by Plaintiffs' expert, Dr. Parkman, the hedonic damages in this case were valued at approximately $10,000,000 in 2020. Defendants are entitled to make an independent evaluation of Dr. Parkman's estimate.

Similarly, economic damages such as permanent lost earnings and earning capacity for the expected productive working lifetime of Mr. McClain must be assessed based on Mr. McClain's medical, mental health/behavioral, prescription, educational/vocational and employment records to make an independent evaluation of liability. Magistrate Judge Mix has previously found that a deceased Plaintiff's medical records, particularly the state of the deceased Plaintiff's health prior to death, are relevant to the issue of life expectancy. *See Rossiter*, 2009 U.S. Dist. LEXIS 56016, at *12-17.

Therefore, Mr. McClain's medical, mental health/behavioral, prescription, educational/ vocational training and employment records are highly relevant in this case and must be produced without limitation prior to the parties engaging in meaningful, good faith mediation.

### PLAINTIFFS' POSITION

The Parties, by and through their counsel, provide the Court with this joint statement of dispute in anticipation of the discovery dispute hearing scheduled for April 23, 2021. The Parties have previously conferred about certain of Defendant's discovery requests. Although both sides reserve the rights to raise disputes in the future about discovery responses they believe to be deficient, in anticipation of a pending mediation the Parties at this time have narrowed their disputes to the following of Defendant's requests for production: Requests for Production Nos. 1, 3, 6, and 10. As part of their conferral efforts, Plaintiffs have also agreed to amend and/or clarify their responses to Interrogatories Nos. 6, 10, and 11. Plaintiffs will also continue to follow up with the Social Security Administration with respect to Request for Production No. 2, and will produce such records to Defendants as soon as they are obtained. With respect to the remaining disputes, the Parties state as follows:

**Plaintiff Sheneen McClain:** Ms. McClain has articulated her objections to Defendants' Requests for Production Nos. 1, 3, 6, and 10 and has provided her original objections to these discovery requests as **Exhibit 1** to this joint statement. Chiefly, Ms. McClain questions the necessity of such discovery beyond what she has already produced given the needs of the case and her deceased son's and her own privacy interests. Defendants' request a lifetime of medical and academic records for her deceased son, Elijah McClain. Ms. McClain has produced medical records from all providers of which she is aware for the years 2008 through the time of her son's

7

death at the hands of Defendants in August of 2019. Similarly, Ms. McClain has produced all academic records from her son's time at Denver Public Schools. This is the school system he was attending before he left school and earned his General Education Development ("GED") test. Given the information and records that have already been provided, Ms. McClain objects to further production of documents on the grounds of irrelevance, undue burden, invasion of privacy, and because the discovery sought is harassing, oppressive, and intended to embarrass within the meaning of Fed.R.Civ.P. 26. Ms. McClain feels strongly that because Defendants murdered her son they should not have unfettered access to every aspect of his life, particularly when the relevance of the discovery is not readily apparent. She has articulated her concerns in detail as found in **Exhibit 1**.

**Plaintiff Lawayne Mosley:** Mr. Mosley takes no position on these discovery issues. He defers his position to Ms. McClain and her counsel.

The parties are unable to resolve the dispute and request Court intervention at the hearing scheduled for April 23, 2021 at 1:00 p.m.

Dated this 21st day of April, 2021.

<div style="display:flex">

*s/ Mari Newman*
Mari Newman
Michael P. Fairhurst
Liana Orshan
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Telephone: 303-571-1000
Email: mnew@kln-law.com
       mfairhurst@kln-law.com
       lorshan@kln-law.com
*ATTORNEYS FOR PLAINTIFF ESTATE OF*
*ELIJAH JAVON MCCLAIN BY AND*
*THROUGH ITS PERSONAL*

*s/ Qusair Mohamedbhai*
Qusair Mohamedbhai
Siddhartha H. Rathod
Felipe S. Bohnet-Gomez
Matthew J. Croh
Iris Halpern
Rathod Mohamedbhai, LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
Telephone: 303-578-4400
Email: qm@rmlawyers.com
       sr@rmlawyers.com
       fbg@rmlawyers.com
       mc@rmlawyers.com

</div>

*REPRESENTATIVES SHENEEN MCCLAIN
AND LAWAYNE MOSLEY*

ih@rmlawyers.com

*ATTORNEYS FOR PLAINTIFF ESTATE OF
ELIJAH JAVON MCCLAIN BY AND
THROUGH ITS PERSONAL
REPRESENTATIVES SHENEEN MCCLAIN
AND LAWAYNE MOSLEY*

*s/ Ousair Mohamedbhai*

Qusair Mohamedbhai
Siddhartha H. Rathod
Felipe S. Bohnet-Gomez
Matthew J. Croh
Iris Halpern
Rathod Mohamedbhai, LLC
2701 Lawrence Street, Suite 100
Denver, CO 80205
Telephone: 303-578-4400
Email: qm@rmlawyers.com
　　　sr@rmlawyers.com
　　　fbg@rmlawyers.com
　　　mc@rmlawyers.com
　　　ih@rmlawyers.com
*ATTORNEYS FOR PLAINTIFF SHENEEN
MCCLAIN IN HER INDIVIDUAL CAPACITY*

*s/ Mari Newman*

Liana Orshan
Michael P. Fairhurst
Mari Newman
Darold W. Killmer
David Lane
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Telephone: 303-571-1000
Email: lorshan@kln-law.com
　　　mfairhurst@kln-law.com
　　　mnewman@kln-law.com
　　　dkillmer@kln-law.com
　　　dlane@kln-law.com
*ATTORNEYS FOR PLAINTIFF LAWAYNE
MOSLEY IN HIS INDIVIDUAL CAPACITY*

*s/ Peter Morales*

Peter Morales
Isabelle Evans
Aurora City Attorney's Office
15151 E. Alameda Parkway, Suite 5300
Aurora, CO 80012
Telephone: 303-739-7030
Email: pmorales@auroragov.org
　　　ievans@auroragov.org
ATTORNEYS FOR DEFENDANT CITY OF
AURORA, AND DEFENDANTS
WOODYARD, ROEDEMA,
ROSENBLATT, GREEN, LEONARD,
WARD, DITTRICH, MARRERO, ROOT,
MULLINS-ORCUTT, DUNSON, NGHIEM,
NUNEZ, CICHUNIEC, AND COOPER IN
THEIR OFFICIAL CAPACITIES
("AURORA DEFENDANTS")

*s/ Jonathan Abramson*

Jonathan M. Abramson
Yulia Nikolaevskaya
Kissinger & Fellman, P.C.
3773 Cherry Creek N. Dr., #900
Denver, CO 80209
Telephone: 303-320-6100
Email: jonathan@kandf.com
　　　julie@kandf.com
ATTORNEYS FOR DEFENDANTS
DITTRICH, DUNSON, GREEN,
LEONARD, MARRERO, MULLINS-
ORCUTT, NUNEZ, ROEDEMA, ROOT,
ROSENBLATT, WARD, AND
WOODYARD IN THEIR INDIVIDUAL
CAPACITIES ("APD DEFENDANTS")

*s/ Michael Lowe*
Michael Lowe
David Goddard
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
Telephone: 303-831-1099
Email: MLowe@brunolawyers.com
        dgoddard@brunolawyers.com
ATTORNEYS FOR DEFENDANTS
CICHUNIEC AND COOPER IN THEIR
INDIVIDUAL CAPACITIES ("AFR
DEFENDANTS")

*s/ Stephen J. Hensen*
Stephen J. Hensen
Hensen | DuWaldt
1001 Bannock St., Suite 39
Denver, CO 80204
Telephone: 303-223-0773
Email: steve@hendulaw.com
ATTORNEY FOR DEFENDANT DR. ERIC
HILL

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April 2021, I electronically transmitted the foregoing to Magistrate Judge N. Reid Neureiter's Chambers (Neureiter_Chambers@cod.uscourts.gov) and to the following e-mail addresses:

Liana Orshan, Esq. (lorshan@kln-law.com)
Michael Fairhurst, Esq. (mfairhurst@kln-law.com)
Mari Newman, Esq. (mnewman@kln-law.com)
Qusair Mohamedbhai, Esq. (qm@rmlawyers.com)
Siddhartha H. Rathod, Esq. (srmlawyers.com)
Felipe S. Bohnet-Gomez, Esq. (fbg@rmlawyers.com)
Matthew J. Croh, Esq. (mc@rmlawyers.com)
Iris Halpern, Esq. (ih@rmlawyers.com)
*ATTORNEYS FOR PLAINTIFF ESTATE OF ELIJAH JAVON MCCLAIN BY AND THROUGH ITS PERSONAL REPRESENTATIVES SHENEEN MCCLAIN AND LAWAYNE MOSLEY*

Qusair Mohamedbhai, Esq. (qm@rmlawyers.com)
Siddhartha H. Rathod, Esq. (srmlawyers.com)
Felipe S. Bohnet-Gomez, Esq. (fbg@rmlawyers.com)
Matthew J. Croh, Esq. (mc@rmlawyers.com)
Iris Halpern, Esq. (ih@rmlawyers.com)
*ATTORNEYS FOR PLAINTIFF SHENEEN MCCLAIN IN HER INDIVIDUAL CAPACITY*

Liana Orshan, Esq. (lorshan@kln-law.com)
Michael Fairhurst, Esq. (mfairhurst@kln-law.com)
Mari Newman, Esq. (mnewman@kln-law.com)
Darold W. Killmer, Esq. (dkillmer@kln-law.com)
David Lane, Esq. (dlane@kln-law.com)

10

*ATTORNEYS FOR PLAINTIFF LAWAYNE MOSLEY IN HIS INDIVIDUAL CAPACITY*

Peter Morales, Esq. (pmorales@auroragov.org)
Isabelle Evans, Esq. (ievans@auroragov.org)
*ATTORNEYS FOR DEFENDANTS CITY OF AURORA, COLORADO, NATHAN WOODYARD, RANDY ROEDEMA, JASON ROSENBLATT, MATTHEW T. GREEN, DALE LEONARD, ALICIA WARD, KYLE DITTRICH, ERICA MARRERO, JAMES ROOT, JORDAN MULLINS-ORCUTT, DARREN DUNSON, RACHEL NUNEZ, STEPHANIE NGHIEM, PETER CICHUNIEC AND JEREMY COOPER, IN THEIR OFFICIAL CAPACITIES*

Michael Lowe, Esq. (mlowe@brunolawyers.com)
David Goddard, Esq. (dgoddard@brunolawers.com)
*ATTORNEYS FOR DEFENDANTS PETER CICHUNIEC AND JEREMY COOPER, IN THEIR INDIVIDUAL CAPACITIES*

Stephen J. Hensen, Esq. (steve@hendulaw.com)
*ATTORNEY FOR DEFENDANT DR. ERIC HILL, IN HIS INDIVIDUAL CAPACITY*

By:     ***s/ Jonathan M. Abramson***
Jonathan M. Abramson

11

**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02389-DDD-NRN

ESTATE OF ELIJAH JAVON MCCLAIN, by and through its personal representatives, Sheneen McClain and Lawayne Mosley,
SHENEEN MCCLAIN, individually, and
LAWAYNE MOSLEY, individually,

      Plaintiffs,

v.

CITY OF AURORA, COLORADO, a municipality,
OFFICER NATHAN WOODYARD, in his individual and official capacity,
OFFICER RANDY ROEDEMA, in his individual and official capacity,
OFFICER JASON ROSENBLATT, in his individual and official capacity,
OFFICER MATTHEW GREEN, in his individual and official capacity,
SERGEANT DALE LEONARD, in his individual and official capacity,
OFFICER ALICIA WARD, in her individual and official capacity,
OFFICER KYLE DITTRICH, in his individual and official capacity,
OFFICER ERICA MARRERO, in her individual and official capacity,
OFFICER JAMES ROOT, in his individual and official capacity,
OFFICER JORDAN MULLINS-ORCUTT, in his individual and official capacity,
OFFICER DARREN DUNSON, in his individual and official capacity,
OFFICER STEPHANIE NGHIEM, in her individual and official capacity;
SERGEANT RACHEL NUNEZ, in her individual and official capacity,
LIEUTENANT PETER CICHUNIEC, in his individual and official capacity,
PARAMEDIC JEREMY COOPER, in his individual and official capacity, and
DR. ERIC HILL, in his individual capacity,

      Defendants.

_____

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**
_____

      Plaintiff Sheneen McClain in her individual capacity and in her capacity as personal representative of the Elijah Javon McClain's Estate, by and through counsel, Rathod | Mohamedbhai LLC, and Plaintiff LaWayne Mosley in his individual capacity and in his capacity

EXHIBIT 1

as personal representative of the Elijah Javon McClain's Estate, by and through counsel, Killmer Lane & Newman, LLP, and pursuant to the Rules 33 and 34 of the Federal Rules of Civil Procedure submit the following Objections and Responses to Defendants' First Set of Interrogatories and Requests for Production of Documents. Plaintiffs reserves the right to amend and supplement their answers throughout the course of discovery.

<div align="center"><u>**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**</u></div>

Named Plaintiffs object to Defendants' general "Instructions" in that Instruction No. 5 seeks to unilaterally limit the objections available to Plaintiffs. Specifically, given that discovery is nascent in this case, additional discovery may be needed in order to fully respond to Defendants' discovery requests.

Plaintiffs also object to Defendants' general "Definitions" in that the definitions contained therein are oftentimes so ambiguously and broadly worded as to render almost every subsequent discovery request to which they are applied unduly burdensome to respond to. For example, Defendants' Definition No. 1 defines "incident" to mean all "circumstances and events set forth in Plaintiffs' Complaint and Jury Demand." Plaintiffs' Amended Complaint, which this definition incorporates, includes 667 paragraphs spanning 122 pages of factual allegations, each of which can be construed of as an "event" or "circumstance." Plaintiffs therefore object in that Definition No. 1 requires Plaintiffs to provide information or produce records about "each and every fact" in their Amended Complaint when responding to certain discovery requests. Such discovery requests are facially overly broad and unduly burdensome to respond to. *See Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997) (declining to compel answers to interrogatories seeking "each and every fact supporting gall of the allegations" in the four counts of the complaint).

**EXHIBIT 1**

Similarly, Defendants' Definition No. 2 defines "you" and "your" not only as named Plaintiffs but counsel for named Plaintiffs, as well as all "agents, servants, employees, representatives, private investigators, and others who are in possession of or who may have obtained information for or on behalf of the named Plaintiffs." Such a definition makes little sense in that it is unclear what agents, employees, etc. Defendants are referring to. Such a definition also necessarily intrudes on attorney-client privilege and work-product protections, and demands Plaintiffs provide information and records from unspecified third parties whom Plaintiffs may have no custody or control over.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**1)** **Please state the name, ADDRESS, telephone number, and relationship to you of each person who prepared or assisted in the preparation of the responses to these interrogatories. (Do not identify anyone who simply typed or reproduced the responses.)**

**Response:** Plaintiffs state the following:

*Sheneen McClain:* Plaintiff Sheneen McClain, individually and as co-personal representative of the Estate of Elijah McClain, states that she and her counsel at Rathod Mohamedbhai LLC prepared or assisted in the preparation of the responses to these interrogatories. She and her counsel can be reached c/o Rathod Mohamedbhai LLC, 2701 Lawrence St., Suite 100, Denver, Colorado 80205.

*LaWayne Mosley:* Plaintiff LaWayne Mosley, individually and as co-personal representative of the Estate of Elijah McClain, states that he and his counsel at Killmer, Lane & Newman, LLP prepared or assisted in the preparation of the responses to these interrogatories. He and his counsel can be reached c/o Killmer, Lane & Newman, LLP, 1543 Champa, Suite 400,

**EXHIBIT 1**

Denver, CO 80202.

2)      **Please state a) your present ADDRESS, b) your residence ADRESSES** *[sic]* **for the last 10 years; c) the dates you lived at each ADRESSES** *[sic]***; d) each residence ADDRESS Elijah McClain have ever resided since birth until the date of this incident and the dates lived at each address.**

**Response:** Plaintiffs object to this interrogatory on grounds that it is temporally and substantively overbroad and seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Where named Plaintiffs lived prior to August 24, 2019, the date of Elijah McClain's death, or where Elijah McClain lived prior to same date, has no bearing on the circumstances of his death or the damages sought in this case, is not reasonably calculated to uncover relevant witnesses or information, and appears to be nothing more than a fishing expedition. For these reasons as well, Plaintiffs further object on grounds that such interrogatory is interposed for improper purpose, is harassing, and constitutes an invasion of privacy.

Plaintiffs also object on grounds that Defendants' Definitions make this interrogatory confusing and ambiguous. For example, as described above, the definition of "you" and "your" employed by Defendants appears to request the residential history of all of the attorneys who represent the named Plaintiffs in this case.

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Elijah McClain lived at 14175 E Montview Blvd, #7, Aurora,

**EXHIBIT 1**

CO 80010 at the time of his death on August 24, 2019.

*Sheneen McClain:* Plaintiff Sheneen McClain states that because this interrogatory seeks irrelevant information that is both harassing and oppressive, she respectfully declines to provide any further information about her residential history or that of her deceased son before Defendants respond to Ms. McClain's objections, articulate the possible relevance of such information to this case, and describe how such information might be used. Otherwise, Ms. McClain can be reached through her attorneys, Rathod Mohamedbhai LLC, at 2701 Lawrence St., Suite 100, Denver, Colorado, 80205.

*LaWayne Mosley:* Plaintiff LaWayne Mosley states that because this interrogatory seeks irrelevant information that is both harassing and oppressive, he respectfully declines to provide any further information about his residential history or that of his deceased son before Defendants respond to Plaintiffs' objections, articulate the possible relevance of such information to this case, and describe how such information might be used. Otherwise, Mr. Mosley can be reached through his attorneys, Killmer, Lane & Newman, LLP, 1543 Champa, Suite 400, Denver, CO 80202.

**3. Please state a) your name; b) every name you have used in the past; c) dates you used each name, d) date and place of your birth; e) as to Elijah McClain please identify a) through d).**

**Response:** Plaintiffs object to this interrogatory on grounds that it seeks temporally overbroad information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. Other names used by the named Plaintiffs or their son, Elijah McClain, have no bearing on the circumstances surrounding Elijah McClain's death or the damages sought in this

case as such information was unknown to Defendants on August 24, 2019 and therefore could not have informed any of their actions or decisions.

Plaintiffs also object on grounds that Defendants' Definitions make this interrogatory confusing and ambiguous. For example, as described above, the definition of "you" and "your" employed by Defendants appears to request identifying information for all of the attorneys who represent the named Plaintiffs in this case.

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Elijah McClain, DOB: February 25, 1996, born in Aurora, Colorado. Elijah McClain did not use any other legal names in the past.

*Sheneen McClain:* Plaintiff Sheneen McClain states that she has used no other legal names. Ms. McClain's DOB is November 11, 1972.

*LaWayne Mosley:* Plaintiff LaWayne Mosley, DOB: December 21, 1969, born in Denver, Colorado. Mr. Mosley did not use any other legal names in the past.

**4.  As to named Plaintiffs and Elijah McClain, have you ever been convicted of a felony? If so, for each conviction state: a) the city and state where you were convicted; b) the date of conviction; c) the offense; d) the court and case number.**

Plaintiffs object to this interrogatory on grounds that it is temporally and substantively overbroad and seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Whether the named Plaintiffs or their son, Elijah McClain, have ever been convicted of a

EXHIBIT 1

felony has no bearing on the circumstances surrounding Elijah McClain's death or the damages sought in this case as such information was unknown to Defendants on August 24, 2019 and therefore could not have informed any of their actions or decisions. Likewise, given the facts and racial undertones of this case, no court after engaging in the requisite balancing mandated by Federal Rules of Evidence 403 and 609(a) would permit such convictions to be introduced at trial in light of the gross disparity between the probative value of such information (if any) and its unfairly prejudicial effects. *See United States v. Howell*, 285 F.3d 1263, 1269 (10th Cir. 2002) ("Rule 609(a)(1) *requires,* in addition to a threshold length and severity of punishment, an application of the balancing test of Federal Rule of Evidence 403." (emphasis in original) (quoting *Gust v. Jones*, 162 F.3rd 587 (10th Cir. 1998)). Such inquiry into past convictions is also not reasonably calculated to uncover relevant witnesses or information and appears to be nothing more than a fishing expedition in the attempt to malign the Plaintiffs and their deceased son before a jury or in the court of public opinion. For these reasons as well, Plaintiffs further object on grounds that such interrogatory is interposed for improper purpose and harassing.

Plaintiffs also object on grounds that Defendants' Definitions make this interrogatory confusing and ambiguous. For example, as described above, the definition of "you" and "your" employed by Defendants appears to request the criminal history of the attorneys who represent the named Plaintiffs in this case. Additionally, Plaintiffs object that the information sought by Defendants is publicly available for a fee, and in light of disparities in resources and access to such information, may be less burdensome for Defendants to obtain than for her to do so.

Plaintiffs also object that the information sought by

Subject to and without waiving their objections, Plaintiffs state:

EXHIBIT 1

*Estate of Elijah McClain:* Elijah McClain had no felony convictions.

*Sheneen McClain:* Plaintiff Sheneen McClain states that Elijah McClain had no prior felony convictions before his death on August 24, 2019. Ms. McClain further states that because this interrogatory seeks irrelevant information that is both harassing and oppressive, she respectfully declines to provide any information about any of her past felony convictions, if any, before Defendants respond to Ms. McClain's objections, articulate the possible relevance of such information to this case, and describe how such information might be used.

*LaWayne Mosley:* Plaintiff LaWayne Mosley states that Elijah McClain had no prior felony convictions before his death on August 24, 2019. Mr. Mosley further states that because this interrogatory seeks irrelevant information that is both harassing and oppressive, he respectfully declines to provide any information about any of his past felony convictions, if any, before Defendants respond to Plaintiffs' objections, articulate the possible relevance of such information to this case, and describe how such information might be used. Without waiving the forgoing, Mr. Mosley states that he does not have felony arrests in the past 10 years.

**5.     Please identify all funds received, collected, designated to be received as to the date when this interrogatory was served by any Plaintiff in this litigation in connection with the death of Elijah McClain, and for each:**

    a)  **State when the funds were received,**

    b)  **State the amount of funds received,**

    c)  **State the source of funds received, and**

    d)  **Identify every document or things referencing or evidencing the funds received.**

EXHIBIT 1

**Response:**   Plaintiffs object to this interrogatory on grounds that it is substantively overbroad and seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). In this case, any funds received by the named Plaintiffs as a result of the public's goodwill, or from any other source, after the death of their son Elijah McClain, have no bearing on the circumstances surrounding Elijah McClain's death or the damages sought in this case. The value of Elijah McClain's life, or the pain and suffering named Plaintiffs experienced as a result of the loss of their son, is no less significant merely because the public or any other entity expressed kindness and support in the wake of his death. Hence any payments received by named Plaintiffs are subject to the collateral source rule.

"The collateral source rule provides that 'a wrongdoer is not entitled to have damages, for which he is liable, reduced by proof that the plaintiff has received or will receive compensation or indemnity for the loss from an independent collateral source.'" *F.D.I.C. v. United Pac. Ins. Co.*, 20 F.3d 1070, 1083 (10th Cir. 1994) (quotations removed). "The policy behind the rule is that a benefit that comes to the plaintiff should not be shifted so as to become a windfall to the wrongdoer. …[I]f the benefit was a gift to the plaintiff, he should not be deprived of the benefit." *Id.*; *see also Green v. Denver & Rio Grande W. R. Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995) ("The collateral source rule allows a plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss.").

Similarly, financial information that is not directly relevant to the calculation of economic losses is subject to privacy and cannot be obtained on a claim of emotional distress. *See, e.g.*, *Combe v. Cinemark USA, Inc.*, No. 1:08-CV-00142, 2009 WL 2578853, at *2 (D. Utah, Aug. 19, 2009) (in calculating back pay, federal and state income tax returns not discoverable on claim for emotional distress when verifiable information regarding income was otherwise available). The information sought by Defendants in this interrogatory is therefore substantively overbroad, does not seek relevant or proportional information, and constitutes an invasion of privacy.

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Plaintiff Estate, through its co-personal representatives, states that given the facial lack of relevance to this discovery request, it respectfully declines to respond to this interrogatory before Defendants respond to Plaintiffs' objections, articulate the possible relevance of the information to this case, and describe how such information might be used.

*Sheneen McClain:* Plaintiff Sheneen McClain states that given the facial lack of relevance to this discovery request, she respectfully declines to respond to this interrogatory before Defendants respond to her objections, articulate the possible relevance of the information to this case, and describe how such information might be used.

*LaWayne Mosley:* Plaintiff LaWayne Mosley states that given the facial lack of relevance to this discovery request, he respectfully declines to respond to this interrogatory before Defendants respond to his objections, articulate the possible relevance of the information to this case, and describe how such information might be used.

**6.     Please identify every a) physical, b) mental, c) cognitive, d) behavioral, e) developmental, f) learning disability g) special needs condition that Elijah McClain has been**

**diagnosed with formally or informally; or have suffered from; have been consulted about with health care provider, counselor, therapist, treatment provider or ever received treatment for since birth until the date of this incident. If a condition is identified, please identify each and every Health Care Provider, counselor, therapist, treatment provider for each condition, date/time of diagnosis and treatment received.**

**Response:** Plaintiffs object to this interrogatory on grounds that it seeks information that is temporally overbroad and not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Chiefly, whether Elijah McClain suffered from any preexisting medical maladies has no bearing on Defendants' liability or the calculation of damages in this case. The jurisprudence is well-settled that in cases alleging violation of § 1983, the eggshell doctrine applies. The eggshell doctrine "provides that a tortfeasor takes its victim as it finds him. Thus, a tortfeasor is fully liable for any damages resulting from its wrongful act even if the victim had a pre-existing condition that made the consequences of the wrongful act more severe for him than they would have been for a person without the condition." *O'Neal v. Bd. of Cty. Commissioners of Cty. of Fremont*, No. 16-CV-01005-TMT-KLM, 2020 WL 2526782, at *10 (D. Colo. May 18, 2020) (quotations omitted). Because of the eggshell doctrine, Defendants are precluded from arguing against liability or for reducing damages based on any of Elijah McClain's pre-existing medical conditions.

Plaintiffs further object to this interrogatory on the grounds of invasion of privacy and based on the psychotherapist-patient privilege. Whether Elijah McClain sought psychiatric or

psychological counselling or treatment has no bearing on liability or damages in this case, and "[e]ffective psychotherapy… depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996). "Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace." *Id.* As a result, courts have long observed that psychotherapist records should be precluded from discovery. *See id.* Public policy militates against discovery of psychotherapist records because "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* Because this interrogatory seeks irrelevant, highly sensitive information, Plaintiffs further objects on grounds that such interrogatory is interposed for improper purpose, is harassing, and constitutes an invasion of privacy of their deceased son.

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:*  Estate of Elijah McClain states that Elijah McClain had no diagnosed physical, mental, cognitive, behavioral, developmental, learning disability, or special needs condition, and was not autistic. Elijah McClain did not seek treatment from a psychologist or psychiatrist. Based on its objections, Estate of Elijah McClain respectfully declines to respond to this interrogatory before Defendants respond to its objections, articulate the possible relevance of the information to this case, and describe how such information might be used. Responsive information and documents are being withheld based on Plaintiff's objections.

*Sheneen McClain:* Plaintiff Sheneen McClain states that her son had no diagnosed physical, mental, cognitive, behavioral, developmental, learning disability, or special needs

condition, and contrary to rumor was not autistic. Nor did her son seek treatment from a

psychologist or psychiatrist. Ms. McClain respectfully declines to respond to this interrogatory

before Defendants respond to her objections, articulate the possible relevance of the information

to this case, and describe how such information might be used. Responsive information and

documents are being withheld based on Plaintiff's objections.

     *LaWayne Mosley: See* Response of Estate of Elijah McClain, above.

     **7.     Please identify a name, ADDRESS, and telephone number of each individual**

**a) who witnessed the INCIDENT or the events occurring immediately before or after the**

**INCIDENT; b) who made any statements at the scene of the INCIDENT; c) who heard any**

**statements made about the INCIDENT by any individual at the scene; d) who YOU OR**

**ANYONE ACTING ON YOUR BEHALF claims to have knowledge of the INCIDENT.**

     **Response:** Plaintiffs object to this interrogatory on grounds that it is substantively

overbroad and unduly burdensome to respond to; because it requestions information that is not

within the named Plaintiffs' possessions, custody, or control; and because it encroaches on attorney

work product protections. This interrogatory exemplifies the problem with some of Defendants'

general Definitions. Specifically, Defendants define "you" and "your" not only as Plaintiffs but

counsel for Plaintiffs and other parties, such as private investigators. Defendants then go on to

define "incident" as all "circumstances and events set forth in Plaintiffs' Complaint and Jury

Demand." Plaintiffs' Amended Complaint, which this definition incorporates, includes 667

paragraphs spanning 122 pages of factual allegations, each of which can be construed of as an

"event" or "circumstance." Interrogatories such as these have long been condemned by courts as

facially overbroad and unduly burdensome to respond to. *See Hilt v. SFC Inc.*, 170 F.R.D. 182,

186 (D. Kan. 1997) (declining to compel answers to interrogatories seeking "each and every fact supporting gall of the allegations" in the four counts of the complaint). Presumably, and contrary to the definition found in Defendants' general Definitions, Defendants mean for "incident" to refer to the death of Elijah McClain the evening of August 24, 2019, and not all of the circumstances and events found in Plaintiffs' Amended Complaint.

For similar reasons, presumably, Defendant is not asking for the named Plaintiffs, let alone their counsel, to identify every single person who may have knowledge of any fact in the Amended Complaint, including such circumstances or events as that Elijah McClain was a massage therapist or that Elijah McClain was shy. *See, e.g.*, *Amended Complaint* at ⁋ 5; *Hilt* 170 F.R.D. at 186 (complaining about "blockbuster" interrogatories that make no distinction between material and insignificant or minor facts; no distinction between admitted and contested facts; and which also asked for every witnesses and retaliated document). To do so would make responding unduly burdensome and given that Defendants require counsel to respond and disclose the steps they have taken to prepare Plaintiffs' case for litigation, including who they might have interviewed, encroaches on work product protections. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (affirming that an adverse party's counsel need not produce "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible [things]" that are protected by work product).

Plaintiffs also object to this interrogatory as it assumes facts not in evidence in that they, nor their counsel, were present when Defendants killed Elijah McClain on the evening of August 24, 2019, and so cannot personally vouch for and have no first-hand knowledge about what witnesses may have heard other than what is available from publicly available records and video

footage. Given that a vast majority of witnesses to Elijah McClain's death were Defendants or third-parties, information about their statements and contact information are either part of the public record or are in Defendants' possession, custody, or control.

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Plaintiff Estate of Elijah McClain states that it has limited its response to this interrogatory to the evening of August 24, 2019 and the circumstances that gave rise to the death of Elijah McClain. As far as Plaintiff Estate is aware, all individuals who witnessed some or all of the events leading to Elijah McClain's death on the night of August 24, 2019 have been provided in Plaintiffs' disclosures.

*Sheneen McClain:* Plaintiff Sheneen McClain states that she has limited her response to this interrogatory to the evening of August 24, 2019 and the circumstances that gave rise to the death of Elijah McClain. As far as Mc. McClain is aware, all individuals who witnessed some or all of the events leading to Elijah McClain's death on the night of August 24, 2019 have been provided in Plaintiffs' disclosures.

*LaWayne Mosley:* Plaintiff LaWayne Mosley states that he has limited his response to this interrogatory to the evening of August 24, 2019 and the circumstances that gave rise to the death of Elijah McClain. As far as Plaintiff LaWayne Mosely is aware, all individuals who witnessed some or all of the events leading to Elijah McClain's death on the night of August 24, 2019 have been provided in Plaintiffs' disclosures.

8.    **Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the INCIDENT? If so, for each individual state: a) the name, ADRESSESS** *[sic]***, and telephone number of the individual interviewed; b) the date of the**

EXHIBIT 1

interview; c) the name, ADDRESS, and telephone number of the PERSON OR ENTITY who conducted the interview.

**Response:** Plaintiffs object to this interrogatory on grounds that Defendants' general Definitions render this interrogatory confusing, ambiguous, overbroad and unduly burdensome to respond to. For example, as described above, the definition of "you" and "your" employed by Defendants already includes the named Plaintiffs' attorneys, yet Defendants in this interrogatory appear to use "you" to refer only to the named Plaintiffs. Defendants then ask not only for recordings or written statements obtained by the named Plaintiffs but for "anyone acting on your behalf," which would also necessarily encompass Plaintiffs' attorneys. Likewise, Defendants define "incident" in their Definitions as all "circumstances and events set forth in Plaintiffs' Complaint and Jury Demand." Plaintiffs' Amended Complaint, which this definition incorporates, includes 667 paragraphs spanning 122 pages of factual allegations, each of which can be construed of as an "event" or "circumstance." Instead, in using the word "incident" here, Defendants appear to refer to the events that lead to Elijah McClain's death the evening of August 24, 2019, namely his interactions with members from the Aurora City Police Department and Aurora Fire Rescue Department. Thus, application of Defendants' Definitions not only renders this interrogatory confusing and ambiguous, but overly broad and unduly burdensome to respond to.

Plaintiffs also object on grounds of attorney-client privilege and the work-product doctrine in that this interrogatory as written is so broad as to necessarily entail disclosure of communications between the named Plaintiffs and their counsel. By defining "you" as "you or anyone acting on your behalf" to include Plaintiff's attorneys, Defendants also seek the work product of Plaintiffs' counsel in ongoing litigation. "Not even the most liberal of discovery theories

can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Thus, while a party may be required to identify potential witnesses or disclose relevant facts, such obligation does not extend to identifying who Plaintiffs' counsel specifically interviewed in litigation or in preparation for trial. *See id.* (affirming that an adverse party's counsel need not produce "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible [things]" that are protected by work product).

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Plaintiff Estate of Elijah McClain states that all known witnesses who Plaintiffs may rely on to support their claims or negate defenses in this lawsuit have been identified as part of Plaintiffs' disclosures. Any additional witnesses who Plaintiffs may use to support their claims or negate defenses will be promptly disclosed to Defendants as they are identified.

*Sheneen McClain:* Plaintiff Sheneen McClain states that she has not personally interviewed any of the witnesses who witnessed first-hand the events of August 24, 2019 that resulted in the death of her son, Elijah McClain. Plaintiff Sheneen McClain further states that she declines to identify the individuals her attorneys or their agents may have interviewed as part of this litigation. She confirms that all witnesses known to her attorneys who Plaintiffs may rely on to support their claims or negate defenses in this lawsuit have been identified as part of Plaintiffs' disclosures. Any additional witnesses who Plaintiffs may use to support their claims or negate defenses will be promptly disclosed to Defendants as they are identified.

_LaWayne Mosley:_ Plaintiff LaWayne Mosley states that he has not personally interviewed any of the witnesses who witnessed first-hand the events of August 24, 2019 that resulted in the death of his son, Elijah McClain. Plaintiff LaWayne Mosley further states that he declines to identify the individuals his attorneys or their agents may have interviewed as part of this litigation. He confirms that all witnesses known to his attorneys who Plaintiffs may rely on to support their claims or negate defenses in this lawsuit have been identified as part of Plaintiffs' disclosures. Any additional witnesses who Plaintiffs may use to support their claims or negate defenses will be promptly disclosed to Defendants as they are identified.

**9.      Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT? If so, for each statement state: a) the name, ADDRESS, and telephone number of the individua from whom the statement was obtained; b) the name, ADDRESS, and telephone number of the individual who obtained the statement; c) the date statement was obtained, d) the name, ADDRESS, and telephone number of each PERSON OR ENTITY who has the original statement or a copy.**

**Response:** Plaintiffs object to this interrogatory on grounds that Defendants' general Definitions render this interrogatory confusing, ambiguous, overbroad and unduly burdensome to respond to. For example, as described above, the definition of "you" and "your" employed by Defendants already includes the named Plaintiffs' attorneys, yet Defendants in this interrogatory appear to use "you" to refer only to the named Plaintiffs. Defendants then ask not only for recordings or written statements obtained by the named Plaintiffs but for "anyone acting on your behalf," which would also necessarily encompass Plaintiffs' attorneys. Likewise, Defendants

define "incident" in their Definitions as all "circumstances and events set forth in Plaintiffs' Complaint and Jury Demand." Plaintiffs' Amended Complaint, which this definition incorporates, includes 667 paragraphs spanning 122 pages of factual allegations, each of which can be construed of as an "event" or "circumstance." Instead, in using the word "incident" here, Defendants appear to refer to the events that lead to Elijah McClain's death the evening of August 24, 2019, namely his interactions with members from the Aurora City Police Department and Aurora Fire Rescue Department. Thus, application of Defendants' Definitions not only renders this interrogatory confusing and ambiguous, but overly broad and unduly burdensome to respond to.

Plaintiffs similarly object on grounds of confusion and ambiguity to Defendants use of the words "obtain" and "written or recorded statement." Even if limited to the events that took place on August 24, 2019, resulting in Elijah McClain's death, Plaintiffs (and their counsel) have "obtained" numerous "recorded or written statements" about that evening given the widespread global outcry that ensued, including everything from publicly available newspaper articles, investigative reports, blog posts, and news media coverage footage to interrogatory responses, documents, recordings, video footage, and statements produced by Defendants in response to Plaintiffs' discovery requests and pursuant to Defendants' disclosure obligations. Defendants request that Plaintiff (and their counsel) identify every written or audio statement they have obtained is therefore vague, ambiguous, and confusing even if it does not encompass all of the allegations in the Amended Complaint. Defendants' use of the phrase "concerning" further compounds the problem. Use of the term "concerning" renders a discovery request facially overbroad. *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 667 (D. Kan. 2004) (observing that "a request or interrogatory may be overly broad or unduly burdensome on its face

EXHIBIT 1

if it uses an omnibus term as 'relating to' or 'concerning[,]' . . . when the omnibus term is used 'with respect to a general category or group of documents.'").

Plaintiffs also object on grounds of attorney-client privilege and the work-product doctrine in that this interrogatory as written is so broad as to necessarily entail disclosure of communications between the named Plaintiffs and their counsel. By defining "you" as "you or anyone acting on your behalf" to include Plaintiff's attorneys, Defendants also seek the work product of Plaintiffs' counsel in ongoing litigation. "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Thus, while a party may be required to identify potential witnesses or disclose relevant facts, such obligation does not extend to the identification or production of written statements obtained by a party's counsel in litigation or in preparation for trial. *See id.* (affirming that an adverse party's counsel need not produce "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible [things]" that are protected by work product).

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Plaintiffs have previously produced the sworn affidavit of Ryan Walker found at McClain001262-001268. This is the only duly executed declaration or affidavit from first-hand witnesses to the events of August 24, 2019 that has been obtained by Plaintiffs or their counsel. Plaintiff agrees to provide a copy of any subsequently obtained duly executed affidavits or declarations to Defendants so long as such declarations and affidavits have not been obtained for the sole purpose of impeachment. *See* Fed.R.Civ.P. 26(1)(1)(ii). Plaintiff respectfully

declines to furnish further information in response to this interrogatory until Defendants clarify the exact scope of this discovery request.

_Sheneen McClain:_ Plaintiff Sheneen McClain states that Plaintiffs have previously produced the sworn affidavit of Ryan Walker, found at McClain001262-001268. This is the only duly executed declaration or affidavit from first-hand witnesses to the events of August 24, 2019 that has been obtained by Plaintiffs of their counsel. Plaintiff agrees to provide a copy of any subsequently obtained duly executed affidavits or declarations to Defendants so long as such declarations and affidavits have not been obtained for the sole purpose of impeachment. _See_ Fed.R.Civ.P. 26(1)(1)(ii). Plaintiff respectfully declines to furnish further information in response to this interrogatory until Defendants clarify the exact scope of this discovery request.

_LaWayne Mosely: See_ Response of Estate of Elijah McClain, above.

**10.     Please identify a) the name and ADDRESS of each school or other academic or vocational institution (including alternative school, trade school, or GED program) Elijah McClain attended beginning with grade school, b) the dates Elijah McClain attended; c) the highest grade level Elijah McClain have completed; and d) the degrees Elijah McClain received.**

**Response:**  Plaintiffs state the following:

_Estate of Elijah McClain:_ Elijah McClain received his G.E.D.

_Sheneen McClain:_ Elijah McClain received his G.E.D.

_LaWayne Mosley:_ Elijah McClain received his G.E.D.

**11.**     Please identify the name, ADDRESS, telephone number, dates of employment, job title, and nature of work for each employer or self-employment of Elijah McClain between 2009

**EXHIBIT 1**

and the date of this incident.

**Response:**  Plaintiffs state the following:

*Estate of Elijah McClain:* At the time of his death, Elijah was working at Massage Envy, located at 5900 S. University Blvd C-6, Greenwood Village, CO 80121, (303) 741-3689, as a massage therapist full-time. His employment file from Massage Envy is produced herewith at Confidential McClain003790-003899. These are the only records available, as Massage Envy was purchased by Atticus Franchise Group in June 2019. Elijah also did some part-time work on occasion as a delivery driver for Door Dash.

*Sheneen McClain:* Plaintiff Sheneen McClain provides the following information about Elijah McClain's educational history: At the time of his death, Elijah was working at Massage Envy, located at 5900 S University Blvd C-6, Greenwood Village, CO 80121, (303) 741-3689, as a massage therapist full-time. His employment file from Massage Envy is produced herewith at Confidential McClain003790-3899. These are the only records available, as Massage Envy was purchased by Atticus Franchise Group in June 2019. Elijah also did some part-time work on occasion as a delivery driver for Door Dash.

*LaWayne Mosley:* At the time of his death, Elijah was working at Massage Envy, located at 5900 S. University Blvd C-6, Greenwood Village, CO 80121, (303) 741-3689, as a massage therapist full-time. His employment file from Massage Envy is produced herewith at Confidential McClain003790-003899. These are the only records available, as Massage Envy was purchased by Atticus Franchise Group in June 2019. Elijah also did some part-time work on occasion as a delivery driver for Door Dash.

**12.**   Do YOU OR ANYONE ACTING ON YOUR BEHALF know of any photographs,

EXHIBIT 1

films, or video depicting any place, object, or individual concerning the INCIDENT or Elijah McClain's injuries? If so, state: a) the number of photographs or videos, b) the places, objects, or persons photographed, filmed, or videotaped; c) the date the photographs, films, or videotapes were taken; d) the name, ADDRESS, and telephone number of the individual taking the photographs, films, or video; e) the name, ADDRESS, and telephone number of each PERSON OR ENTITY who has the original or a copy.

**Response:** Plaintiffs object to this interrogatory on grounds that Defendants' general Definitions render this interrogatory confusing, ambiguous, overbroad and unduly burdensome to respond to. For example, as described above, the definition of "you" and "your" employed by Defendants already includes the named Plaintiffs' attorneys, yet Defendants in this interrogatory appear to use "you" to refer only to the named Plaintiffs. Defendants then ask not only for recordings or written statements obtained by the named Plaintiffs but for "anyone acting on your behalf," which would also necessarily encompass Plaintiffs' attorneys. Likewise, Defendants define "incident" in their Definitions as all "circumstances and events set forth in Plaintiffs' Complaint and Jury Demand." Plaintiffs' Amended Complaint, which this definition incorporates, includes 667 paragraphs spanning 122 pages of factual allegations, each of which can be construed of as an "event" or "circumstance." Instead, in using the word "incident" here, Defendants appear to refer to the events that lead to Elijah McClain's death the evening of August 24, 2019, namely his interactions with members from the Aurora City Police Department and Aurora Fire Rescue Department. Thus, application of Defendants' Definitions not only renders this interrogatory confusing and ambiguous, but overly broad and unduly burdensome to respond to.

EXHIBIT 1

Plaintiffs similarly object on grounds of overbreadth and burden in that, even limited to the events that took place on August 24, 2019 that gave rise to Elijah McClain's death and the injuries he sustained that day, Defendants ask Plaintiffs and their counsel to identify not only photographs, pictures, or video footage in their immediate possessions, custody, or control, but all such materials they have "knowledge" of. Given the widespread global outcry that ensued after Elijah McClain's death, there are countless publicly available photographs, pictures, and video clips of the events of August 24, 2019 and of Elijah McClain injuries and death, many of which Plaintiffs and their counsel have "knowledge" of. Thus, Plaintiffs object to this interrogatory on grounds that it is substantively overbroad, unduly burdensome to response to, and seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. Defendants' use of the phrase "concerning" further compounds the problem. Use of the term "concerning" renders a discovery request facially overbroad. *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 667 (D. Kan. 2004) (observing that "a request or interrogatory may be overly broad or unduly burdensome on its face if it uses an omnibus term as 'relating to' or 'concerning[,]' . . . when the omnibus term is used 'with respect to a general category or group of documents.'").

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Plaintiff Estate of Elijah McClain is limiting its response to photographs, pictures, and video footage taken on the evening of August 24, 2019 by witnesses who witnessed first-hand the events that resulted in Elijah McClain's death. *See* McClain003668-003733 (all video surveillance and body-worn camera footage in possession of all parties), McClain001977-002241 (autopsy photos), and McClain003189-003194 (photos of Elijah, Elijah

in the hospital, Elijah's memorial, and vigil). Plaintiff is unaware of any other photographs, pictures, or video footage taken by first-hand witnesses of the events of August 24, 2019 and agrees to produce them should any come to light.

*Sheneen McClain:* Plaintiff Sheneen McClain states that she is limiting her response to photographs, pictures, and video footage taken by witnesses who witnessed first-hand the events that resulted in Elijah McClain's death on the evening of August 24, 2019. Ms. McClain refers Defendants to McClain003668-003733 (all video surveillance and body-worn camera footage in possession of all parties), McClain001977-002241 (autopsy photos), and McClain003189-003194 (photos of Elijah, Elijah in the hospital, Elijah's memorial, and vigil). Plaintiff is unaware of any other photographs, pictures, or video footage taken by first-hand witnesses of the events of August 24, 2019 and agrees to produce them should any come to light.

*LaWayne Mosley:* Plaintiff LaWayne Mosley is limiting his response to photographs, pictures, and video footage taken on the evening of August 24, 2019 by witnesses who witnessed first-hand the events that resulted in Elijah McClain's death. *See* McClain003668-003733 (all video surveillance and body-worn camera footage in possession of all parties), McClain001977-002241 (autopsy photos), and McClain003189-003194 (photos of Elijah, Elijah in the hospital, Elijah's memorial, and vigil). Plaintiff is unaware of any other photographs, pictures, or video footage taken by first-hand witnesses of the events of August 24, 2019 and agrees to produce them should any come to light.

13. **Identify each person, besides your attorney, with whom you discussed or spoken with regarding this INCIDENT or made statements regarding the INCDENT** *[sic]* **orally or in writing. For each person identified a) the name, ADDRESS, and telephone**

**EXHIBIT 1**

number of the individual; b) substance of the conversation; c) date, time, place of the conversation.

**Response:** Plaintiffs object to this interrogatory on grounds that it is temporally and substantively overbroad and seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). As an initial matter, given the widespread global outcry that ensued after Elijah McClain's death, named Plaintiffs have spoken with countless individuals about the death of their son, from friends to family, to community activists, religious leaders, and news media. As such, it would be virtually impossible and far too onerous for Plaintiffs to identify everyone they have spoken with about the events that gave rise to their son's death or any of the other facts found in the Amended Complaint, let alone describe those conversations. Such information has little if any relevance to the claims and defenses in this suit, and therefore Plaintiffs need not respond given the overwhelming burden of doing so.

Likewise, Plaintiffs object to Defendants' general Definitions which makes this interrogatory confusing and even more onerous to respond to, and which suggest encroachment on attorney work product protections. For example, the definition of "you" and "your" employed by Defendants includes the named Plaintiffs' attorneys, yet Defendants in this interrogatory appear to use "you" to refer only to the named Plaintiffs and specifically exempt Plaintiffs from identifying and describing conversations with their attorneys. However, Defendants do not similarly exempt Plaintiffs' attorneys from identifying everyone they have spoken with about the "incident" despite

their use of "you." Likewise, Defendants define "incident" in their Definitions as all "circumstances and events set forth in Plaintiffs' Complaint and Jury Demand." Plaintiffs' Amended Complaint, which this definition incorporates, includes 667 paragraphs spanning 122 pages of factual allegations, each of which can be construed of as an "event" or "circumstance." Instead, in using the word "incident" here, Defendants appear to refer to the events that lead to Elijah McClain's death the evening of August 24, 2019, namely his interactions with members from the Aurora City Police Department and Aurora Fire Rescue Department. Thus, application of Defendants' Definitions not only renders this interrogatory confusing and ambiguous but makes it even more unduly burdensome to respond to given that the scope of the requested information because it makes Plaintiffs (and their attorneys) identify and describe every conversation they have had about background circumstances and events including that Elijah McClain was a massage therapist or that Elijah McClain was shy. *See, e.g.*, *Amended Complaint* at ¶ 5.

Plaintiffs also object on grounds of the work-product doctrine. By defining "you" as "you or anyone acting on your behalf" to include Plaintiff's attorneys, Defendants seek the work product of Plaintiffs' counsel in ongoing litigation. "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Thus, while a party may be required to identify potential witnesses or disclose relevant facts, such obligation does not extend to identifying who Plaintiffs' counsel specifically interviewed in litigation or in preparation for trial or to describe the nature and content of those conversations. *See id.* (affirming that an adverse party's counsel need not produce "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible [things]" that are protected by work product).

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Not applicable.

*Sheneen McClain:* Plaintiff Sheneen McClain states that she has discussed the murder of her son with countless members of her family, friends, and members of the public. Given the facial lack of relevance to this discovery request and the burden entailed by responding, she respectfully declines to respond to this interrogatory before Defendants respond to her objections, articulate the possible relevance of the information to this case, and describe how such information might be used.

*LaWayne Mosley:* Plaintiff LaWayne Mosely states that he has discussed the murder of his son with countless members of his family, friends, and members of the public. Given the facial lack of relevance to this discovery request and the burden entailed by responding, he respectfully declines to respond to this interrogatory before Defendants respond to his objections, articulate the possible relevance of the information to this case, and describe how such information might be used.

**14.     As to named Plaintiffs and Elijah McClain, please identify any and all e-mail addresses, websites and/or weblogs created, used and/or maintained by you during the past five years to the present (including but not limited to those created, used and/or maintained on Instagram, FaceBook, Twitter, Go Fund Me, SnapChat, WeChat, TikTok, Tumblr, YouTube, WhatsUp, Reddit, or any other social media site. Your response should include, but not be limited to identification of the e-mail/website/weblog addresses and the individual(s) for whom such addresses are/were created, the date(s) such addresses were created, used and/or maintained, and whether or not such addresses remain active.**

**Response:** Plaintiffs object to this interrogatory on grounds that it is substantively overbroad and seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Plaintiffs' email and social media accounts, let alone the accounts of their deceased son, have no bearing on the circumstances surrounding Elijah McClain's death or the damages sought in this case as communications found in these accounts or on webpages was unknown to Defendants on August 24, 2019 and therefore could not have informed any of their actions or decisions. Likewise, any communications found in Elijah McClain's accounts or on the web preceded his unexpected death, and therefore shed no light on the events giving rise to Defendants' liability in this lawsuit. Communications found in Plaintiffs' or their son's email accounts or on web pages have no impact on the damages resulting from Elijah McClain's untimely death. Such inquiries into digital footprint are also not reasonably calculated to uncover relevant witnesses or information and appears to be nothing more than a fishing expedition in the attempt to malign the Plaintiffs and their deceased son before a jury or in the court of public opinion. For these reason as well, Plaintiffs further object on grounds that such interrogatory is interposed for improper purpose and harassing and constitutes a serious invasion of privacy.

Plaintiffs also object on the basis that requests for information or documents about electronically stores information must be relevant and sufficiently particular to comply with the Federal Rules of Civil Procedure. "The fact that the information defendants seek is in an electronic file as opposed to a file cabinet does not give them the right to rummage through the entire file.

EXHIBIT 1

The same rules that govern the discovery of information in hard copy documents apply to electronic files." *Howell v. Buckeye Ranch, Inc.*, 2012 WL 5265170, *1 (S.D. Ohio Oct. 1, 2012). There is no facial relevance to the information sought by Defendants, therefore Plaintiffs object that this interrogatory fails to comply with the discovery obligations set for in the federal rules and the jurisprudence interpreting them.

Plaintiffs also object to the extent that this interrogatory seeks information not within their possession custody or control. Defendants request "identification of the e-mail/website/weblog addresses and the individual(s) for whom such addresses are/were created, the date(s) such addresses were created, used and/or maintained, and whether or not such addresses remain active." Named Plaintiffs (and their counsel) do not have all of the information sought by Defendants with respect to their deceased son.

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Plaintiff Estate of Elijah McClain states that because this interrogatory seeks irrelevant information that is both harassing, oppressive, and an invasion of privacy, it respectfully declines to provide any information in response to this interrogatory before Defendants respond to Plaintiffs' objections, articulate the possible relevance of such information to this case, and describe how such information might be used.

*Sheneen McClain:* Plaintiff Sheneen McClain states that because this interrogatory seeks irrelevant information that is both harassing, oppressive, and an invasion of privacy, she respectfully declines to provide any information in response to this interrogatory before Defendants respond to Ms. McClain's objections, articulate the possible relevance of such information to this case, and describe how such information might be used.

*LaWayne Mosley:* Plaintiff LaWayne Mosley states that because this interrogatory seeks irrelevant information that is both harassing, oppressive, and an invasion of privacy, he respectfully declines to provide any information in response to this interrogatory before Defendants respond to Plaintiffs' objections, articulate the possible relevance of such information to this case, and describe how such information might be used.

**15.    Identify each and every item of economic (special) damages – including but not limited to medical expenses, loss of earnings/earning capacity, and out-of-pocket expenses you claim in this action, and for each:**

**a) Describe the damage,**

**b) State the date the damage was incurred,**

**c) State the monetary amount of the damage,**

**d) Identify every person with knowledge of the damage, and**

**e) Identify every document or thing referencing or evidencing the damage.**

**Response:** Plaintiffs object to this interrogatory in that Elijah McClain's life was cut abruptly short. The subject of his earnings capacity is therefore subject to expert analysis and may be supplemented up to and including the date of trial based on discovery of further information.

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:*

- $214,180.46 in medical bills – UCHealth University of Colorado Hospital (*See* documents previously produced at McClain001569-001581). Damage occurred August 24, 2019.

- $29,307.00 in medical bills – University of Colorado Physicians (*see* McClain 001586-001596). Damage occurred August 24, 2019.

- $1,767.00 ambulance bill – Falck Rocky Mountain (*see* Falck billing record

31

produced herewith at Confidential McClain003789). Damage occurred August 24, 2019.

- $1,856,400 to $3,594,300,lost future earnings (information to be produced in accordance with Fed.R.Civ.P. 26(a)(2)). Damage occurred August 24, 2019.

Plaintiff reserves the right to supplement and amend the economic damages in this case as appropriate, and that such economic damages are exclusive of attorney's fees and costs, which Plaintiffs intend to seek at trial, and which continue daily to accrue.

*Sheneen McClain:* *See* Response of Estate of Elijah McClain, above. Ms. McClain further states that she reserves the right to supplement and amend the economic damages in this case as appropriate, and that such economic damages are exclusive of attorney's fees and costs, which she intends to seek at trial, and which continue daily to accrue.

*LaWayne Mosley:* *See* Response of Estate of Elijah McClain, above. Mr. Mosley further states that he reserves the right to supplement and amend the economic damages in this case as appropriate, and that such economic damages are exclusive of attorney's fees and costs, which Plaintiffs intend to seek at trial, and which continue daily to accrue.

**16.** **Identify each and every type of non-economic (general) damages – including, but not limited to, pain and suffering, loss of enjoyment of life, emotional stress, and any permanent impairment or disability you claim in this action, and for each:**

    **a)** **Describe the damage,**

    **b)** **State the date the damage was incurred,**

    **c)** **State the monetary amount you claim for the damage,**

    **d)** **Identify every person with knowledge of the damage, and**

    **e)** **Identify every document or thing referencing or evidencing the damage.**

EXHIBIT 1

**Response:** Plaintiffs object to this interrogatory to the extent that Defendants are requesting Plaintiffs provide exact amount or calculation of non-economic damages, including emotional distress and punitive damages. "Courts have held that because emotional suffering is personal and difficult to quantify and because compensatory damages for emotional distress are typically considered a fact issue for the jury, emotional distress damages are not subject to the kind of calculation contemplated by Rule 26(a)(1)(A)(iii)." *Anderson v. United Parcel Serv., Inc.*, No. CIV.A. 09-2526, 2010 WL 4822564, at *10 (D. Kan. Nov. 22, 2010); *see also Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000) (upholding damages award for emotion distress even though plaintiff had been unable to quantify them in discovery). Similarly, courts frequently deny motions to compel computations of punitive damages for the same reasons. *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011) ("[D]istrict courts have frequently denied motions to compel computations of emotional distress and punitive damages because they are 'difficult to quantify' and are 'typically considered a fact issue for the jury.'" (collecting cases)); see also *E.E.O.C. v. General Motors Corp.,* Civ. No. 3:06-cv-19, 2009 WL 910812, *3, n.1 (S.D. Miss. Apr. 1, 2009) (finding that a claim for punitive damages is an issue for the jury and not amenable to a specific calculation under Rule 26).

Plaintiffs further object on the grounds that Defendants' interrogatory is overbroad and unduly burdensome to respond to, in addition to encroaching on work product protections. In requesting that named Plaintiffs identify every person with knowledge of the non-economic damages sought in this case, and to identify every document or thing referencing or evidencing such damages, is not possible. Plaintiffs have spoken to hundreds, if not thousands, of individuals about their pain and suffering. Likewise, their son, Elijah McClain, did not have to opportunity to

**EXHIBIT 1**

discuss the pain and suffering he experienced while dying, other than with Defendants who were present at the time of his death, although such suffering is subject to common sense. Similarly, it would be unduly burdensome and reveal the mental impressions of Plaintiffs' counsel to identify every witness and document that supports Plaintiffs' requests for punitive damages. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997) (condemning defendant's interrogatories that "require[d] the responding party to provide in essence a running narrative or description of the entire case, together with identifications of all knowledgeable persons and supporting documents.").

Subject to and without waiving their objections, Plaintiffs state:

*Estate of Elijah McClain:* Plaintiff Estate claims all recoverable types of non-economic damages. Plaintiff Estate has suffered injuries and losses, including the death of Mr. McClain, entitling it to recover his compensatory and special damages, including, but not limited to, for loss of constitutional rights, loss of life, loss of relationships, loss of enjoyment of life, medical expenses, and his herein described horrific and terrifying pain and suffering during and leading up this fatal event, permanent lost earnings and earnings capacity for the expected productive working lifetime of Mr. McClain, who worked as a massage therapist, under the mortality tables and other special damages, all in amounts to be proven at trial.

A preliminary expert report by Dr. Allen Parkman, which will be produced in accordance with Fed.R.Civ.P. 26(a)(2), concludes that hedonic damages (including those for loss enjoyment of life) are valued at approximately $10,000,000 in 2020.

*Sheneen McClain:* Plaintiff Sheneen McClain states that she is unable to provide with exact certainty the amount of non-economic, including emotional distress and punitive damages, that are warranted in this case, and will leave such determination to a jury. Ms. McClain further states that

**EXHIBIT 1**

she intends to testify as to her own emotional distress and in support of the Estate's damages, set forth above. Further response to this interrogatory is more appropriately obtained from Ms. McClain through her deposition.

_LaWayne Mosley:_ Plaintiff LaWayne Mosley states that he is unable to provide with exact certainty the amount of non-economic, including emotional distress and punitive damages, that are warranted in this case, and will leave such determination to a jury. He will testify at trial as to his own emotional distress and in support of the Estate's damages, set forth above. Further response to this interrogatory is more appropriately obtained from Mr. Mosley through his deposition.

EXHIBIT 1

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**1.      Please produce a complete copy of all Elijah McClain's records and cases with the Colorado Department of Human Services, including records of the Division of Child Welfare and the Division of Youth Services, related to all benefits and assistance he received including medical benefits, welfare adult/child services, child welfare services, social adult/child services, adult financial benefits.**

**Response:** Plaintiffs object to this request for production on grounds that it is substantively overbroad and seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Elijah McClain's records and cases with the Colorado Department of Human Services, to the extent such exist, have no bearing on the circumstances of his death or the damages sought in this case, the request is not reasonably calculated to uncover relevant witnesses or information, and the request appears to be nothing more than a fishing expedition in the attempt to malign the Plaintiffs and their deceased son before a jury or in the court of public opinion. For these reasons as well, Plaintiffs further object on grounds that such request for production is interposed for improper purpose, is harassing, and constitutes an invasion of privacy.

Plaintiffs further object to this request for production of documents to the extent that this request seeks documents that are beyond Plaintiffs' possession, custody, or control, and for that reason, this request for production would be unduly burdensome to respond to.

Subject to and without waiving their objections, Plaintiffs respectfully decline to provide

any records in response to this request for production before Defendants respond to their objections, articulate the possible relevance of such documents to this case, and describe how such documents might be used.

**2.      Please produce a complete copy of Elijah McClain's social security file with the social security administration (as part of the request please execute the attached Release for Social Security Records).**

**Response:** Plaintiffs object to this request for production of documents to the extent that this request seeks documents that are beyond Plaintiffs' possession, custody, or control, and for that reason, this request for production would be unduly burdensome to respond to.

Plaintiffs further object to this request because it asks Plaintiffs to execute a release. In Colorado attempting to compel signed authorizations is not an appropriate mechanism for obtaining discovery. *See Morris v. City of Colo. Springs*, Civ. No. 09-cv-01506, 2009 WL 4927618, *2 (D. Colo. 2009).

Subject to and without waiving their objections, Plaintiffs state that they subpoenaed Elijah McClain's social security file from the social security administration on July 28, 2020 but the administration has yet to produce the records. Plaintiffs agree to provide a copy of Elijah McClain's social security file to Defendants as soon as they are able.

**3.      Please produce any and all medical records for Elijah McClain from birth until the date of this incident, including every health care provider listed in Interrogatory 6, including medical reports, x-rays, ultrasound reports, correspondence, office notes, narrative reports, test results and progress notes from any and all health providers and facilities who treated and/or examined Elijah McClain for any condition whatsoever**

EXHIBIT 1

including specifically any:

    a) physical including cardiac and respiratory issues/conditions;

    b)  mental pertaining to any condition affecting cognitive, behavioral, developmental,

    special needs and learning disability issues;

    c) Psychological and psychiatric conditions

**Response:** Plaintiffs object to this request for production on grounds that it is temporally overbroad and not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Chiefly, whether Elijah McClain suffered from any preexisting medical maladies has no bearing on Defendants' liability or the calculation of damages in this case. The jurisprudence is well-settled that in cases alleging violation of § 1983, the eggshell doctrine applies. The eggshell doctrine "provides that a tortfeasor takes its victim as it finds him. Thus, a tortfeasor is fully liable for any damages resulting from its wrongful act even if the victim had a pre-existing condition that made the consequences of the wrongful act more severe for him than they would have been for a person without the condition." *O'Neal v. Bd. of Cty. Commissioners of Cty. of Fremont*, No. 16-CV-01005-TMT-KLM, 2020 WL 2526782, at *10 (D. Colo. May 18, 2020) (quotations omitted). Because of the eggshell doctrine, Defendants are precluded from arguing against liability or for reducing damages based on any of Elijah McClain's pre-existing medical conditions.

    Plaintiffs further object to this request for production on the grounds of invasion of privacy and based on the psychotherapist-patient privilege. Whether Elijah McClain sought psychiatric or

EXHIBIT 1

psychological counselling or treatment has no bearing on liability or damages in this case, and "[e]ffective psychotherapy… depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996). "Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace." *Id.* As a result, courts have long observed that psychotherapist records should be precluded from discovery. *See id.* Public policy militates against discovery of psychotherapist records because "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* Because this request for production seeks irrelevant, highly sensitive information, Plaintiffs further objects on grounds that such request is interposed for improper purpose, is harassing, and constitutes an invasion of privacy of their deceased son.

Subject to and without waiving their objections, Plaintiffs state that their son had no diagnosed physical, mental, cognitive, behavioral, developmental, learning disability, or special needs condition, and contrary to rumor was not autistic. Nor did their son seek treatment from a psychologist or psychiatrist. Documents responsive to this request for production are being withheld based on Plaintiffs' objections subject to further conferral.

4.      **Please produce Elijah McClain's personal federal and state income tax returns for the years 2009 to 2019, including W-2 statements for each of these designated years.**

**Response:** Plaintiffs object to this request on grounds that it that it is temporally and substantively overbroad, seeks documents that are not relevant to any party's claims or defenses nor proportional to the needs of the case, and seeks the disclosure of highly private documents

39

contrary to public policy. Wage history from as far back as 2009, when Elijah McClain was just 13 years old, and 10 years before the evening of his death, have little to no bearing on the damages in this case. Similarly, although more recent wage history may be relevant to the calculation of damages, such compensation can be gleaned from W-2 statements alone. Thus, this request seeks irrelevant information in that other sources of income, benefits, or compensation are not relevant to any other damage categories such as emotional distress or punitive damages. *Combe v. Cinemark USA, Inc.*, 2009 WL 2578853, *2 (D. Utah Aug. 18, 2009) (where adequate verification of income from work is available, other income information is not discoverable on a claim of emotional distress); *Bagnall v. Freeman Decorating Co.*, 196 F.R.D. 329, 333 (N.D. Ill. July 24, 2000) (information into other sources of income including stock, bonds, dividends, and profits from business ownership is irrelevant).

Plaintiffs further object to this request based on public policy and privacy concerns. Public policy disfavors disclosure of tax records in discovery. *Combe,* 2009 WL 2578853, at *5-6; *I'Mnaedaft, Ltd. V. Intelligent Office Sys., LLC,* 2009 WL 924304 (D. Colo. Mar. 30, 2009) (burden is on requesting party to establish a compelling need and prove no alternative less intrusive ways of acquiring the information sought). Defendants' request for tax returns reflecting income from any source is an invasion of privacy.

Plaintiffs further object in that this request for production of documents seeks records that are not in Plaintiffs' possession, custody, or control.

Subject to and without waiving their objections, Plaintiffs state that Elijah McClain's paystubs from June-August 2019 are produced herewith at Confidential003892-003899.

**5.      Please produce employment records for Elijah McClain, including any documents with respect to attendance, performance, payroll, leave, accommodations, admonitions from any employer who employed Elijah McClain between 2009 and 2019.**

**Response:** Plaintiffs object to this request on grounds that it is temporally and substantively overbroad, seeks documents that are not relevant to any party's claims or defenses nor proportional to the needs of the case, and seeks the disclosure of highly private documents. Other than Elijah McClain's payroll records, many of the documents Defendants seek appear to have little if any bearing on the damages in this case. Whether Elijah McClain was once disciplined by a former employer is an imitable circumstance and does not necessarily impact his earning capacity in the future. At the same time, courts have recognized a privacy and personal interest in personnel records. *See, e.g., Shirazi v. Childtime Learning Ctr., Inc.*, No. CIV-07-1289, 2008 WL 4792694, at *2 (W.D. Okla. Oct. 31, 2008) (recognizing plaintiff's standing to quash subpoenas served by Defendant on her prior and subsequent employers because of the privacy interests at stake). Likewise, employment records from as far back as 2009, when Elijah McClain was just 13 years old, and 10 years before the evening of his death, shed no light on his future work performance or employability.

Plaintiffs further object in that this request for production of documents seeks records that are not in Plaintiffs' possession, custody, or control.

Subject to and without waiving their objections, Plaintiffs direct Defendants to bates numbers McClain003790-003899 for all the employment records they were able to obtain. Plaintiffs were able to obtain records from Massage Envy, Elijah McClain's current employer at the time of his death. Elijah McClain also worked as a Door Dash driver, but Plaintiffs were unable

to obtain records from Door Dash as it is located outside of the subpoena jurisdiction for this Court.

**6.     Please produce any and all school records for each school or other academic or vocational institution (including alternative school, trade school, or GED program) Elijah McClain attended beginning with grade school, b) the dates Elijah McClain attended; c) the highest grade level Elijah McClain have completed; and d) the degrees Elijah McClain received. If Elijah McClain obtained any licenses pursuant to his completion of any educational/academic/trade programs, please produce a copy of each license obtained.**

**Response:** Plaintiffs object to this request on grounds that it is temporally and substantively overbroad and because it seeks documents that are not relevant to any party's claims or defenses nor proportional to the needs of the case. Elijah McClain's grades from elementary and middle school, and even high school, speak almost nothing to his future earning capacity. A vast majority of his school records have bearing on the damages in this case, and none of his school records have any bearing on the circumstances surrounding Elijah McClain's death as such records were unknown to Defendants on August 24, 2019 and therefore could not have informed any of their actions or decisions.

Subject to and without waiving their objections, Plaintiffs respectfully decline to produce Elijah McClain's school records except for Elijah McClain's massage therapy license found at McClain003188. Mr. McClain also obtained his G.E.D. Other responsive records are being withheld based on Plaintiffs' objections subject to further conferral.

**7.     Please produce any DOCUMENTS that support the existence of any item of damages claimed in Interrogatories 15 and 16.**

**Response:** Because this request for production specifically refers to and incorporates

Interrogatory Nos. 15 and 16, Plaintiffs likewise also incorporate their objections to Interrogatory Nos. 15 and 16 herein.

Subject to and without waiving their objections, Plaintiffs refer Defendants to his medical bills at McClain001569-001596 and McClain003789. Mr. McClain's paystubs from Massage Envy are produced at McClain003892-003899.

**8.      Please produce any DOCUMENTS that pertain to the disclosures made in Interrogatories 7, 8, 9, 12, 13.**

**Response:** Because this request for production specifically refers to and incorporates Interrogatory Nos. 7, 8, 9, 12, and 13, Plaintiffs likewise also incorporate their objections to Interrogatory Nos. 7, 8, 9, 12, and 13 herein.

Plaintiffs further object to this request for production in that it uses language such as "pertain," which makes it facially overbroad and unduly burdensome to respond to on its face. "Use of omnibus phrases such as "pertaining to," moreover, often makes an interrogatory overly broad and unduly burdensome on its face. Such phrases often require the answering party to engage in mental gymnastics to determine what information may or may not be remotely responsive." *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197–98 (D. Kan. 1996) (declining to compel answers to interrogatories in which all documents "pertaining to" a topic were requested); see also *Cardenas v. Dorel Juv. Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) (where a request for production of documents seeks all documents "pertaining to" or "concerning" a broad range of items the language is so "as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope."). In the face of such language, a party need not respond. *Western Res., Inc. v. Union Pac. R.R. Co.*, 2001 WL 1718368, *3-4 (D. Kan. Dec. 5, 2001) ("the

Court will not compel further response when inadequate guidance exists to determine the proper scope of a request for discovery.").

Subject to and without waiving their objections, Plaintiffs refer Defendants to McClain003668-003733 (all video surveillance and body-worn camera footage in possession of all parties), McClain001977-002241 (autopsy photos), and McClain003189-003194 (photos of Elijah, Elijah in the hospital, Elijah's memorial, and vigil). Based on their objections to this request for production and the aforementioned interrogatories, there are no further documents to be produced.

**9.     Please produce a copy of Elijah McClain's Colorado Prescription Drug Monitoring Program report ("CPDMP report") listing all of prescription medications he has received.**

**Response:** Plaintiffs object to this request for production on grounds that it is temporally overbroad and not relevant to any party's claims or defenses nor proportional to the needs of the case. When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Chiefly, whether Elijah McClain was taking and prescription medications for preexisting medical maladies has no bearing on Defendants' liability or the calculation of damages in this case. The jurisprudence is well-settled that in cases alleging violation of § 1983, the eggshell doctrine applies. The eggshell doctrine "provides that a tortfeasor takes its victim as it finds him. Thus, a tortfeasor is fully liable for any damages resulting from its wrongful act even if the victim had a pre-existing condition that made the consequences of the wrongful act more severe for him than they would have been for a person

without the condition." *O'Neal v. Bd. of Cty. Commissioners of Cty. of Fremont*, No. 16-CV-01005-TMT-KLM, 2020 WL 2526782, at *10 (D. Colo. May 18, 2020) (quotations omitted). Because of the eggshell doctrine, Defendants are precluded from arguing against liability or for reducing damages based on any of Elijah McClain's prescription drug history.

Plaintiffs further object in that this request for production of documents seeks documents that are beyond Plaintiffs possession, custody, or control.

Subject to and without waiving their objections, Plaintiffs are not in possession of Elijah McClain's CPDMP report.

**10.    Please produce a signed and notarized, if applicable, original of each of the attached authorizations to obtain Elijah McClain's medical, employment and educational records.  The list includes the following:**

**a)  Authorization to Release Medical Records for all treatment providers referenced in your Response to Interrogatory No. 6.**
**b)  Authorization to Release Employment Records referenced in your Response to Interrogatory No. 11.**
**c)  Authorization to Release Educational Records referenced in your Response to Interrogatory No. 10.**
**d)  Authorization to Release all records with Colorado Department of Human Services.**
**e)  Authorization to Release all records with Colorado Division of Professions and Occupations.**
**f)  Authorization to release Elijah McClain's CPDMP report listing all of the prescriptions he has received.**

**Response:** Because this request for production specifically refers to and incorporates Interrogatory Nos. 1, 6, 9, 10, and 11, Plaintiffs likewise also incorporate their objections to Interrogatory Nos. 1, 6, 9, 10, and 11 herein.

Plaintiffs further object to this request because it asks Plaintiffs to execute a release. In Colorado attempting to compel signed authorizations is not an appropriate mechanism for

EXHIBIT 1

obtaining discovery. *See Morris v. City of Colo. Springs*, Civ. No. 09-cv-01506, 2009 WL 4927618, *2 (D. Colo. 2009). Along the same vein, Plaintiffs object because a request for six overbroad releases seeking unfettered direct access to much of Elijah McClain's life constitutes a request for production interposed for improper purposes. Many of the documents Defendants seek are not facially relevant to any party's claims or defenses nor proportional to the needs of the case, and the records sought are often from time periods temporally distant from the evening of Elijah McClain's death. As such, this request for production appears, at least in part, to be a fishing expedition aimed at harassing, embarrassing, and oppressing Plaintiffs and their deceased son.

Subject to and without waiving their objections, Plaintiffs state that they respectfully decline to sign the requested authorizations but have endeavored in good faith to obtain documents responsive to Defendants' discovery requests and have produced those they believe to be relevant accordingly.

AS TO OBJECTIONS:

RATHOD | MOHAMEDBHAI LLC

*s/ Iris Halpern*
Iris Halpern
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
ih@rmlawyers.com

ATTORNEY FOR PLAINTIFFS ESTATE
OF ELIJAH JAVON MCCLAIN AND
SHENEEN MCCLAIN

**EXHIBIT 1**

KILLMER LANE & NEWMAN, LLP

*s/ Mari Newman*
Mari Newman
Darold W. Killmer
David A. Lane
Michael Fairhurst
Liana Orshan
KILLMER LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001- facsimile
mnewman@kln-law.com
dkillmer@kln-law.com
dlane@kln-law.com
lorshan@kln-law.com
mfairhurst@kln-law.com

ATTORNEYS FOR PLAINTIFFS ESTATE OF ELIJAH
MCCLAIN AND LAWAYNE MOSLEY

**EXHIBIT 1**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2021, I served via electronic mail the foregoing to the following:

Peter Morales
Isabelle Evans
Aurora City Attorney's Office
15151 E. Alameda Parkway, Suite 5300
Aurora, CO 80012
pmorales@auroragov.org
ievans@auroragov.org

*Counsel for Defendant City of Aurora and Defendants Woodyard, Roedema, Rosenblatt, Green, Leonard, Ward, Dittrich, Marrero, Root, Mullins-Orcutt, Dunson, Nunez, Cichuniec, and Cooper in their official capacities*

Jonathan M. Abramson
Yulia Nikolaevskaya
Kissinger & Fellman, P.C.
3773 Cherry Creek N. Dr., #900
Denver, CO 80209
jonathan@kandf.com
julie@kandf.com

*Attorney for Defendants Dittrich, Dunson, Green, Leonard, Marrero, Mullins-Orcutt, Nunez, Roedema, Root, Rosenblatt, Ward, and Woodyard in their individual capacities*

Stephen J. Hensen
Hensen | DuWaldt
1001 Bannock St., Suite 39
Denver, CO 80204
steve@hendulaw.com

*Attorney for Defendant Dr. Eric Hill*

Michael Lowe
David Goddard
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, Colorado 80202
MLowe@brunolawyers.com
dgoddard@brunolawyers.com

**EXHIBIT 1**

*Attorneys for Defendants Cichuniec and Cooper in their individual capacities*

**EXHIBIT 2**

## AFFIDAVIT OF RICHARD J. HAMILTON, M.D.

I, Richard J. Hamilton, M.D., do hereby swear that the following information is true and correct to the best of my knowledge.

1.      I, Richard J. Hamilton, M.D., am an emergency medicine physician in Philadelphia, Pennsylvania with over 20 years experience. I am board certified in Emergency Medicine and Medical Toxicology.

2.      I have been retained as an expert for the defense in *McClain v. City of Aurora et al., U.S. District Court for the District of Colorado; Civil Action No. 20-cv-02389-DDD-NRN.*

3.      I have been reviewing the materials provided to me as I prepare my opinion in this matter. In order to provide an expert opinion that is complete and accurate, it is paramount that I review a complete set of medical and mental health records for Mr. McClain.

4.      For example, the Coroner indicated it was important to consider preexisting medical (e.g. asthma) and behavioral health conditions (e.g. drug use, schizophrenia) which might help explain the course of events and outcome of this case.  I agree that these issues need to be considered thoroughly.

5.      In summary, I need all of Mr. McClain's records to include behavioral health, mental health, physical health, prescription (pharmacy) records, and social history records for the 20 year period antecedent to 2019. Social history is defined in medicine as the familial, occupational (work or school), and recreational aspects of the patient's personal life that have the potential to be clinically significant.

Further affiant sayeth not.

_____
Richard J. Hamilton, M.D.

STATE OF PENNSYLVANIA          )
                                               ) ss.
COUNTY OF  Montgomery      )

Subscribed and sworn to before me this 21st day of April 2021 by Richard J. Hamilton, M.D.

WITNESS MY HAND AND OFFICIAL SEAL.
My Commission Expires: _____

_____
NOTARY PUBLIC

**EXHIBIT 2**

**AFFIDAVIT OF THE FORENSIC PANEL, EXPERT MEDICAL PATHOLOGISTS AND TOXICOLOGISTS OF THE CITY OF AURORA**

We do hereby swear that the following information is true and correct to the best of our knowledge.

1. I, Kanthi DeAlwis, M.D. am a forensic pathologist with 35 years experience and board certification in anatomic, clinical, and forensic pathology. For 9 years, as the Chief Medical Examiner and 16 years as the deputy Medical Examiner of Honolulu, HI
2. In the course of my career, I have performed over 10,000 autopsies during my career and over two hundred additional case reviews.
3. I, Marcella Fierro, M.D. am a forensic pathologist with 45 years experience and board certification in anatomic, clinical and forensic pathology. For 14 years, I was Chief Medical Examiner of the State of Virginia.
4. I have performed over 10,000 death investigations during my career.
5. I, Ashraf Mozayani, Ph.D. am a forensic toxicologist with more than 25 years experience and board certification in forensic toxicology.   I was the Laboratory Director and Chief Toxicologist for the Harris County Institute of Forensic Sciences. In addition, I was Chief Toxicologist for the District of Columbia at the Office of the Chief Medical Examiner.
6. I have reviewed  over 50,000 toxicology testings during my career.
7. I, Brian Peterson, M.D. am a forensic pathologist with 32 years experience and board certification in anatomic, clinical, and forensic pathology. I am the Chief Medical Examiner for the Milwaukee County Medical Examiner's Office. I was the President of the National Association of Medical Examiners in 2017 and Chairman of the Board in 2018.
8. In the course of my career, I have performed over 11,000 autopsies and have reviewed many thousands of other medicolegal death investigations.
9. I, Lionel Raymon, Pharm.D., Ph.D. am a forensic toxicologist and pharmacologist with 25 years experience bridging forensic interpretation and academics.  I chaired Pharmacology from 2003 to 2012 at Kaplan Medical and chaired Pharmacology and Biochemistry at Becker Professional Education (DeVry University) from 2013 to 2019
10. I, Michael Welner, M.D. am a forensic psychiatrist and psychopharmacologist with 28 years experience and board certification in forensic psychiatry and psychiatry. I am a Clinical Professor of Psychiatry at Icahn School of Medicine at Mt. Sinai, and Chairman of The Forensic Panel.
11. In the course of my career, I have collaborated with other medical colleagues in numerous death investigations,
12. The Forensic Panel is a multispecialty foremsic medical and behavioral science practice of approximately forty specialists, including all of the above noted professionals. The practice consults on complex litigation within the areas of our expertise, including medicolegal death investigation.
13. At the request of the Aurora, Colorado, City Attorney's Office, The Forensic Panel has been specifically asked to conduct a medicolegal death investigation of the death of Elijah McClain. Dr. DeAlwis, Dr. Fierro, Dr. Mozayani, Dr. Peterson, Dr. Raymon, and Dr. Welner have collectively reviewed records relating to the death of Elijah McClain. In

response to undertaking this review, we have requested additional materials some of which are specifically referenced, but have not yet been made available to us.

14. A medicolegal death investigation is a medical evaluation of the cause of death, contributory causes and the manner of death of an individual.

15. The inquiry should consider the following components:

a. A review of all past medical history from both primary preventative care visits and any emergency room and any hospitalization records. This must include all physical, medical, surgical, psychiatric, psychotherapeutic, and substance abuse detox or rehabilitation visits.

b. A review of all prescribed medications from all accessed pharmacies, including dates, physicians prescribing, dose, drug sensitivities, dates of changes to doses, dates of discontinuation.

c. A review of all statements of individuals at the scene of death

d. A review of all statements of individuals with knowledge of events at any time will inform the medicolegal death investigator. This includes work history (e.g. workplace accidents, chemical exposure, skills, communication, relatedness, etc.), social history (recreational exposure to substances, effects, impact, etc.), personal history (recollections of family about medical history, infirmities, behavioral symptoms, phobias, drug reactions and hypersensitivities,) institutional and family services agency history (any residential placements, behavioral management issues, adoptions, evaluations for special needs, arrests, encounters with law enforcement, and incarcerations, medical care, disabilities, and needs, accidents and injuries) and family history (e.g. medical history of illnesses and causes of death etc.)

e. A review of all scene photographs and videos regardless of source.

f. A review of any digital extracted data from digital devices

g. The complete physical examination file of the Coroner/Medical Examiner including but not limited to:

    i. All photographs from the scene

    ii. All autopsy photographs

    iii. The autopsy notes

    iv. The autopsy report

    v. Any dictation tapes or files

    vi. Any rough drafts

    vii. All correspondence

    viii. The scene investigation

    ix. The microscopic slide studies

    x. Any consultation reports

    xi. X-Rays Scans and other forms for radiological imaging

    xii. List of specimens retained

    xiii. List of specimens examined microscopically

16. In addition, any of the above documents not in the Coroner/Medical examiner file that are reasonably believed to exist but not requested or saved in that file. These would incude

any reports that have been prepared in connection with the death investigation matter by another forensic pathologist, or other medical professionals, and other experts.

17. The records supplied need to be complete, unabridged, without redactions, including all Coroner/Medical examiner records, medical records, police records, emergency medical response records, etc.

18. All photographs must be in their original form as saved on the camera with the metadata accessible, indicating they are originals and not photographs saved or converted to other formats for ease of storage or transmission.

19. Any records that are referenced in any of the requested documents but not supplied should be provided on request.

20. Ethical practice of the forensic sciences requires objectivity in death investigation and all assessments. Objectivity and accuracy are informed by diligence that considers, uncurated, all sources of data customarily relied upon in death investigation. An examiner is unable to ascertain what may or may not be critical to conclusions of the death investigation until that material has been reviewed and in the context of other evidence informing the case.

21. Without the above information sources, a proper medicolegal  investigation will be compromised and cannot be considered to have evaluated all of the pertinent data. Selective provision or review of the data diminishes the validity and reliability of the findings because conclusions are based on a chaperoned data set. If the examiners do not know what evidence one is not accounting for, such mystery impacts the accuracy and medical certainty of findings.

Further affiants sayeth not.

April 21, 2021

Kanthi De Alwis, M.D., FAAFS
*Diplomate*, American Board of Pathology: Anatomic, Clinical and Forensic Pathology

Marcella F. Fierro, M.D.

*Diplomate*, American Board of Pathology: Anatomic, Clinical and Forensic Pathology

**EXHIBIT 2**

Ashraf Mozayani, Ph.D., Pharm.D.
*Diplomate*, American Board of Forensic Toxicologists

Brian Peterson, M.D.
Diplomate, American Board of Pathology: Anatomic, Clinical and Forensic Pathology
Fellow, American Academy of Forensic Sciences, College of American Pathologists, National Association of Medical Examiners

Lionel Raymon, Pharm. D., Ph.D.

Michael Welner, M.D.

*Diplomate*, Psychiatry & Forensic Psychiatry, American Board of Psychiatry and Neurology
Clinical Professor of Psychiatry, Icahn School of Medicine at Mt. Sinai