IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02389-DDD-NRN

ESTATE OF ELIJAH JAVON MCCLAIN, by and through its personal representatives
Sheneen McClain and Lawayne Mosley;
SHENEEN MCCLAIN, individually;
LAWAYNE MOSLEY, individually,

Plaintiffs,

v.

CITY OF AURORA, COLORADO, a municipality;
OFFICER NATHAN WOODYARD, in his individual and official capacity;
OFFICER RANDY ROEDEMA, in his individual and official capacity;
OFFICER JASON ROSENBLATT, in his individual and official capacity;
OFFICER MATTHEW GREEN, in his individual and official capacity;
SERGEANT DALE LEONARD, in his individual and official capacity;
OFFICER ALICIA WARD, in her individual and official capacity;
OFFICER KYLE DITTRICH, in his individual and official capacity;
OFFICER ERICA MARRERO, in her individual and official capacity;
OFFICER JAMES ROOT, in his individual and official capacity;
OFFICER JORDAN MULLINS-ORCUTT, in his individual and official capacity;
OFFICER DARREN DUNSON, in his individual and official capacity;
SERGEANT RACHEL NUNEZ, in her individual and official capacity;
LIEUTENANT PETER CICHUNIEC, in his individual and official capacity;
PARAMEDIC JEREMY COOPER, in his individual and official capacity;
DR. ERIC HILL, in his individual capacity,

Defendants.

---

## ORDER ON APRIL 23, 2021 DISCOVERY DISPUTE

---

**N. REID NEUREITER**
**United States Magistrate Judge**

      Consistent with this Court's Practice Standards, this matter came before the

Court on a discovery dispute on April 23, 2021. The Court considered the Parties Joint

Discovery Statement (Dkt. #86-1) and heard argument.

This lawsuit arises out of the death of Elijah McClain, a young African American man who, it is undisputed, was not violating any laws when he was walking alone and was approached by Aurora Police officers on August 24, 2019. After being confronted by and struggling with Aurora police officers, and the subsequent involvement of Aurora paramedics who injected Mr. McClain with a dose of the sedative ketamine, Mr. McClain lost consciousness, dying a few days later.

Plaintiffs have sued the City of Aurora, Colorado and the individual police officers and paramedics involved on a number of federal and state grounds including, use of excessive force in violation of the Mr. McClain's Constitutional rights, denial of equal protection under the Fourteenth Amendment, violation of substantive due process rights under the Fourteenth Amendment, battery, and state law negligence.

At the request of the Parties, on February 2, 2021, the Court stayed any response to the Amended Complaint, the designation of any non-parties at fault, and vacated all deadlines in the case. With the exception of the initial written discovery requests, it was anticipated that no side would engage in any additional formal discovery. All this was done based on representations that the Parties intended to engage in good faith settlement efforts via the involvement of an out-of-state mediator. The mediation was originally scheduled for April 2021, but has now been rescheduled for June 10 and 24, 2021.

**The Discovery Dispute**

Defendants insist that they need more complete answers to certain of their discovery requests to properly evaluate Plaintiffs' claims and prepare for the June mediation. As Defendants assert, "Based on Defendants' review of the records

produced, Defendants believe that additional medical, mental health/behavioral, prescription, employment, and educational records for Mr. McClain may exist." Dkt. #86-1. Defendants complain that while Plaintiffs have produced certain medical records and made supplemental disclosures, the records produced were limited in time and scope. Based on their review of medical records that have been produced, "Defendants believe that other medical records for Mr. McClain may exist." Dkt. #86-1 at 4. Defendants complain that beyond the initial limited records, "[n]o additional mental health/behavioral records, pharmacy prescription records, educational/vocational history, and employment history records were produced." *Id.* In particular, Defendants complain that Plaintiffs have refused to sign releases provided by Defendants as to a variety of Mr. McClain's records. Defendants say that without the additional requested information their experts have been impaired in analyzing the case and prevented the insurance carrier from evaluating the potential exposure.

Defendants have agreed to broaden the privacy and confidentiality protections to any documents produced in response to these initial discovery requests. This protection goes beyond the Stipulated Protective Order (Dkt. #31) already in effect to ensure that Plaintiffs' documents produced in response to the requests would be designated "Mediator's and Defendants' Attorneys' Eyes Only." Thus, the alleged perpetrators of Mr. Elijah McClain's death would not have access to the documents produced in response to the interrogatory requests, and without further court action or the stipulation of the Parties, these documents would remain confidential and not be publicly disclosed.

The co-personal representatives of the Estate of Elijah McClain are Ms. Sheneen McClain and Lawayne Mosley, Elijah's biological parents. Ms. McClain and Mr. Mosley

are also suing individually as plaintiffs. In Ms. McClain's, view, there is no need for additional discovery beyond what has already been produced "given the needs of the case and her deceased son's and her own privacy interests." Dkt. #86-1 at 7. Ms. McClain objects to further production of documents on the grounds of "irrelevance, undue burden, invasion of privacy, and because the discovery sought is harassing, oppressive, and intended to embarrass within the meaning of Fed. R. Civ. P. 26." Dkt. #86-1 at 8. "Ms. McClain feels strongly that because Defendants murdered her son, they should not have unfettered access to every aspect of his life, particularly when the relevance of the discovery is not readily apparent." *Id.* For his part, Mr. Mosely "takes no position on these discovery issues," deferring to Ms. McClain and her counsel. *Id.*

The areas of dispute include:

**(1)** **<u>Requiring Plaintiffs to execute a release for records</u>**. Defendants complain that Plaintiffs are refusing to execute releases for medical, educational, employment, and other records requested by Defendants. Plaintiffs argue that nothing in the Rules requires a plaintiff to execute a release. The records are not in Plaintiffs' custody or control, so, instead, Defendants must normally seek to obtain records directly from third parties. In addition, Ms. McClain argues that forcing her to execute a release for records that are only tangentially relevant, if at all, is another invasion of privacy and exacerbates the emotional harm of having had her son killed by Defendants. Further, Ms. McClain does not want the Defendants to get the records directly from the custodians of records (educational institutions, employers, doctors, etc.). Instead, Ms. McClain prefers Defendants to get the documents from Plaintiffs'

4

counsel—with Plaintiffs' counsel first obtaining the records in response to discovery requests and then providing the information to Defense counsel.

**(2)** **Medical records**. Defendants argue that because Mr. McClain's cause of death is at issue, Defendants are entitled to "a complete and uncurated set of Mr. McClain's medical records, including his mental health/behavioral and prescription records." Defendants insist that the requested information is necessary for Defendants' retained experts to pursue their own investigation and evaluation into the cause of Mr. McClain's death. Defendants have attached the declaration of Richard J. Hamilton, M.D., an emergency medicine physician, board certified in Emergency Medicine and Medical Toxicology, who has been retained as an expert for the defense. Dr. Hamilton indicates that it is important to consider Elijah McClain's preexisting medical and behavioral conditions which might "explain the course of events and outcome of this case." Dr. Hamilton says he needs "all" of Mr. McClain's records for 20 years prior to his death in 2019, including mental health, physical heath, pharmacy, and "social history" records, with "social history" defined as "familial, occupational (work or school), and recreational aspects of the patient's personal life that have the potential to be clinically significant." Dkt. #86-1 at Exh. 2.

Plaintiffs indicate that they have provided all medical records of which they are aware for Elijah post-2008. According to Plaintiffs, the 2008 timeframe covers ten years prior to Elijah McClain's death and any ongoing medical issues or concerns would have been apparent in the ten years prior to his death. (Elijah McClain was born in 1996 and died in August 2019.) Plaintiffs argue that childhood records are irrelevant and forcing

5

Plaintiffs to produce childhood records is another invasion of privacy and harassment of a bereaved family by the very people who took Elijah McClain's life.

**(3)** **Educational Records**. Defendants claim they are entitled to all of Elijah McClain's educational records, going back to elementary school. Plaintiffs have provided educational records from Denver Public Schools, but not provided releases for records back to grade school. Elijah McClain attended Denver Public Schools later, then dropped out and received a G.E.D. Plaintiffs explain that there was a period of instability in Elijah's early life where he was home-schooled in elementary school, and probing into those areas is unnecessarily invasive of the family's privacy and not relevant to the issues in the case. Defendants insist that early childhood educational records may shed light on other medical issues Elijah McClain may have had and may be reflected, for example, in school nurse's notes.

**(4)** **Mental Health/Behavioral Records**. Defendants argue that mental health/behavioral records similarly are relevant because "cause of death" is at issue and the medical examiner determined that, while the cause of death was undetermined, Mr. McClain may have experienced an episode of "excited delirium" prior to his death, and the "relationship between excited delirium, mental health/behavioral illness, and certain controlled substances is well documented in the medical literature." *Id.* Plaintiffs insist that they are unaware of any mental health or psychotherapist treatment Mr. McClain may have received and no such records exist to Plaintiffs' knowledge.

**(5)** **Prescription Drug Monitoring Report**. Defendants seek access to the State's prescription drug monitoring report for Elijah McClain, which would have records of any use of Mr. McClain's use of prescription opioids. Plaintiffs point out that there was

no evidence of any opioids in Elijah McClain's system when he died, and this request is purely a fishing expedition and a further harassing attempt to sully the reputation and memory of a young Black man.

**(6)** **Employment Records:** Defense counsel want releases for employment records to be able to receive employment records directly from Massage Envy and Door Dash, the two locations where Elijah McClain is known to have worked. Plaintiffs say they have provided all the employment records that they have obtained from Mr. McClain's known employers. But Defendants are not satisfied that the records are complete, asserting that there are, among other things, no dates of employment listed in the records they have received.

**(7)** **Social Services Records**. Defendants argue they should be given a release entitling them to access to any social services records of Elijah McClain. Plaintiffs concede that Elijah McClain had, at times, a difficult childhood and the family was homeless for a period. But Plaintiffs argue that there is nothing about his difficult childhood or the family's struggles when Mr. McClain was young that would be relevant to either liability or damages. Plaintiffs suggest this request is purely for the purposes of oppressing, embarrassing, and humiliating the family and is not likely to lead to admissible evidence. For their part, Defendants argue that evidence of a difficult childhood, including homelessness, that may be reflected in social services records may be relevant to claimed damages and alleged loss of companionship claims.

**The Permissible Scope of Discovery— Rule 26(b)(1)**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery. The Rule permits discovery regarding any nonprivileged matter

that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In considering whether the discovery sought is proportional, the Court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

This definition of the permissible scope does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26, effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that parties and courts had incorrectly used the phrase to expand the scope of discovery to a point where the scope "might swallow any other limitation." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment).

Rather, the applicable test is whether the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case, though the information sought need not be admissible to be relevant to a claim or defense. *Id.*; Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." The Advisory Committee Notes to the 2015 Amendments make

clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1).

Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery does not fall within the scope of relevant evidence, or is of such marginal relevance that the potential harm of discovery is outweighed by the benefit. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citations omitted). But when the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial showing of relevance. *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

In addition to the limitations described above, the Court on motion or on its own, "must limit the frequency or extent of discovery otherwise allowed" if it determines that the discovery sought "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. Pro. 26(b)(2)(C)(i). And finally, the Court may, for good cause, issue an order forbidding or limiting disclosure or discovery, or specifying the terms under which discovery may occur "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Pro. 26(c).

**Findings and Order**

    **Proportionality concerns**

As noted, discovery may be limited as "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This is an important case. A young man has died, apparently

for no justifiable reason. *See* Jonathan Smith, Dr. Melissa Costello, Roberto Villasenor (Members of the Independent Review Panel), *Investigation Report and Recommendations, City of Aurora Colorado*, February 22, 2021 at 1 (report of independent investigation into the circumstances surrounding the death of Mr. McClain and, without attempting to assign legal responsibility for Mr. McClain's death, making recommendations intended to "lessen the chance of another tragedy like this one from happening again"). Plaintiffs are seeking more than $3.5 million in economic damages alone (*see* Scheduling Order, Dkt. #25 at 25), and will no doubt seek millions more in intangible damages, such as for loss of enjoyment of life, emotional distress, pain and suffering, loss of society and companionship, and for civil rights violations. *See, e.g.*, Dkt. #86-1, Ex. 1 at 34 (Answer of Estate of Elijah McClain to Interrogatory #16 which references a preliminary expert report concluding hedonic damages are valued at approximately $10 million in 2020). In addition, Plaintiffs likely will seek a substantial punitive damage award, potentially adding millions of dollars to any potential verdict.

Beyond the money involved, this case seeks redress for significant constitutional violations. The Advisory Committee Notes to the 2015 and 1983 amendments to Rule 26 make clear that the amount of money at stake is only one factor to be considered in the proportionality calculus:

> It is also important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors. The 1983 Committee Note recognized "the significance of the substantive issues, as measured in philosophic, social, or institutional terms. Thus, the rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved."

I also note that Plaintiffs have stated repeatedly in their papers and argument that Defendants "murdered" Elijah McClain. This has yet to be proven in court and Defendants are entitled to defend themselves against such a serious allegation. In short, the magnitude of the case, its national notoriety, the constitutional issues at stake, the catastrophic and tragic outcome of the underlying events for Mr. McClain and his family, the seriousness of the allegations of "murder" against the Defendants, and the millions of dollars being sought Plaintiffs, all place this case on the far end of the "proportionality" spectrum, suggesting that—all other things being equal—more, rather than less, discovery should be permitted. And while the instant discovery dispute addresses only Defendants' requests to Plaintiffs, this conclusion—that the scope of relevant discovery will be wider than in the run-of-the-mill case—also will apply to discovery requests directed at Defendants, if and when that time comes.

I will also note that my rulings on the present discovery requests relate only to discoverability, not to admissibility at trial. There may be issues that are potentially relevant to the case that the presiding trial judge would find raise the danger of unfair prejudice, confusion of the issues, or misleading the jury. At trial, the presiding judge may exclude such evidence where the probative value is substantially outweighed by one or more of those dangers. *See* Fed. R. Evid. 403. But this is discovery, not trial. And the magnitude of the case and the issues at stake militates in favor of permitting discovery of relevant information.

**Ordering Plaintiffs to Sign Releases**

Defendants' primary request is for an order requiring Plaintiffs to execute to necessary releases for medical, educational, and other records so that Defendants in

the first instance can obtain the records, without Plaintiffs' counsel acting as a gatekeeper or filter.

There is conflicting authority in this District as to whether a party should be ordered to sign a release so that records or papers in the possession of a third party can be obtained by the adverse party. For example, in *Neal v. Boulder*, 142 F.R.D. 325 (D. Colo. 1992), Magistrate Judge Borchers refused to order a medical malpractice plaintiff to sign medical releases, in part because the releases were written so broadly that they could have been deemed to authorize *ex parte* communication by the adverse party with the plaintiffs' medical providers.

In 2009, Magistrate Judge Hegarty recognized a split of authority, but noted that "even courts that compel authorizations from the plaintiff typically require the defendant to seek documents directly from the third party." *Morris v. City of Colo. Springs*, Civ. No. 09-cv-01506-PAB-MEH, 2009 WL 4927618, at *2 (D. Colo. 2009). In that case, Judge Hegarty ultimately denied the motion to compel production of medical releases, ruling that if production of records pursuant to a Rule 45 subpoena were refused, then Court would then entertain a motion to compel production of the requested medical records. *Id.*

In another 2009 decision, *Hixson v. United States*, Civ. No. 09-cv-00495-MSK-MEH, 2009 WL 1976016 (D. Colo. July 8, 2009), Judge Hegarty declined to order a medical malpractice plaintiff to sign a release, but spoke about the benefits of a release and urged the Plaintiff to sign voluntarily:

> The Court does not believe that ordering Plaintiff's counsel to be the gatekeeper for such information is efficient, because it will only result in distrust and will multiply motions practice in this case.

> As for Defendants' request to compel signed releases from the Plaintiff, the Court is not inclined in this instance to depart from prior rulings which prefer the issuance of subpoenas from such records. However, the Court requests that Plaintiff reconsider her position concerning executing the releases. This is the most efficient manner in which to address the collection of medical records, and in a case such as the present, limiting costs and increasing efficiency should be paramount in every party's approach to litigation (particularly if it promotes settlement, which, in the undersigned's opinion, executing such releases would do).

2009 WL 1976016, at *1-2.

More recently, Judge Hegarty ordered a pro se plaintiff in an employment case to execute medical, tax and unemployment information releases presented by the defendant. The plaintiff refused and the case ultimately was dismissed for failure to prosecute. Judge Blackburn adopted Judge Hegarty's order dismissing the case as a sanction for failure to execute the releases. *See Locke v. FedEx Freight, Inc.*, Civ. No. 12-cv-00708-REB-MEH, 2014 WL 4393703 (D. Colo. Sept. 4. 2014).

And, in 2019, in a Federal Tort Claims Act wrongful death case where an army veteran's estate was suing the VA for medical negligence, Magistrate Judge Crews found the deceased's medical records to be relevant because the deceased's cause of death was at issue. *See Thomas v. United States*, Civ. No. 19-cv-00877-LTB-SKC, 2019 WL 2410414 (D. Colo. June 7, 2019). On the issue of requiring releases for the deceased's medical records, Judge Crews cited both the language from Judge Hegarty's *Hixson* opinion and Rule 1's "affirmative obligation to administer the rules of civil procedure 'to secure the just, speedy, and inexpensive determination of every action or proceeding'" in requiring the plaintiff to execute appropriate releases for the deceased's medical records. 2019 WL 2410414, at *3. Judge Crews specifically found that ordering the plaintiff to execute appropriate releases was the best way to accomplish the speedy and inexpensive production of the relevant documents. *Id.* In

13

addition, Judge Crews found that the defendants should be entitled to obtain the records from the medical providers themselves, without plaintiff's counsel acting as a gatekeeper for the medical information. *Id.*

Based on the cases cited above, I do find that, under the circumstances of this case, and the need to promptly and timely get some of the requested information into the hands of defense counsel and defense counsel's experts in advance of the scheduled June mediation, it is appropriate to order Plaintiffs to execute releases for certain records as described with more specificity below.

**Interrogatory #1:** *Please identify every a) physical, b) mental, c) cognitive, d) behavioral, e) developmental, f) learning disability g) special needs condition that Elijah McClain has been diagnosed with formally or informally; or have suffered from; have been consulted about with health care provider, counselor, therapist, treatment provider or ever received treatment for since birth until the date of this incident. If a condition is identified, please identify each and every Health Care Provider, counselor, therapist, treatment provider for each condition, date/time of diagnosis and treatment received.*

**Ruling:** The objection is **OVERRULED**. Because Elijah McClain's cause of death is disputed and because Plaintiffs are accusing Defendants of "murdering" Elijah McClain, I find that all of Mr. McClain's medical and educational records are relevant and should be produced. I recognize that Plaintiffs have produced medical records from 2008 and have produced educational records from the Denver Public Schools while not producing records from elementary school. I accept Defendants' argument that certain conditions are diagnosed in infancy and may be better described in medical records from when Elijah McClain was young. Based on Defendants' expert affidavit, this material may contain information regarding Mr. McClain's cause of death. Plaintiffs indicate that they have no knowledge of Elijah McClain ever visiting or being treated by a therapist or psychotherapist, so therapist or psychotherapist records should not be an

14

issue. To facilitate the prompt location and production of medical records, I order that within five business days, Plaintiffs shall execute appropriate medical releases for medical records from medical providers of Elijah McClain, and also execute appropriate releases for educational records for Denver Pubic Schools and the Aurora Public Schools.

**Interrogatory #10**: *Please identify a) the name and ADDRESS of each school or other academic or vocational institution (including alternative school, trade school, or GED program) Elijah McClain attended beginning with grade school, b) the dates Elijah McClain attended; c) the highest grade level Elijah McClain have completed; and d) the degrees Elijah McClain received.*

**Ruling:** The objection is **OVERRULED**. *See* ruling on Interrogatory #1. Educational records may contain some medical information which may be relevant. Educational records may also be relevant to lost future income estimates and therefore could be relevant to a damages claim. To facilitate the prompt location and production of such records, I order that within five business days, Plaintiffs shall execute appropriate releases for educational records for Denver Pubic Schools and the Aurora Public Schools, which are the school districts where Elijah McClain is known to have attended school.

**Interrogatory #11**: *Please identify the name, ADDRESS, telephone number, dates of employment, job title, and nature of work for each employer or self-employment of Elijah McClain between 2009 and the date of this incident.*

**Ruling:** Plaintiffs have responded to the interrogatory by identifying known employers and have produced the documents that Plaintiffs have obtained from those employers. However, Defendants question the sufficiency of the document production from these employers. Employment information is relevant to lost future income. To facilitate the prompt and complete location and production of such records, I order that

15

within five business days, Plaintiffs shall execute appropriate releases for any and all employment records for Elijah McClain.

**Request for Production #1**: *Please produce a complete copy of all Elijah McClain's records and cases with the Colorado Department of Human Services, including records of the Division of Child Welfare and the Division of Youth Services, related to all benefits and assistance he received including medical benefits, welfare adult/child services, child welfare services, social adult/child services, adult financial benefits.*

**Ruling**: Plaintiffs have indicated they have not sought these records and would not do so. While records from the Colorado Department of Human Services (including records from the Division of Child Welfare and Division of Youth Services) may potentially be relevant to some aspects of the case, including claims for loss of companionship by Elijah McClain's parents, and potentially for impeachment if Plaintiffs' witnesses attempt to paint too glowing a picture of Elijah McClain's childhood, these records likely also contain highly private and intimate information, not directly relevant to Mr. McClain's circumstances, and their disclosure would be highly intrusive or embarrassing for family members. Also, the issue of the statutory confidentiality of any social services records under Colorado law has not been briefed or addressed by the Parties. *See* Colo. Rev. Stat. §§ 19-1-307(1)(a) ("Except as otherwise provided in this section and section 19-1-303, reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports shall be confidential and shall not be public information."); 19-1-307(1)(b) ("Disclosure of the name and address of the child and family and other identifying information involved in such reports shall be permitted only when authorized by a court for good cause."). At present, this request is little more than a fishing expedition. Without further justification for social services records and a showing of

good cause, Plaintiffs will not be required to sign any release for social services or welfare records. The objection is **SUSTAINED** without prejudice to subject to a clearer showing of good cause later in the case. I will not order Plaintiffs to authorize release of social services records. If Defendants issue a subpoena for this information directly to the third party in possession of the records, then the issue can be better addressed in the context of that subpoena. I also believe that if this this highly sensitive and statutorily protected information is to be produced, it should be produced first to Plaintiffs and then to the Court for *in camera* review in the first instance to determine whether any potential relevance outweighs the "annoyance, embarrassment" and "oppression" likely to result from such intrusive discovery. Therefore, if Defendants do elect to issue a subpoena for production of such material, responsive material should NOT be returned to the Defendants. Instead, it should be produced first to Plaintiffs and the Court for in camera inspection.

**Request for Production #2:** *Please produce a complete copy of Elijah McClain's social security file with the social security administration (as part of the request please execute the attached Release for Social Security Records).*

**Ruling**: Plaintiffs represent that they have subpoenaed Elijah McClain's Social Security records from the Social Security Administration and will produce to Defendants whatever records are obtained. Therefore, the dispute on this issue is **MOOT**.

**Request for Production #3**: *Please produce any and all medical records for Elijah McClain from birth until the date of this incident, including every health care provider listed in Interrogatory 6, including medical reports, x-rays, ultrasound reports, correspondence, office notes, narrative reports, test results and progress notes from any and all health providers and facilities who treated and/or examined Elijah McClain for any condition whatsoever.*

**Ruling**: The objection is **OVERRULED**. Consistent with my ruling on Interrogatory #1 above, I find that because Elijah McClain's cause of death is disputed,

Defendants are entitled to access all medical records, going back to birth, to the extent they can be located. To facilitate the prompt location and production of medical records, I order that within five business days, Plaintiffs shall execute appropriate medical releases for medical records from medical providers of Elijah McClain.

**Request for Production #5**. *Please produce employment records for Elijah McClain, including any documents with respect to attendance, performance, payroll, leave, accommodations, admonitions from any employer who employed Elijah McClain between 2009 and 2019.*

**Ruling:** Consistent with my ruling on Interrogatory #11 above, I find that Elijah McClain's employment records are relevant. To facilitate the prompt and complete location and production of such records, I order that within five business days, Plaintiffs shall execute appropriate releases for any and all employment records for Elijah McClain. The objection is **OVERRULED**.

**Request for Production #6**. *Please produce any and all school records for each school or other academic or vocational institution (including alternative school, trade school, or GED program) Elijah McClain attended beginning with grade school, b) the dates Elijah McClain attended; c) the highest grade level Elijah McClain have completed; and d) the degrees Elijah McClain received. If Elijah McClain obtained any licenses pursuant to his completion of any educational/academic/trade programs, please produce a copy of each license obtained.*

**Ruling:** Consistent with my ruling on Interrogatory #10, above, I find that Defendants are entitled to all of Elijah McClain's school records. The objection is **OVERRULED**. To facilitate the prompt location and production of such records, I order that within five business days, Plaintiffs shall execute appropriate releases for educational records for Denver Pubic Schools and the Aurora Public Schools, which are the school districts where Elijah McClain is known to have attended school.

**Request for Production #9**. *Please produce a copy of Elijah McClain's Colorado Prescription Drug Monitoring Program report ("CPDMP report") listing all of prescription medications he has received.*

**Ruling**: There was no evidence presented that Elijah McClain used or was prescribed opiates or opioids, and Plaintiff's counsel represents that no opioids were found in his bloodstream at the time of his death. I recognize that this is arguably "medical" information, but presumably, if Elijah McClean were prescribed opioids, such prescription information will be included his medical records. At this point, Defendants' request appears to be no more than a fishing expedition with no basis in fact. Therefore, Plaintiffs' objection is **SUSTAINED** without prejudice to seeking this information at a later date if there is a legitimate evidentiary basis for seeking the material.

**Request for Production #10**. *Please produce a signed and notarized, if applicable, original of each of the attached authorizations to obtain Elijah McClain's medical, employment and educational records. The list includes the following:*

   a) *Authorization to Release Medical Records for all treatment providers referenced in your Response to Interrogatory No. 6.* **Objection OVERRULED—see above.**

   b) *Authorization to Release Employment Records referenced in your Response to Interrogatory No. 11.* **Objection OVERRULED—see above.**

   c) *Authorization to Release Educational Records referenced in your Response to Interrogatory No. 10.* **Objection OVERRULED—see above.**

   d) *Authorization to Release all records with Colorado Department of Human Services.* **Objection SUSTAINED—see above.**

   e) *Authorization to Release all records with Colorado Division of Professions and Occupations.* **Objection SUSTAINED. I see no evidentiary basis for any release for these documents or records. This appears to be a fishing expedition without any evidentiary basis.**

   f) *Authorization to release Elijah McClain's CPDMP report listing all of the prescriptions he has received.* **Objection SUSTAINED—see above.**

Date: May 4, 2021

N. Reid Neureiter
United States Magistrate Judge