1

1          IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     Case No. 20-cv-02389-DDD-NRN
3    _____

4    ESTATE OF ELIJAH JAVON McCLAIN, by and through its personal
     representatives Sheneen McClain and Lawayne Mosley; SHENEEN
5    McCLAIN, individually; LAWAYNE MOSLEY, individually,

6         Plaintiffs,

7    vs.

8    CITY OF AURORA, COLORADO, a municipality, et al.,

9         Defendants.
     _____
10

11          Proceedings before N. REID NEUREITER, United States

12   Magistrate Judge, United States District Court for the

13   District of Colorado, commencing at 2:00 p.m., October 8,

14   2021, in the United States Courthouse, Denver, Colorado.

15   _____

16          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18   _____

19                    APPEARANCES

20          DAVID LANE, MARI ANNE NEWMAN, MICHAEL FAIRHURST,
     LOREN BROWN, QUSAIR MOHAMEDBHAI, DANIEL WARTELL, DAVID
21   STRUTHERS, AARON EVANS and PATRICK TOOLEY, Attorneys at Law,
     appearing for the Plaintiffs.
22
            PETER MORALES, JONATHAN ABRAMSON, STEPHEN HENSEN,
23   and MICHAEL LOWE, Attorneys at Law, appearing for the
     Defendants.
24   _____

25                TELEPHONIC STATUS CONFERENCE

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3     proceedings are herein transcribed, pursuant to order of
 4     counsel.)
 5              THE COURT:  -- vs. the City and County of Aurora,
 6     Case Number 20-cv-02389.  I recognize that this is a case
 7     that may have some public interest.  We have -- maybe members
 8     of the public and also members of the press are on the line.
 9              There are two things I would like to remind you of:
10     One, is that any tape-recording of this proceeding is against
11     the rules of court and may subject somebody to a contempt of
12     court proceedings if we find out that it has been
13     tape-recorded.  On the other hand, if somebody does want a
14     copy of the transcript, it's available.  You can also order a
15     CD of the proceedings to get -- to find out what was actually
16     said, if somebody had any question.
17              The other thing is, if you're not a lawyer who is
18     speaking, please -- and even if you are a lawyer who intends
19     to speak, please mute your phones.  I know folks are calling
20     in from home, we've got dogs in the background sometimes, and
21     with so many people on the line we don't want to have
22     disruptions.  So if you could do that, I appreciate it.
23              So with that, I will take appearances for the
24     plaintiff.  And if we could have one counsel introduce
25     everybody else from your office, that would make things a
```

3

1     little easier; but first, for the Estate of Elijah McClain.

2             MR. STRUTHERS:  Good day, Your Honor.  This is

3     David Struthers from the law firm of Dill Dill Carr

4     Stonbraker & Hutchings.  We entered our appearance this

5     morning.  My partner Patrick Tooley is involved in another

6     interstate matter and expresses his regrets that he's not

7     here.  We represent LaWayne Mosley individually.

8             THE COURT:  Okay.  I asked for the Estate of Elijah

9     McClain, though.

10            MR. EVANS:  Your Honor, Aaron Evans, Registration

11    Number 27270.  I'm an attorney for co-personal representative

12    the Estate of Elijah McClain, LaWayne Mosley.

13            THE COURT:  Okay.

14            MR. MOHAMEDBHAI:  Good afternoon, Your Honor.

15    Qusair Mohamedbhai.  I'm representing Sheneen McClain and

16    co-representing the Estate of Elijah McClain.

17            THE COURT:  Okay.  Other counsel for the

18    plaintiffs.

19            MS. NEWMAN:  Also for LaWayne Mosley, this is Mari

20    Newman, along with David Lane and Michael Fairhurst, from

21    Killmer Lane & Newman.

22            MR. WARTELL:  Good afternoon, Your Honor.  This is

23    Dan Wartell.  I am appearing with my partner, Loren Brown,

24    and we represent Sheneen McClain in her individual capacity.

25            THE COURT:  Okay.  Anybody else for the plaintiffs?

1    Okay, hearing none, we'll move on.

2            Mr. Lane, are you there?  Are you involved in this

3    or are you just listening in?

4            MR. LANE:  Basically just listening in, Your Honor,

5    but I am -- you know, I'm with Killmer Lane Newman.  I'm on

6    the case with Mari Newman and Michael Fairhurst.

7            THE COURT:  City of Aurora.

8            MR. MORALES:  Good afternoon, Your Honor.  Peter

9    Ruben Morales with the City of Aurora representing the City

10   and all of the individual defendants, save Dr. Eric Hill, in

11   their official capacities.  Along with me on the call are

12   Jonathan Abramson, who represents all the individual

13   officers; Michael Lowe, who represents all the individual

14   firefighters; and Steve Hensen, who represents Dr. Eric Hill.

15           THE COURT:  Okay.  That covers it then for the

16   defendants.  Am I right?

17           MR. MORALES:  Yes, Your Honor.  And if I might, I

18   know it might be a little bit unusual, but I think that

19   because I've been in daily contact with literally all the

20   plaintiffs for the last three weeks, I might be able to bring

21   this thing to a fine point so you don't have to waste your

22   time figuring out what's going on here.

23           THE COURT:  Well, for the record, I just want to

24   say I think the last directive was we were going to have the

25   status conference, and if there wasn't an indication that

1    there might be a nonlitigation resolution, that we would

2    probably have to set a date for a scheduling conference.  So

3    that's the assumption I'm working on.  So why don't you

4    educate me as to where we are and how the parties intend to

5    proceed.

6              MR. MORALES:  Thank you, Your Honor.  Again, Peter

7    Morales.

8              So to bring you up to date, this matter was settled

9    and acknowledged as such in writing on July 22, 2021.  The

10   City then sent a draft settlement agreement to the plaintiffs

11   on August 8, 2021.  The City was expecting to receive back a

12   few minor changes so the matter could be wrapped up quickly

13   avoiding any delay.  Instead, despite agreement on all

14   material terms and to the City's great surprise and

15   consternation, we have yet to receive a settlement agreement

16   signed by both plaintiffs even as -- even as of today's date.

17             It is our understanding that this delay involves a

18   financial dispute among the plaintiffs regarding the

19   allocation of the settlement funds.  The City is not privy to

20   every detail of the dispute, but has sought over the last few

21   weeks, through the nearly daily consultations I referenced a

22   moment ago, to broker a resolution in a fight that is not

23   ours.

24             The City has had no success in this regard and we

25   do defer to counsel for the plaintiffs to apprize the Court

1   regarding the details of the dispute and the delay in

2   finalizing the settlement.

3          We are here -- that is, the City is here today --

4   seeking the Court's guidance and assistance.  One suggestion

5   later, which we would like to return to after you hear the

6   plaintiffs and their counsel so you can fully understand the

7   dispute, involves the dismissal of the individual defendants

8   and Dr. Hill, execution of the release and paying the

9   settlement amount into the Court Registry during the

10  resolution of the dispute among the plaintiffs.

11          That's all I have for now, Your Honor.  Thank you.

12          THE COURT:  And just a couple questions.  When you

13  said it was reduced, the material terms were reduced to

14  writing, was that signed by all the plaintiff parties or

15  counsel for all the parties?

16          MR. MORALES:  No, Your Honor.  What happened was

17  that, as I mentioned, on August 8, 2021, I actually had

18  drafted the settlement agreement.  I sent it out to counsel

19  for the plaintiffs at that time, Mr. Mohamedbhai and

20  Ms. Newman, and one portion was left open and it was yellowed

21  in and it was not a material term, and that was who the payee

22  was to be.  We got back an e-mail from -- well, actually I

23  had talked with both Mr. Mohamedbhai and Ms. Newman and I

24  learned that the payee was to be the estate and that the

25  settlement funds were to be deposited in the account or, you

1   know, accounts that the plaintiffs have -- plaintiffs'

2   counsel have, Qusair Mohamedbhai.

3              And after that, essentially the City waited and

4   waited and waited until, like I say, a few weeks ago, we

5   finally started asking questions why we're not getting this

6   document back.  And as you can tell now, Mr. Tooley and his

7   firm are involved and Mr. Wartell and his firm are involved,

8   and it's our understanding this has to do with the

9   allocation, which has nothing to do with us.

10             We're simply -- and that's why I mentioned we're

11  seeking the Court's guidance and assistance.  We're simply,

12  frankly, trying to figure out how we could get -- how we can

13  get these funds to who they belong to and get Dr. Hill and

14  all the individual Aurora defendants released and finally the

15  City.

16             THE COURT:  Okay.  Let's hear -- let's hear from

17  the Estate of Elijah McClain.

18             MR. EVANS:  Aaron Evans, registration -- obviously,

19  as I spoke earlier, I only represent the co-PR in this case,

20  Your Honor, and Mr. Mosley.  And our position, as was drafted

21  in the settlement agreement, is the funds were to be payable

22  to the estate.

23             Given there is now a dispute as to whether or not

24  it should be paid to the individuals, that's why they have

25  individual capacity, which have different obligations versus

1    the estate.  That's the ongoing dispute now, as to any

2    individual rights versus estate rights.

3          THE COURT:  Okay.  Let me hear from the

4    representatives of Sheneen McClain.

5          MR. WARTELL:  Good afternoon, Your Honor.  This is

6    Dan Wartell.

7          It's our position that the parties are very close

8    to finalizing the written settlement agreement.  The dispute

9    boils down to one or two sentences that were in the draft

10    that were circulated by Mr. Morales.  And from our

11    perspective, the issue is certain terms were agreed to at

12    mediation.  Mr. Morales took it upon himself at -- you know,

13    at everyone's agreement, to take a stab at memorializing

14    those terms in a written settlement agreement, as is often

15    the case, and there was a few sentences in that draft that in

16    Ms. McClain's view created some ambiguity.  And so the issue

17    has been trying to clarify the language of the written

18    settlement agreement so that it conforms to what Ms. McClain

19    understood the agreement to be.

20          And so procedurally --

21          THE COURT:  Let me ask a question.  Did you ever

22    send anything back to the City of Aurora's lawyers?

23          MR. WARTELL:  Yes, Your Honor.  So for the last

24    month what we have been trying to do is circulate various

25    iterations that tries to resolve the various concerns that

1   the parties have, and so I think we -- what we've done is

2   narrowed down the language that remains in dispute to a few

3   sentences, all concerning kind of the scope of the releases

4   and the scope of the agreement.  And it's my view that once

5   we resolve those issues, then the settlement would be

6   formalized and finalized.

7           Just one other thing to put on Your Honor's

8   attention is that we have been -- Ms. McClain has been

9   actively conferring for the last month or so about a motion

10  for allocation that she anticipates filing with this Court.

11  And the basis for that is, under the wrongful death statute,

12  there is a specific statutory allocation procedure that is

13  contemplated.

14          The reason why Ms. McClain has not filed that

15  motion for allocation yet is because it is our view that

16  there is still some questions about exactly what the written

17  form of the agreement will take and that it would be

18  premature for her to file the motion for allocation prior to

19  finalizing the settlement agreement upon which the motion for

20  allocation would be based.

21          So that's a general (indiscernible) --

22          THE COURT:  (Indiscernible) --

23          MR. WARTELL:  -- from our perspective.  Yes, Your

24  Honor.

25          THE COURT:  When did the mediation occur where

1  the -- well, two questions:  First, is there any dispute as

2  to the amount of moneys that the City of Aurora has to pay?

3           MR. WARTELL:  Your Honor, in our perspective --

4  Your Honor, the dispute is, we believe that the material

5  terms of settlement between the plaintiffs and the defendants

6  are not in dispute.  The question is whether there are terms

7  -- additional terms that either were or were not intended to

8  be part of the settlement agreement that the plaintiffs are

9  arguing about.  And so it's a typical situation where you've

10  got a written agreement in principle from a mediation with

11  the understanding that a more formal document will be created

12  later, and there is now some dispute between the plaintiffs

13  about the nuance of that language.

14           THE COURT:  And when you say that there was a

15  written agreement in principle, I mean, when I do a mediation

16  and I have a written -- and, of course, there is never formal

17  document at the end, I always print out the material terms

18  and have everybody sign it, including the mediator.  Did that

19  happen in this case?  Was there a signature by anybody

20  involved of the material terms of the agreement in principle?

21           MR. WARTELL:  Your Honor, again, just for the

22  record, this is Dan Wartell.

23           I was not involved in the first three mediations,

24  but my understanding, to answer your question, is that there

25  were actually mediations, none of which produced a written

1   Memorandum of Settlement that the Court just described often

2   happens.  Instead, there were after-the-fact mediation

3   communications that brought the settlement to a conclusion

4   and there are a few e-mails that memorialized or discussed

5   that post-mediation communication.

6           But to answer your question, no, there is no

7   written Memorandum of Settlement that would, you know, comply

8   with the dispute resolution acts or similar issues.

9           THE COURT:  Okay.  The last question I have, and

10  you only need to answer it yes or no, is, do you agree that

11  the only dispute is amongst the plaintiffs and nobody is in

12  dispute with City of Aurora as to the amount of money that

13  City of Aurora should pay?

14          MR. WARTELL:  Yes.

15          THE COURT:  Okay, all right.  Can I hear from the

16  representative of Ms. Sheneen McClain?

17          UNIDENTIFIED SPEAKER:  That was Mr. Wartell, Your

18  Honor.  I think now Mr. Mosley's counsel.

19          THE COURT:  Yeah, Mr. Mosley.  I get a little

20  confused with all the new counsel in the case.  So go ahead,

21  Mr. Mosley's counsel.  Is there someone who wants to speak

22  for Mr. Mosley?

23          MR. STRUTHERS:  Good day, Your Honor, David

24  Struthers speaking.  Sorry, my phone was on mute.  I'm over

25  at Dill Dill and Carr and speak for Mr. Mosley in his

1    individual capacity.

2            I think that much that has been said here is

3    exactly accurate and that there is a great deal of agreement

4    about what transpired here.  I should note in passing that

5    neither Mr. Wartell, currently representing Ms. Sheneen

6    McClain, nor myself or my partner, Pat Tooley, were at the

7    mediations which took place, as I understand it, in July over

8    two or three formal sessions and 15 to 25 hours of sessions

9    and phone calls, at which agreement was reached following

10   which, as the city attorney has already relayed, the city

11   attorney sent out a sample draft.

12           And I think that we do have a signed agreement.

13   That is our position today that we do have a signed

14   agreement.  Mr. Wartell brought to our attention some of the

15   language he would like to have included in the agreement and

16   that consisted of one particular sentence and one particular

17   part of the settlement agreement drafted by the City.

18           And so on September 1 both his clients and our

19   clients signed the settlement agreement drafted by the City

20   and including Mr. Wartell's sentence that he wanted to have

21   added.  Both of our clients signed it.

22           Then there was a good bit of time and there was

23   some discussions and wrangling between our office and

24   Mr. Wartell's office, but again, what we arrived at, make

25   this come full circle, was on September 27, Mr. Wartell

1   submitted the same document that we had all signed with the

2   same sentence that he wanted to include, and on September 27

3   he said that that would do, that would do.

4           So from our standpoint -- that is, representing

5   Mr. Mosley individually -- we have a settlement agreement

6   signed by both of the parties and confirmed twice by

7   Mr. Wartell.

8           THE COURT:  Okay.  Is there an agreement as to how

9   the money is going to be split up between the individual

10  plaintiffs and the estate?

11          MR. STRUTHERS:  Your Honor, that is certainly the

12  subject of discussion.  In fact, the parties spent a full

13  Saturday with Judge Bill Meyer at JAG last Saturday

14  attempting to reach an agreement about the allocation.  We

15  did not reach agreement about the allocation.  There may be

16  some merit and additional consultation or involvement with

17  Judge Meyer at JAG, but we have not reached an agreement

18  about the allocation.

19          THE COURT:  Okay.  Who else has interest in this

20  money besides Sheneen McClain and LaWayne Mosley?  Anybody?

21          MR. STRUTHERS:  David Struthers speaking again,

22  Your Honor, and I don't think there is anyone -- anyone else

23  except the two.  Mr. Wartell?

24          THE COURT:  And presumably the law firms; is that

25  right?

1          MR. STRUTHERS:  I'm sorry?

2          THE COURT:  Yeah, the law firms probably have liens

3   and contingency fee agreements, but in terms of the direct

4   payees, it's the nonlawyers who have an interest, Sheneen

5   McClain and LaWayne Mosley; is that right?

6          MR. STRUTHERS:  David Struthers, Your Honor, and

7   that is correct.

8          THE COURT:  Okay.

9          MR. WARTELL:  Yeah, so this is Dan Wartell.  Just

10  to confirm, my understanding is -- I've done some inquiry

11  with counsel in the probate matter.  My understanding is that

12  there are not creditors, other than some medical liens that

13  have already been resolved, and that other than the attorneys

14  who may have an interest in the proceeds of settlement, that

15  there are no other beneficiaries in the estate either.  So

16  just to confirm, I do believe that, other than the lawyers,

17  the only two interested parties financially would be

18  Mr. Mosley and Ms. McClain.

19         THE COURT:  Okay.  So Mr. McClain -- Ms. McClain,

20  Mr. Mosley have a dispute about how the proceeds are going to

21  be split up, but nobody is saying the City of Aurora should

22  pay more money, right?

23         MR. WARTELL:  Agreed, Your Honor.

24         MR. STRUTHERS:  David Struthers, Your Honor, and

25  that is absolutely correct.

1            THE COURT:  Okay, all right.

2            MR. WARTELL:  And this is Dan Wartell.  That is

3   correct from Ms. McClain's perspective as well.

4            THE COURT:  I think I've gotten the picture.  Let

5   me just ask Ms. Newman and Mr. Mohamedbhai, who were lawyers

6   involved in this from -- I guess, Ms. Newman from the very

7   beginning and then Mr. Mohamedbhai more recently -- if you

8   have anything to add to this discussion?

9            MS. NEWMAN:  This is Ms. Newman.  I don't have

10  anything to add.

11            THE COURT:  Do you have any view as to whether

12  enforceable agreement as to all material terms was reached at

13  the mediation?

14            MS. NEWMAN:  We agree -- we defer to Mr. Mosley's

15  counsel on that issue, which is Mr. Struthers, but I -- he

16  hasn't said anything inaccurate.

17            THE COURT:  Okay.  And Mr. Mohamedbhai?

18            MR. MOHAMEDBHAI:  I would say we're pretty close,

19  Your Honor.

20            THE COURT:  Okay.

21            MR. MOHAMEDBHAI:  I think there were a couple of

22  material terms that were floating around, but to get to brass

23  tax, we're very close.

24            THE COURT:  All right.  So the City wants to put

25  the money into the Registry of the Court and let you guys

1   fight it out.  It seems to me -- so I'll hear first for --

2   counsel for the City was sort of asking for my -- the Court's

3   assistance somehow.

4           What does counsel for individually Ms. Sheneen

5   McClain suggest we do?  How do we proceed?

6           MR. WARTELL:  Thank you, Your Honor, this is Dan

7   Wartell.

8           We have consulted with counsel for Mr. Mosley for

9   this past month while we've been trying to hammer out the

10  language of the settlement agreement.  It is my understanding

11  that we have reached an agreement that in order to safeguard

12  the settlement funds and avoid any disputes like that, that

13  my law firm would create a trust account that would be

14  administered by the managing partner of my firm, Loren Brown,

15  with the understanding that no money would be released from

16  that trust account absent either written agreement of all

17  parties or an order of the Court.

18          I don't know whether there are pros or cons to

19  instead depositing that money into the Court Registry.  It's

20  our position that so long as the money is segregated and

21  safeguarded until any disputes concerning allocation or

22  attorneys' fees or anything else are resolved, that's our big

23  concern.  So the vehicle by which that is accomplished we

24  don't take a strong position on either way, but we do have a

25  trust account that, with the consultation for Mr. Mosley's

1   counsel, was created for the specific purpose of holding the

2   settlement money pending resolution.

3              So that's an option, or the Court Registry is an

4   option, and Ms. McClain would not object to either one.

5              THE COURT:  One of the -- I assume the City, and I

6   don't presume to speak for the City, but I'm hypothesizing

7   that the City, however, doesn't want to pay any money to

8   anybody, whether it's the Registry of the Court or your trust

9   account, absent release of all claims by all potential

10  plaintiffs, whether it's Ms. McClain individually and

11  Mr. Mosley individually, and a release of all defendants

12  identified or hypothetical going forward.

13             And so is there any dispute as to the scope of the

14  releases?  I heard some mention of that early on, because if

15  that's an issue --

16             MR. WARTELL:  Yes, Your Honor.

17             THE COURT:  -- the City won't be paying until

18  that's revolved.

19             MR. WARTELL:  Yes, Your Honor.  This is Dan Wartell

20  again.  Yes, without getting into too much detail, but when I

21  referenced an issue with the scope of releases, an issue was

22  the breadth of the language that is used.

23             THE COURT:  Hold on one second -- hold on one

24  second.  Somebody is typing and their phone is not on mute.

25  Don't do that.  Put your phone on mute unless you're

1   speaking, please.  Thank you, we can't hear.  Go ahead.

2          MR. WARTELL:  Thank you, Your Honor.  With

3   regard -- would you just ask the -- I just want to make sure

4   I answer your specific question, Your Honor.  It has to do

5   with the scope of release.

6          From our perspective, the only issue was that the

7   way in which Mr. Morales, again, through no fault of his own,

8   drafted the original version of the written settlement

9   agreement.  From my perspective, as Ms. McClain's personal

10  counsel, there was a potential ambiguity about whether that

11  scope of release could be read to include releases between

12  the plaintiffs, and that is the only ambiguity that we have

13  been attempting to resolve.

14         There is no ambiguity or issue about the full scope

15  and full release of all defendants involved as consideration

16  for the settlement.

17         THE COURT:  Okay, all right.

18         MR. STRUTHERS:  Your Honor, David Struthers here.

19  May I speak?

20         THE COURT:  Yes.

21         MR. STRUTHERS:  It's our view, as we stated at the

22  outset, that we have a settlement agreement, and so long as

23  the moneys are disbursed precisely consistent with the

24  settlement agreement signed to and agreed upon by both

25  parties on September 1 and signed to and agreed to, again by

1    Mr. Wartell, on September 27, then there are no issues.

2          Indeed it is true that our firm and Mr. Wartell's

3    firm have agreed upon the matter in which the funds could be

4    kept as described.  I don't think there has been any

5    inaccuracy in that description, but so long as the precise

6    terms, there are no other ambiguities.  Those have been

7    corrected by the inclusion of Mr. Wartell's requested

8    sentence, that I believe all of the attorneys representing

9    parties of co-PRs and that the City has approved.

10          So as long as the precise terms as signed on

11   September 1 and confirmed on September 27 are abided by, then

12   the monetary deposits are no issue.

13          THE COURT:  Okay.  And what's -- so how -- how

14   would you like to proceed?  What do you think makes the most

15   sense?

16          MR. MORALES:  Your Honor, this is Peter Morales

17   with the City.  May I -- you know, I asked if we could return

18   to this, and we do have an idea, which you should know that

19   we spent -- all of us on this call right now spent about an

20   hour and a half, almost two hours yesterday sort of prepping

21   for this so that we could make it as concise as possible for

22   your -- for your hearing.

23          At that time I indicated to everybody on the call

24   that, you know, we were essentially going to be asking for

25   the Court's intervention, but we're interested in our

1   basically three steps; that is, the dismissal of Dr. Hill and

2   all the individual Aurora defendants, the release of the City

3   and then the money to go wherever this Court decides that it

4   should go.  I think yesterday I heard, or I didn't hear too

5   much opposition to the fact that this Court by reason of the

6   lawsuit has jurisdiction over this matter.

7           So to just elucidate the steps:  One would be the

8   dismissal of Defendant Hill and all the individual Aurora

9   defendants, including the police officers and the

10  firefighters; the signing of the settlement agreement and

11  release, the deposit of the settlement funds into the Court

12  Registry; finally, the stipulated dismissal of the City.  And

13  then, as you I think put it so aptly a while ago, the

14  decision about the allocation of the settlement funds as

15  between the plaintiffs by this Court and then the release of

16  those funds.  And by that time, of course, that's not the

17  City's concern.

18          We totally agree with most of the statements about

19  the fact that there has been no qualms or queries about

20  increased settlement funds.  That's always been established,

21  as I said, all the way since July 22 of 2021.  This situation

22  just arose subsequent to all of that.

23          THE COURT:  Okay.  Well, it sounds like your three

24  steps the plaintiffs are in agreement with.  Correct me if

25  I'm wrong, but they're okay with getting the money into

1    someplace, most likely the Registry of the Court, too, and

2    then dismissing all the defendants, both the City and

3    everybody else with the Court retaining jurisdiction over the

4    distribution of the funds and the fight between the

5    plaintiffs about that.

6              So I'll ask plaintiffs' counsel if you disagree

7    with that sort of -- those steps?

8              MR. STRUTHERS:  Good day, Your Honor, David

9    Struthers.

10             MR. WARTELL:  Go ahead, David.

11             MR. STRUTHERS:  Thank you.  That was Mr. Wartell,

12   thank you.

13             I think Mr. Morales has laid out the appropriate

14   steps to get us -- to push this all along and to get this

15   thing resolved.  Our view is that we have a settlement

16   agreement, that it should be abided by the settlement

17   agreement -- if the funds are deposited with the Registry of

18   the Court and that's consistent with the settlement

19   agreement, that's good with us.

20             Later on, Your Honor, we will -- there is an issue

21   about this Court retaining jurisdiction of the allocation

22   issues or whether or not that should be a matter taken up in

23   the probate court of the state where another piece of

24   litigation has been filed, but that's for a later

25   determination.

1          THE COURT:  So just sometimes this happens with

2    this phone system.  There is like a five-second break where

3    we didn't hear what you said.  And you said there is an issue

4    with the jurisdiction of the Court deciding the allocation

5    and whether that should -- and I assume you said whether that

6    should be resolved by state court; is that correct?

7          MR. STRUTHERS:  This is David Struthers speaking,

8    Your Honor, and that is correct.

9          THE COURT:  Okay.  All right, let me hear from

10   counsel -- other (indiscernible) counsel.

11         MR. WARTELL:  Thank you, Your Honor.  This is Dan

12   Wartell on behalf of Sheneen McClain.

13         To try to answer your question, I think the only

14   disagreement or issue that we take with Mr. Morales's set of

15   three steps that could happen is all of it is predicated on

16   the existence of a settlement agreement.  And Mr. Struthers

17   has referenced multiple times the existence of a,

18   quote/unquote, settlement agreement.  And suffice it to say,

19   we do not agree with him that there is a settlement agreement

20   other than a draft that has been circulated and whatever

21   terms were agreed to at mediation or after mediation between

22   the parties.

23         So the problem with beginning the steps of

24   dismissing individual defendants or doing other things that

25   are all predicated on the existence of a settlement agreement

1    is the lingering question of whether indeed there is a

2    settlement agreement, and the --

3              THE COURT:  But --

4              MR. WARTELL:  Yes, Your Honor.

5              THE COURT:  You know, I think if you -- the way I

6    was anticipating this thing done is, first, I can't do

7    anything.  It's Judge Domenico's case.  So what I think you

8    need to do is get together, and whether there is a settlement

9    agreement that you think is enforceable today or not, it

10   sounds like your client agreed that the City of Aurora in

11   exchange for dismissing all the claims against all the

12   individuals and the City would pay X dollars.

13             So if that's -- if that's true and what your client

14   isn't happy about is the allocation between the two

15   representatives and the two individual plaintiffs is not

16   specified and she never agreed to, then, okay, maybe there is

17   not a technically enforceable settlement agreement.

18             But I would think that you all, the City and the

19   two plaintiffs' representatives, could get together and file

20   a motion that outlines what you expect to be done with these

21   funds by the City and in exchange for which you will agree to

22   do what everybody agrees should happen, which is dismissal of

23   the individuals, then release of the City and payment of the

24   funds into the Registry of the Court.

25             So whether there is or is not an enforceable

1    settlement agreement today, it sounds like everybody is in

2    agreement that those things can happen and then the question

3    of how those funds are allocated gets decided another day.

4            So what I was going to suggest is that if -- if I'm

5    wrong on that, then tell me, but if I'm not wrong on at least

6    that, then you all get together, put together a motion with

7    the Estate of Elijah McClain, the two individual

8    representatives and the City all on -- you know, jointly,

9    including Dr. Hill and everybody, asking that those things

10   happen.  And you figure out what order makes sense, but

11   probably the dismissal of the individuals first, then the

12   City puts the money in the Registry and the City dismissed,

13   and you specify, the Court in entering this order retains

14   jurisdiction to resolve the allocation, it's part of the same

15   case.  And if Judge -- he'll either refer that to me or he'll

16   decide whether it's appropriate to do it.

17           If you submit such an order to me and it's referred

18   to the Court and it's referred to me, I would grant it, and

19   then, you know, you could have Judge Domenico decide the

20   allocation or there is -- under our local rules, you can have

21   specific -- you can jointly move that a specific issue be

22   decided by the magistrate judge, you could do that.  Or if

23   there is a jurisdictional problem, at least the money is

24   there and you can resolve it in state court, but it seems

25   like the federal court claims against the individuals should

1   be resolved.

2          So that's what I suggest could be done.  If you get

3   that done in the next, I don't know, two or three weeks,

4   submit that motion, and if it's referred to me, like I said,

5   I think I would order it.

6          But tell me your reactions.  Let me hear first from

7   City, whether that proposal would be consistent with the

8   three steps that you outlined.

9          MR. MORALES:  Yes, Your Honor, Peter Morales again.

10  We totally concur with your view of how this should be done.

11  We appreciate the careful elucidation of how these steps

12  would go.  We would be happy to follow that and happy to join

13  with the plaintiffs in, I guess we would call it a joint

14  motion.  I don't know what it would be titled as yet, but we

15  would figure it out.

16         THE COURT:  Let me hear from Ms. Sheneen McClain's

17  counsel.

18         MR. WARTELL:  Thank you, Your Honor.  This is Dan

19  Wartell on behalf of Sheneen McClain.

20         Conceptually I see no issue with that.  The

21  important thing for Ms. McClain is that she preserves her

22  rights to seek allocation and that we make it clear that --

23  that that is something that we are preserving.  As long as

24  she is entitled to her day in court on the merits of that

25  issue.  I don't like the idea of making the defendants stay

1   involved in this case.

2            The problem has been concerns that the settlement

3   agreement and the language therein is going to be used for

4   unintended purposes on this allocation issue later, and so it

5   has been this -- this issue of wordsmithing to make sure

6   that -- or jockeying between counsel to make sure that this

7   settlement agreement is not later weaponized to the

8   disadvantage or advantage of either of the individual

9   plaintiffs.

10           THE COURT:  Yeah, so --

11           MR. WARTELL:  So if we could accomplish that goal,

12  that's all we care about.

13           THE COURT:  And I think three smart lawyers, or

14  nine smart lawyers around me, somebody should be able to

15  figure out how to do that without her waiving her rights.

16           Let me hear from counsel for Mr. Mosley.  I know

17  your view is you've got a signed settlement agreement and

18  it's enforceable, but it sounds to me like you agree that

19  there is a legitimate dispute as to the allocation issue.

20           MR. STRUTHERS:  Sure, Your Honor, there is a

21  legitimate dispute as to allocation, but what I'm puzzled by

22  is the signatures that we have on the settlement agreement

23  that was agreed to a few days ago, and now I think I heard

24  Mr. Wartell said we didn't have a settlement agreement.  But

25  conceptually, the steps that Mr. Morales laid out and the

1  query that the Court posed to counsel seems like a good

2  solution.

3         THE COURT:  Okay, all right.  And I'll ask the two

4  more senior law firms who have been involved in the case

5  whether you have any issues or problems that you would like

6  to raise with the proposal that I've suggested on how we

7  proceed.

8         MS. NEWMAN:  This is Mari Newman and my dog in the

9  background.  Nothing to add.

10         MR. MOHAMEDBHAI:  None, Your Honor.

11         THE COURT:  Okay, so why don't we do this.

12  Either -- today is Friday, the 8th.  By Friday, the 29th, you

13  either file the motion that we've described or -- here is

14  what I would like.  I would like you to file the motion that

15  we've described.  So the Court orders that the parties file

16  the motion described, which would involve payment by -- you

17  know, payment by the City of a sum certain to the Registry of

18  the Court, the dismissal of the individual defendants,

19  ultimately the release of the City.  And if -- maybe with the

20  proposed order to do that.

21         So I think three weeks should be enough time for

22  you to put that together.  Anybody think three weeks is too

23  little time?

24         MR. MORALES:  Your Honor, this is Peter Morales

25  again for the City.  That would be fine.  I just want to

1    point out one little quirk to it, which Mr. Hensen may want

2    to address better, but the manner in which Dr. Hill, in

3    particular, needs to be released is prior to any deposit of

4    the funds so that he doesn't have any reporting requirements

5    associated therewith.

6           THE COURT:  I get that, and I get that there is

7    going to be some details here, which I figure you all know

8    the specifics of and you all will be able to work out, you

9    know, how it's actually -- and put that in the proposed

10   order, so whether it's Judge Domenico or I doing the signing,

11   that you're all in agreement that these are the steps that

12   need to happen.  And then if somebody identifies a

13   jurisdictional problem with the Court retaining jurisdiction,

14   I don't see -- I think if the order specifies that the Court

15   retains jurisdiction for the allocation, the same way, you

16   know, when the Court retains jurisdiction to enforce a

17   settlement agreement after it's entered, it's probably going

18   to be good.  But if somebody identifies a jurisdiction

19   problem, point out that.

20          But get that in -- let me ask the two plaintiffs'

21   counsel:  Any problem in the next three weeks?  I need to put

22   you under some time pressure, because I keep saying do it by

23   then or we'll have another meeting, and the time is -- we

24   need to be done with this.

25          MR. STRUTHERS:  Your Honor, David Struthers --

1              MR. WARTELL:  This is Dan -- sorry, David.

2              MR. STRUTHERS:  Thank you.  Good day, Your Honor,

3    David Struthers speaking at Dill and Dill.

4              I have no problem with what has been proposed.  It

5    would seem to me that Mr. Morales is probably going to be in

6    the appropriate to take the first crack at this motion.

7              THE COURT:  All right.  So that's what we'll do.

8              MR. WARTELL:  And Your Honor, this is just -- I'm

9    sorry, so the record is clear, this is Dan Wartell on behalf

10   of Ms. McClain, just because you had asked for both

11   plaintiffs' counsel.  I'm sorry to interrupt you.

12             Okay.  I just wanted to mention on this

13   jurisdictional issue and just put it on the Court's radar

14   screen, that the issue is, under the wrongful death statute,

15   there is a specific statutory provision that we believe

16   provides specifically for the Court who heard the underlying

17   case to retain jurisdiction.  I don't know whether you want

18   jurisdictional arguments addressed in the motion or whether

19   you want to wait for jurisdictional arguments to be made and

20   then responded to, if there is any preference by the Court.

21             THE COURT:  The preference would be everybody

22   assumes the Court retains jurisdiction, and if Judge Domenico

23   or I or somebody later thinks, Oh, my gosh, show cause why we

24   still have jurisdiction, then we can make the arguments then;

25   but I'm convinced, I don't need to take any convincing.  You

1   might put in a line or two saying, The Court shall retain

2   jurisdiction pursuant to such and such statute.  The Court

3   had jurisdiction for the underlying dispute, et cetera.  That

4   would satisfy me.

5        MR. WARTELL:  Yes, Your Honor.

6        THE COURT:  Okay.  So that will be by the 29th.

7   And what I think then is worst-case scenario, if we can't --

8   I would like to have a placeholder where we get the band back

9   together in the event that it doesn't get resolved,

10   addressed, signed, and that would be -- I'm looking at my

11   calendar -- Friday, November 19 would work for me at -- also

12   at 2 p.m., because you all, I'm sure, enjoy spending your

13   Friday afternoons -- and this would be live.  This -- the

14   phone thing doesn't work with this many lawyers on and new

15   lawyers and people whose voices I don't recognize.  So the

16   courthouse is open, we're doing business.  People have masks

17   on in the courthouse, and so this would be live, Friday, the

18   19th of November, at 2 p.m.

19        If, of course, you submit that proposed order, it

20   gets signed, we can vacate this thing; but in the event this

21   thing is still dragging on, we ought to have a follow-up

22   gathering.  Does that work for people's calendars?

23        MR. MORALES:  It does for the City, Your Honor, and

24   the individual defendants.

25        MR. HENSEN:  Actually, Your Honor, this is Steven

1    Hensen.

2         MR. WARTELL:  It works for Ms. McClain, Your Honor,

3    thank you.

4         MR. HENSEN:  (Indiscernible), but I'll be out of

5    the country.  As long as another lawyer from my office can

6    appear, I can have someone appear.

7         THE COURT:  Another lawyer can appear.  And the two

8    veteran counsel, veteran as in the on-the-case veteran.

9         MS. NEWMAN:  This is Mari Newman from Killmer Lane

10   & Newman.  That's fine for us.

11        THE COURT:  Mr. Mohamedbhai?

12        MR. MOHAMEDBHAI:  That's agreeable.

13        THE COURT:  Okay, all right.  So I think we've got

14   a plan moving forward.  I look forward to seeing in the next

15   three weeks that submission, and I will ask if anybody has

16   anything else they would like to raise today.

17        MR. MORALES:  For the City, no, Your Honor.

18        MR. STRUTHERS:  For Mr. Mosley, no, Your Honor.

19   David Struthers.

20        THE COURT:  Okay.  Hearing none, we'll be in

21   recess.  Everybody have a good weekend.

22        (Whereupon, the within hearing was then in

23   conclusion at 2:44 p.m.)

24

25

1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    October 22, 2021

8    Signature of Transcriber          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25